**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | X | **FOR PUBLICATION** |
| | : | |
| MF GLOBAL HOLDINGS LTD., *et al*., | : | Chapter 11 |
| Debtors.[1] | : | Case No. 11-15059 (MG) |
| | X | (Jointly Administered) |
| MF GLOBAL HOLDINGS LTD., as Plan | : | |
| Administrator, and MF GLOBAL ASSIGNED | : | |
| ASSETS LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Adv. Proc. No. 16-01251 (MG) |
| vs. | : | |
| | : | |
| ALLIED WORLD ASSURANCE COMPANY LTD., | : | |
| IRON-STARR EXCESS AGENCY LTD., | : | |
| IRONSHORE INSURANCE LTD., STARR | : | |
| INSURANCE & REINSURANCE LIMITED., and | : | |
| FEDERAL INSURANCE COMPANY, | : | |
| | : | |
| Defendants. | : | |
| | X | |

## MEMORANDUM OPINION AND TEMPORARY RESTRAINING ORDER

*A P P E A R A N C E S :*

WHITE AND WILLIAMS, LLP
*Counsel to Allied World Assurance Company, Ltd*
7 Times Square
New York, New York 10036-6524
By:    Erica Kerstein, Esq.

D'AMATO & LYNCH, LLP
*Counsel to Iron-Starr Excess Agency Ltd., Ironshore
Insurance Ltd., and Starr Insurance & Reinsurance
Limited*
Two World Financial Center
225 Liberty Street
New York, New York 10281
By:    Mary Jo Barry, Esq.
        Maryann Taylor, Esq.

---

[1]     The debtors in the chapter 11 cases (the "Chapter 11 Cases") are MF Global Holdings Ltd.; MF Global Finance USA Inc.; MF Global Capital LLC; MF Global Market Services LLC; MF Global FX Clear LLC; and MF Global Holdings USA Inc. The Court entered an order of final decree closing the chapter 11 cases of MF Global Capital LLC, MF Global FX Clear LLC, and MF Global Market Services LLC on February 11, 2016.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

"The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. . . .  The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." *United States v. Nixon*, 418 U.S. 683, 709 (1974) (explaining the importance of the adversarial system in the context of criminal justice).  Likewise, the integrity of the judicial system depends on the opportunity for all parties in a lawsuit to fully argue the legal authorities supporting their respective positions.  These principles apply with resounding force in adversary proceedings in Bankruptcy Court.  To fully analyze the facts and legal arguments surrounding any issue, the Court must hear all parties to a dispute.  This Court is currently in the unusual and vexing position of having before it a woefully incomplete set of briefs and arguments.  This is so because the Bermuda-based insurance company defendants, after this proceeding was filed and served, obtained *ex parte* orders from a Bermuda court, enjoining the U.S.-based plaintiffs from prosecuting this adversary proceeding or responding to the motions filed by these defendants.  As explained below, at this stage of the case, based on the allegations in the Complaint (defined below), and other matters appearing on the docket, this Court concludes that the Court has personal and subject matter jurisdiction over this adversary proceeding and specifically over the Bermuda Insurers (defined below).

Following this Court's entry of the *Order to Show Cause Why Allied World Assurance Company LTD., Iron-Starr Excess Agency LTD., and Starr Insurance & Reinsurance Limited Should Not be Held in Contempt* (the "Order to Show Cause," ECF Doc. # 6) on November 22, 2016, for filing the Bermuda action and obtaining *ex parte* anti-suit injunctions, memoranda in

2

response to the Order to Show Cause were filed by Allied World Assurance Company, LTD,[2]

Iron-Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr Insurance & Reinsurance

Limited[3] (collectively, the "Bermuda Insurers").  As discussed in more detail below, counsel to

the Bermuda Insurers appeared and were heard before this Court on December 14, 2016 in

connection with the Order to Show Cause, but counsel to MF Global Holdings, Ltd. ("MFGH"),

as Plan Administrator, and MF Global Assigned Assets LLC ("MFGAA," together with MFGH,

the "Plaintiffs"), were effectively forced to remain silent at this hearing because of certain

Injunctive Orders (defined below) issued by the Bermuda Court on November 8, 2016 at the *ex*

*parte* request of the Bermuda Insurers.

    As such, this Court is faced with an exceedingly disconcerting situation: the Court has

briefs and argument from only the Bermuda Insurers on several issues, including a pending

motion to compel arbitration filed by the Bermuda Insurers, without the benefit of briefs and

argument from the Plaintiffs.  In this context, the Court must determine the path forward in this

adversary proceeding.  For the reasons set forth below, the Bermuda Insurers are temporarily

restrained and enjoined from taking any action to enforce the Injunctive Orders against the

Plaintiffs or their counsel.  The temporary restraining order shall be effective immediately **(3:00**

**p.m., December 21, 2016),** and shall remain effective for 14 days, or until further order of this

Court.  A preliminary injunction hearing in connection with this matter is scheduled to begin at

2:00 p.m. on January 4, 2017.

---

[2]     Allied World Assurance Company, LTD ("Allied") filed its response on December 7, 2016 (the "Allied
Response," ECF Doc. # 28).

[3]     Iron-Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr Insurance & Reinsurance Limited (the
"Iron-Starr Insurers") filed a substantially similar response also on December 7, 2016 (the "Iron-Starr Response,"
ECF Doc. # 32).

# I.    BACKGROUND

These Chapter 11 Cases and a related SIPA proceeding date back to 2011.[4]  The history

of MF Global's collapse has been fully recounted in previous opinions of this Court.  The facts

relevant to the issues currently before the Court are set forth below.

## A.    The Bar Order in the Global Settlement

On August 10, 2016, this Court entered an order approving a global settlement in these

chapter 11 cases (the "Global Settlement," D.I. 2282).[5]  The Global Settlement included a bar

order (the "Bar Order") which provides in relevant part:

> 3. To the extent not previously authorized by this Court, the plan
> injunction ("Plan Injunction") as to the Debtors and their respective
> property established pursuant to paragraph 75 in the *Order Confirming
> Amended and Restated Joint Plan of Liquidation* entered by this Court
> on April 5, 2013, to the extent applicable, shall be modified solely to the
> extent necessary, and without further order of the Bankruptcy Court, to
> authorize any and all actions reasonably necessary to consummate the
> Global Settlement, including without limitation, any payments under
> certain insurance policies required under the Settlement . . . .
> Furthermore, any person or entity that is not a Party to the Settlement
> Agreement is permanently barred, enjoined, and restrained from
> commencing, prosecuting, or asserting any claims arising out of
> payments made under certain insurance policies in accordance with the
> Settlement Agreement or any other agreement referenced therein or
> associated therewith.
> . . . .
>
> 7. Upon entry of this Order, any person or entity that is not a Party to
> the Settlement Agreement, including any Dissenting Insurer, is
> permanently barred, enjoined, and restrained from contesting or
> disputing the Reasonableness of Settlement, or commencing,
> prosecuting, or asserting any claims, including, without limitation,
> claims for contribution, indemnity, or comparative fault (however
> denominated an on whatsoever theory), arising out of or related to the
> MF Global Actions . . . .

---

[4]    This Court has dealt with issues relating to insurance coverage disputes on two prior occasions.  *See In re
MF Glob. Holdings Ltd.*, 515 B.R. 193 (Bankr. S.D.N.Y. 2014); *In re MF Glob. Holdings Ltd.*, 469 B.R. 177
(Bankr. S.D.N.Y. 2012), subsequently dismissed sub nom. *Sapere Wealth Mgt. LLC v. MF Glob. Holdings Ltd.*, 566
F. App'x 81 (2d Cir. 2014).

[5]    References to the docket in the main chapter 11 case will be denoted as "D.I."

> 8. For the avoidance of doubt, <u>nothing in this Order shall preclude</u>:
>
> . . . (iii) any claims by the Insurance Assignees to enforce the Assigned Rights; (iv) <u>any claim or right asserted by an MFG Plaintiff against any Dissenting Insurer on its own behalf</u> (as distinct from the Assigned Rights) . . . .

(Global Settlement at ¶¶ 3, 7, 8) (emphasis added).

In connection with the Global Settlement, Allied "tendered the full limit of liability of its separately-issued excess D&O policy, but declined to make the E&O coverage provided under the Allied [policy] available . . . for a settlement" as Allied's adversaries had requested. (Allied Response at 4–5.) Pursuant to the Global Settlement, the individuals ostensibly covered by the Allied E&O policy were to assign "their rights to full payment under the Allied [policy] to the Plaintiffs" and the "assignee would immediately commence action against the [Bermuda Insurers] to obtain proceeds" under the E&O policies. (*Id.* at 5.)

### B.    General Background

On October 27, 2016, the Plaintiffs filed a complaint (the "Complaint," ECF Doc. # 1) initiating this adversary proceeding against the Bermuda Insurers and Federal Insurance Company.[6]   The defendants had issued the top four layers of excess E&O insurance policies to MFGH.  All other insurers in MFGH's D&O and E&O insurance towers paid their policy limits as part of the Global Settlement.  The Plaintiffs brought this action to recover the $25 million policy proceeds under the defendants' E&O insurance policies.

On October 28, 2016, a Summons and notice of a pretrial conference was entered on the docket in this adversary proceeding.  (ECF Doc. # 2.)  On November 1, 2016, the Plaintiffs requested that the Clerk of the Court mail the Summons and Complaint to the Bermuda Insurers

---

[6]     Federal Insurance Company ("Federal") did not seek to obtain an anti-suit injunction against the Plaintiffs, and is not the subject of this Order.

pursuant to Rule 4(f)(2)(c)(ii).  (ECF Doc. # 3.)  The Clerk's Office entered a Certificate of

Mailing showing that the Clerk's Office mailed (by DHL overnight carrier) the Summons and

Complaint to each of the Bermuda Insurers on November 3, 2016.  (ECF Doc. # 4.)  On

November 4, 2016, the Plaintiffs filed an affidavit of service noting that the Summons and

Complaint were mailed to the Bermuda Insurers.  (ECF Doc. # 5.)

On November 8, 2016, the Bermuda Insurers obtained, *ex parte*, injunctive orders from

the Bermuda Court, ordering that:

> [The Plaintiffs] shall not, whether by themselves or through their
> employees, servants, agents, representatives, attorneys or otherwise,
> commence, prosecute or otherwise pursue litigation in the United States
> insofar as that litigation concerns, arises out of and/or relates to the
> insurance policy issued to the [Plaintiffs] by the [Bermuda Insurers],
> Policy No. C007357/005 ("the Policy") including, for the avoidance of
> doubt, litigation containing allegations of breach of "good faith and fair
> dealing" relating to the Policy) and/or otherwise breaches the terms of
> the valid and binding Bermuda arbitration agreement between the
> [Plaintiffs and the Bermuda Insurers] set out in Clause IX of the Policy,
> until trial or further order.
>
> The [Plaintiffs] shall not, whether by themselves or through their
> employees, servants, agents, representatives, attorneys or otherwise,
> seek and/or obtain an anti-suit injunction and/or an anti-anti-suit
> injunction and/or a temporary, preliminary or permanent order
> restraining and/or preventing the [Defendant] from pursuing and/or
> otherwise enforcing the said valid and binding Bermuda arbitration
> agreement, until trial or further order.

(ECF Doc. # 7-2 at 2.)  Each of the Bermuda Insurers obtained substantially similar injunctive

orders.  (*See* ECF Doc. ## 7-2, 7-3.)

At the *ex parte* hearing before the Bermuda Court, counsel to the Bermuda Insurers

informed the Bermuda Court that the Complaint filed in this Court revolved around insurance

coverage provided by the Bermuda Insurers, and that there were broad arbitration clauses in the

underlying policies.[7]  Allied *Ex Parte* Hr'g Tr. at 11.  Counsel for the Bermuda Insurers

indicated that recent case law in the Southern District of New York Bankruptcy Court would

likely result in the eventual transfer of the proceeding to Bermuda for arbitration as a non-core

issue, and that issues relating to comity were less important than the public policy of enforcing

arbitration provisions.  *Id.* at 24–25 (discussing *In re Residential Capital*, LLC, No. 12-12020,

Adv. No. 15–01025 (SHL), 2016 WL 6155925 (Bankr. S.D.N.Y. Oct. 21, 2016) ("But it is quite

clear from this reading that the bankruptcy court would not characteri[z]e an insurance coverage

action as a core proceeding.  In this case [*Residential Capital*] it was found to be a non-core

proceeding, *i.e.* subject to the arbitration provisions")).

On November 22, 2016, the Plaintiffs submitted a letter to this Court informing the Court

that the Bermuda Insurers had obtained these injunctive orders (the "Injunctive Orders"), and

suggesting that the entry of the Injunctive Orders violated (i) the Bar Order in the Global

Settlement, and (ii) the *Barton* doctrine.  (ECF Doc. # 7.)

On November 28, 2016, both Allied and the Iron-Starr Insurers filed motions to compel

arbitration, (the "Motions to Compel Arbitration," ECF Doc. ## 13-1, 20).[8]  Also on November

28, 2016, Allied and the Iron-Starr Insurers each filed motions to dismiss for lack of personal

jurisdiction and improper service of process (the "Motions to Dismiss," ECF Doc. ## 14, 17).[9]

On account of the Injunctive Orders, the Plaintiffs have not responded to these motions.

---

[7]    It is unclear whether the Bermuda Court was informed about the Bar Order in the Global Settlement.  A review of the transcripts from the *ex parte* hearing shows that the Bar Order was not mentioned by counsel to the Bermuda Insurers, but the Bermuda Court was presented with written material that may or may not have referenced the Bar Order.

[8]    An affirmation of Jan E. Haylett was filed in connection with Allied's motion to compel arbitration on November 29, 2016.  (ECF Doc. # 23.)

[9]    An affirmation of Jan E. Haylett was also filed in connection with Allied's motion to dismiss on November 28, 2016. (ECF Doc. # 14-2.)

### C.    The Arbitration Clauses

The insurance policies issued by the Bermuda Insurers each contain a mandatory arbitration provision.  (Allied Response at 3; Iron-Starr Response at 4.)  These arbitration clauses[10] provide that all disputes arising under or relating to these policies shall be fully and finally resolved by arbitration in Bermuda.  *Id.*

Allied indicates in the Allied Response that as early as February 11, 2016, many months before the Global Settlement was reached, Allied notified MFGAA and others "of its desire to arbitrate, pursuant to the . . . arbitration clause in the Allied [policy] . . . ."  (Allied Response at 4.)  Allied further maintains that over the next eight months, "(under a reservation of rights), Plaintiffs' counsel . . . worked with [Allied] to empanel the arbitrators for the Bermuda Arbitration, pursuant to the terms of the Allied [policy]."  *Id.*

### D.    The Order to Show Cause

As noted above, the Court entered the Order to Show Cause on November 22, 2016.  The principal issues raised by the Order to Show Cause are whether the filing of proceedings in Bermuda (the "Bermuda Action") and the obtaining of the Injunctive Orders violated (i) the Bar Order included in the Global Settlement, or (ii) the *Barton* doctrine.  The Bermuda Insurers submitted briefs and declarations in response, but the Plaintiffs, on account of the Injunctive Orders, were restrained from filing any papers.

---

[10]    For example, the Allied Policy's arbitration clause reads in relevant part:

> Any and all disputes arising under or relating to this policy, including its formation and validity, and whether between the **Insurer** and the **Named Insured** or any person or entity deriving rights through or asserting rights on behalf of the **Named Insured**, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a board composed of three arbitrators to be selected for each controversy . . . .

(Complaint, Ex. B at p. 7.)

8

At the December 14, 2016 hearing on the Order to Show Cause, counsel to the Bermuda Insurers refused to consent to allow the Plaintiffs' counsel an opportunity to be heard in connection with the Order to Show Cause, or any other matter.  At the hearing, counsel to the Bermuda Insurers argued that (i) the Bar Order did not prevent the Bermuda Insurers from filing the anti-suit injunction in the Bermuda Court, (ii) this Court does not have jurisdiction over the Bermuda Insurers, and (iii) service on the Bermuda Insurers was improper.  Counsel to the Plaintiffs stated their names to the Court on the record, and remained silent throughout the entire hearing.  Following the hearing, the Court took the matter under submission.

### E.    The Court Declines to Hold the Bermuda Insurers in Contempt

At this juncture, the Court declines to hold the Bermuda Insurers in contempt.  A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply.  *See King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir.1995); *Monsanto Co. v. Haskel Trading, Inc.,* 13 F. Supp. 2d 349, 363 (E.D.N.Y.1998); *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 530 (Bankr. S.D.N.Y. 2007).  "Clear and unambiguous" means that the clarity of the order must be such that it enables the enjoined party "to ascertain from the four corners of the order precisely what acts are forbidden."  *Monsanto Co.,* 13 F. Supp. 2d at 363; *see also N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1351–52 (2d Cir. 1989) (finding that an order could serve as the foundation for a contempt citation because it was sufficiently specific and clear as to what acts were proscribed to enable defendants to "ascertain precisely what they could and could not do").

The Court declines to find that the Bar Order clearly and unambiguously proscribed the Bermuda Action.  That is not to say that the Bermuda Insurers acted in compliance with the Bar Order, but only that the Bar Order did not clearly and unambiguously prohibit the filing of the Bermuda Action.  At this stage, the Court will not rule on whether the Bar Order bars the Bermuda Action entirely.  Further proceedings are required in this Court for the Court to interpret its own Bar Order.  If at a later date, however, a prior order of this Court is determined to enjoin the Bermuda Action altogether, then the Bermuda Insurers would be compelled to first seek an order from this Court to vacate the order prohibiting the filing of the Bermuda Action, and only if any such order is vacated would the Bermuda Insurers be permitted proceed in Bermuda.  The effect of the Injunctive Orders is to prevent this Court from carrying out its normal role in interpreting and enforcing an order previously entered by the Court.

## II.    SERVICE OF PROCESS AND JURISDICTION

"The threshold question which must be addressed before any other issue is the jurisdiction of this Court."  *In re Metromedia Fiber Network, Inc.*, 299 B.R. 251, 256 (Bankr. S.D.N.Y. 2003) (citations omitted).  Where there is personal and subject matter jurisdiction, "a federal court's 'obligation' to hear and decide cases within its jurisdiction is 'virtually unflagging.'"  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013)); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'") (internal citation omitted).  Upon a finding of proper service of process and

proper jurisdictional bases, this Court will adjudicate the issues that arise in this adversary

proceeding to the full extent provided by law.[11]

> It is a judge's duty to decide all cases within his jurisdiction that are
> brought before him, including controversial cases that arouse the most
> intense feelings in the litigants.  His errors may be corrected on appeal,
> but he should not have to fear that unsatisfied litigants may hound him
> with litigation charging malice or corruption. Imposing such a burden
> on judges would contribute not to principled and fearless
> decisionmaking but to intimidation.

*Pierson v. Ray*, 386 U.S. 547, 554 (1967).  Chief Justice Warren's words in the *Pierson* decision

ring particularly true in the scenario currently before this Court.  Though the conduct of the

Bermuda Insurers has essentially muzzled the Plaintiffs, based on the record before it, the Court

will determine whether service of process was proper, whether the Court has personal and

subject matter jurisdiction over the Bermuda Insurers, and what the appropriate next step is for

this Court to take with regards to this adversary proceeding.

The Bermuda Insurers contend that service of the Complaint was improper, and that this

Court does not have personal jurisdiction over the Bermuda Insurers.  In the Motions to Dismiss

(to which the Bermuda Insurers will not permit Plaintiffs to respond) the Bermuda Insurers also

argue that this Court lacks subject matter jurisdiction over this action.  For the reasons set forth

below, this Court finds that service on the Bermuda Insurers was proper, and that this Court has

specific personal jurisdiction over the Bermuda Insurers.  Also, based on the Complaint, the

Court concludes at this time that Plaintiffs have sufficiently pleaded subject matter jurisdiction.

---

[11]     To be clear, however, the Bermuda Insurers may properly argue, and the Court will decide, whether
international comity, or some other legal principle (including a motion to compel arbitration) supports staying or
dismissing this action.

## A. Service of Process

In order for this Court to establish jurisdiction over the Bermuda Insurers, it must first determine that the Bermuda Insurers were served properly with the Summons and Complaint in accordance with applicable law.  *See* FED R. CIV. P. 12(b)(5) (providing that insufficient service of process is an affirmative defense to a civil action).

At the hearing held on December 14, 2016, the Bermuda Insurers contested that service of the Complaint was proper under the Hague Convention on Service Abroad of Judicial and Extra Judicial Documents (the "Hague Convention") and Bermuda law.  The Bermuda Insurers concede that they received service of the Summons and Complaint through overnight courier, but argue that "the [Bermudan] Rules of the Supreme Court 1985" require personal service on a defendant.

Bankruptcy Rule 7004(f) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule . . . is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

FED. R. BANKR. P. 7004(f).

Bermuda is a Commonwealth nation part of the United Kingdom, and the United Kingdom is a signatory to the Hague Convention, subject to a limited reservation.  The Hague Convention at Article 10 states that

> Provided the State of destination does not object, the present Convention shall not interfere with
>
> a)  the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> b)  the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents

directly through the judicial officers, officials or other competent persons of the State of destination,

c)  the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Convention, Art. X. (emphasis added).[12]  The United Kingdom reserved all rights only with respect to subsections (b) and (c) to Article 10, relating solely to the effectuation of service through judicial officers and other persons of the State of destination, and *not* relating to the permissibility of service of process through postal channels, which provision is housed in subsection (a).  *EOI Corp. v. Med. Mktg. Ltd*., 172 F.R.D. 133, 136 (D.N.J. 1997) (stating that "the United Kingdom objected to sections (b) and (c)" but since neither the United States nor the United Kingdom "specifically objected to Article 10(a), it is applicable in matters between these two nations"); *see also In re Harnischfeger Indus., Inc*., 288 B.R. 79, 85 (Bankr. D. Del. 2003) ("The United States and the United Kingdom signed the Hague Convention without objecting to Article 10(a).").

Moreover, the Rules of the Supreme Court 1985 provide in relevant part that:

> [s]ubject to any enactment which provides for the manner in which documents may be served on bodies corporate and to any special provisions of the relevant Civil Procedure Convention, service of the process shall be effected by leaving the original process or a copy of it, as indicated in the letter of request, and a copy of the translation with the person to be served.

> Service shall be effected by the process server appointed under rule 5 or his authori[z]ed agent.

---

[12]    Though Article 10(a) uses the word "send" as opposed to "serve" or "service," the Second Circuit has determined that the use of the word "send" in Article 10(a) refers to service of judicial documents.  *See Ackermann v. Levine*, 788 F.2d 830, 839 (2d Cir. 1986) ("[T]he word 'send' in Article 10(a) was intended to mean 'service.'").

Rules of the Supreme Court 1985, 69/3(3) (emphasis added).  The Hague Convention, joined by

the U.K. and, as a result, enforceable in Bermuda, appears to be an "enactment"[13] providing for

an alternative and acceptable means of service of process, namely by way of overnight courier.

The Rules of the Supreme Court 1985 on service of process clearly apply to any action filed in a

Bermuda court, but do not impose further limitations on service of actions filed in other countries

and served in Bermuda in accordance with the Hague Convention.

Given that the Bermuda Insurers received service of process through overnight mail

courier in compliance with Article 10(a) of the Hague Convention, the Court finds that service of

process on the Bermuda Insurers was proper.

### B. Jurisdiction

The Bermuda Insurers also submit that this Court lacks personal and subject matter

jurisdiction.  Allied, in the Allied Response, argues that because the claims for E&O insurance

proceeds were assigned to MFGAA over two years after plan confirmation, these claims were

never property of the Debtors' estates, and the Court cannot have subject matter jurisdiction over

the dispute.  Additionally, at the hearing held on December 14, 2016, Allied's counsel argued

that no personal jurisdiction exists because Allied and the other Bermuda Insurers are Bermuda

companies with no offices in New York, and are not registered to do business in New York.  The

Court asked Allied's counsel for any case law supporting Allied's argument that the Court does

not have jurisdiction over the Bermuda Insurers in this case; Allied's counsel was unable to

provide any case authority.  Counsel to the Iron-Starr Insurers, when asked the same question,

---

[13]    "Enactment" is defined in the Rules of the Supreme Court 1985 as, "any statutory provision including any Act of Parliament of the United Kingdom having effect as part of the law of Bermuda."  Rules of the Supreme Court 1985, 1/4(1).

argued that *Walden v. Fiore*, 134 S. Ct. 1115 (2014), demanded a finding that this Court does not have jurisdiction over the Bermuda Insurers.

### 1.    Legal Standard for Establishing Jurisdiction Over the Bermuda Insurers

"[T]he plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson Ceco Corp*., 84 F.3d 560, 566 (2d Cir. 1996). Although evidentiary hearings may be held to determine whether or not there is a proper exercise of personal jurisdiction, "[w]here the court opts not to hold a hearing or order jurisdictional discovery, the plaintiff need only make a *prima facie* showing of jurisdiction." *Blau v. Allianz Life Ins. Co. of N. Am*., 124 F. Supp. 3d 161, 170–71 (E.D.N.Y. 2015) (internal citations and footnote omitted).  In order to make such a *prima facie* showing, the plaintiff must make "legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (citation and internal quotation marks omitted); *see also In re Hellas Telecommunications (Luxembourg) II SCA,* 524 B.R. 488, 513 (Bankr. S.D.N.Y.), *adhered to,* 526 B.R. 499 (Bankr. S.D.N.Y. 2015) (stating that when determining subject matter jurisdiction, all uncontroverted facts in the complaint are treated as true and all reasonable inferences are drawn in favor of the party asserting jurisdiction).

Given that the Plaintiffs are currently stifled from making any argument whatsoever in these cases, the Court will look to the assertions made in the affidavit submitted to the Bermuda Court by counsel to the Plaintiffs, Bruce Bennett (the "Bennett Affidavit"), signed and sworn to on December 7, 2016, along with the Complaint in this case, to determine if a proper basis has been presented for this Court to exercise jurisdiction over the Bermuda Insurers.  When the issue of personal jurisdiction is addressed on affidavits or declarations, as it is here, "all allegations are

construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) (citations omitted).

For a court to exercise personal jurisdiction, a person or entity must have sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 66 S. Ct. 154 (1945) (internal quotation marks and citation omitted). A court can exercise two categories of personal jurisdiction: general jurisdiction or specific jurisdiction. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014); *Walden*, 134 S. Ct. at 1121 n.6. General, or "all-purpose" jurisdiction, over a foreign defendant allows a court to hear any and all claims against such defendant. *Daimler*, 134 S. Ct. at 754 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). If insufficient contacts exist for a court to exercise general personal jurisdiction, it may still exercise specific jurisdiction. *See Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174 (1985). Specific jurisdiction over a foreign defendant allows a court to hear claims that "aris[e] out of or relate[] to the defendant's contacts with the forum . . . ." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) (citation omitted). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1121. "The [plaintiff] must also show that [the defendant] 'purposefully availed' [himself] of the privilege of doing business in [the forum state] and that [the defendant] could foresee being 'haled into court' there. *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1027–28 (2d Cir.1997) (internal citations omitted).

Courts in New York have analyzed the contacts necessary to sustain a finding of specific

jurisdiction in the context of non-resident insurance company defendants.  For example, in

*U.N.F. Servs., Inc. v. Ins. Co. of N. Am.*, the Appellate Division of the Second Department

determined that an out-of-state workers' compensation insurer, Mountain States, fell under the

jurisdiction of a New York court, where the out-of-state insurer mailed policies and policy

renewals to the in-state insured, serviced the underlying policies by telephone and mail, and both

billed and collected premiums from the in-state insured, UNF.  236 A.D.2d 388, 389 (1997).

The court explained:

> Over the course of the parties' approximately five-year relationship,
> Mountain States mailed policies and policy renewals to UNF, serviced
> the subject policies via both mail and telephone, and billed and collected
> premiums from UNF.  Such actions by Mountain States were both
> sufficient to constitute "doing business" in New York pursuant to the
> relevant provisions of the Insurance Law and to constitute "minimum
> contacts" with New York such that the maintenance of an action in this
> State would not offend traditional notions of fair play and substantial
> justice, and such that Mountain States reasonably could have anticipated
> being haled into the courts of this State.

*Id.* (internal citations omitted).

Further, both state and federal courts have upheld the exercise of personal jurisdiction

under the "transacting business" clause of section 302 of the New York Civil Practice Law and

Rules, which provides that "a court may exercise personal jurisdiction over any non-domiciliary,

or his executor or administrator, who in person or through an agent . . . transacts any business

within the state or contracts anywhere to supply goods or services in the state . . . ." N.Y.

C.P.L.R. 302(a)(1) (McKinney).  In *Constantine v. Stella Maris Ins. Co.*, for example, the

defendant-insurer, SMI, was a single-parent captive insurance company, with a single

shareholder located in Philadelphia, CHE, which had a joint operating agreement with a sole

member of a hospital, Sisters Hospital, located in Buffalo, New York.  97 A.D.3d 1129, 1131

17

(2012). Because Sisters Hospital was a "covered person" in the insurance contract between SMI and CHE, the Court found that SMI had transacted business under CPLR 302(a). *Id.* at 1132.

Similarly, in *Blau v. Allianz*, Allianz North America ("ANA"), a Minnesota corporation, did not conduct business in New York, was not authorized to do business in New York, and did not maintain any offices in New York. *Blau*, 124 F. Supp. 3d at 168. A distinct corporate entity, Allianz Life Insurance Company of New York, conducted ANA's business in New York. *Id.* However, ANA routinely mailed invoices and notices to addresses in New York. *Id.* at 169. In *Blau*, ANA issued a life insurance policy on the life of a New York resident, which was assigned to a New York Trust, as owner and beneficiary of the policy. *Id.* In *Blau*, the Court found that it had personal jurisdiction over ANA, citing to a long body of case law standing for the proposition that insuring a risk located within New York State establishes personal jurisdiction over an insurer because the insurer has transacted business within the State. *Id.* at 179.

> Where an insurer located elsewhere contracts to insure a risk within New York State, courts have held that the insurer has contracted to perform a service in New York, and therefore Blau has made a prima facie showing that personal jurisdiction is proper in this case under section 302(a)(1). For example, in *Armada Supply Inc. v. Wright*, the Second Circuit held that jurisdiction was proper over a Brazilian insurer who insured cargo en route to New York by ship. *Armada Supply Inc. v. Wright*, 858 F.2d 842, 846–48 (2d Cir. 1988). With respect to the "contracts anywhere" provision of CPLR section 302(a)(1), the court explained that "contracting to insure property located within a jurisdiction, even if the presence of that property is transitory, subjects a foreign marine-insurer to jurisdiction on suits over such insurance." *Id*. at 849. Six years later, in a case involving an automobile insurance policy, then-Judge Sotomayor held that jurisdiction in New York State over a foreign insurer was proper, since the insurer "issu[ed] in Bermuda an insurance policy with the expectation that it could be claimed upon for events occurring within New York." *Ins. Co. of N. Am. v. Pyramid Ins. Co. of Berm. Ltd*., No. 92–CV–1816 (SMS), 1994 WL 88754, at *2 (S.D.N.Y. Mar. 16, 1994). The court further explained that in the context of the "contracts anywhere" to perform services provision (as opposed to the "transacts business" provision), the extensiveness of the foreign insurer's actual contacts with New York is not the key inquiry.

> *See id*. at *2; *see also, e.g., A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d
> 76, 82 (2d Cir. 1993) (holding that contract to provide a financial
> guaranty payable in New York is a contract to perform services in the
> state within the meaning of CPLR 302(a)(1) (citing *Armada Supply*, 858
> F.2d at 849)).

*Id.*

### 2.   *Discussion Regarding This Court's Jurisdiction Over the Bermuda Insurers*

Here, the Bermuda Insurers entered into insurance contracts with "MF Global Holdings Ltd." which has a mailing address of 717 Fifth Avenue, 9th Floor, New York, NY, USA 10022-8101. (Complaint, Ex. B, C.)  These policies insured New York entities from risks that might take place in New York.  Moreover, as noted in the Complaint, Allied "underwrites risks located throughout the United States and in the State of New York" and "markets its insurance policies to the general public and sells a substantial volume of insurance policies to entities and individuals domiciled or conducting business in New York covering risks and liabilities occurring within New York." (Complaint ¶ 23.)  Likewise, the Iron-Starr Insurers "on behalf of subscribing insurers markets its insurance policies to the general public and sells a substantial volume of insurance policies to entities and individuals domiciled or conducting business in New York covering risks and liabilities occurring within New York." (Complaint ¶ 24.)  The insurance policies issued by the Bermuda Insurers to MF Global Holdings Ltd. are expressly governed by New York Law.  (*See, e.g.,* Complaint, Ex. B at p. 9 ("This policy shall be enforced in accordance with the internal laws of the State of New York . . . .").)

Based on the allegations in the Bennett Affidavit and the Complaint, the Bermuda Insurers have certainly availed themselves of the New York market, and must reasonably anticipate being subject to the reach of a court in New York in any dispute concerning an alleged breach of the insurance contract.  The fact that the insurance policies contain arbitration clauses

does not strip this Court of personal and subject matter jurisdiction over this adversary proceeding. Motions to compel arbitration often arise in bankruptcy cases and adversary proceedings. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14, establishes a federal policy favoring the enforceability of arbitration clauses, thereby effectively taking disputes out of the judicial system. *See DIRECTV, Inc. v. Imburgia,* 136 S. Ct. 463, 466 (2015) (refusing to construe the phrase "law of your state" in a contract so as to neutralize an arbitration provision."); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (holding that the FAA preempts California state law which stood as an obstacle to the goals of the FAA).

As explained below, however, the existence of a contractual arbitration clause does not automatically mean that all claims in a bankruptcy case or adversary proceeding are arbitrable. Under certain circumstances, arbitration clauses are not enforced where the purposes of the Bankruptcy Code would be adversely affected by arbitration. Whether the current dispute should be sent to arbitration can only be determined by this Court after full briefing and argument by both sides, not solely by the Bermuda Insurers' *ex parte* arguments to the Bermuda Court, or their motions in this Court where the Plaintiffs are not permitted to respond.

Given the complex framework by which Bankruptcy Courts must analyze the arbitrability of disputes such as the one currently before the Court, the Bermuda Insurers cannot reasonably presume that this dispute is assuredly bound for arbitration. As discussed in more detail below, there are a multitude of considerations that a court must analyze before determining whether a dispute shall or should be sent to arbitration, and any party to a dispute such as this one must reasonably anticipate being compelled to resolve the dispute in the Bankruptcy Court, or at least argue before the Bankruptcy Court why the dispute must be arbitrated. By marketing its insurance policies to entities and individuals in New York, and insuring risks in New York, the

Bermuda Insurers have established the requisite connection between this dispute, the Plaintiffs and New York to establish a jurisdictional basis for this Court to entertain this dispute.

With respect to the Bermuda Insurers argument that this Court does not have subject matter jurisdiction over this dispute, the Court will also look to the Complaint in this case and the Bennett Affidavit. The Complaint asserts that this dispute "involves the disposition of property of the estate and which requires interpretation and enforcement of agreements and orders over which this Court expressly retained exclusive jurisdiction." (Complaint ¶ 19.) The Complaint further maintains that "[t]his Court's exercise of its jurisdiction is necessary to preserve the objectives of the Bankruptcy Code and to avoid inequitable distributions." (*Id.*)

These assertions provide a sufficient basis for the Court to conclude at this time that it has subject matter jurisdiction. "Bankruptcy courts retain jurisdiction to enforce and interpret their own orders." *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005) (citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002)); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[A]s the Second Circuit recognized . . . the Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders.") (citation omitted). Here, there is a dispute over whether the Bar Order in the Global Settlement proscribed the filing of the Bermuda Action. "As the court explained in *Charter Communications*, where a motion seeks to 'prevent the prosecution of causes of action expressly prohibited by the confirmation order,' it would be 'difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction.'" *In re Residential Capital, LLC*, 508 B.R. 838, 849 (Bankr. S.D.N.Y. 2014) (citing *In re Charter Commc'ns*, No. 09–11435, 2010 WL 502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010)).

This analysis serves not only to establish that this Court has subject matter jurisdiction over this dispute at this juncture, but it also underscores the significant nature of the proceedings presently before this Court. This Court plainly has jurisdiction to interpret and enforce the Bar Order, but the Court currently does not have the ability to conduct unbiased proceedings to determine whether the Bar Order has been violated.

To be clear, if the Court is ultimately able to entertain fully briefed motions from all parties on whether this Court has subject matter jurisdiction over the dispute, the Court will consider those motions. However, at this time, the Plaintiffs are unable to respond to the Bermuda Insurers' contentions on this matter, and as such, the Court will not entertain only the Bermuda Insurers' arguments.

## III.   <u>TEMPORARY RESTRAINING ORDER</u>

The above analysis demonstrates that service on the Bermuda Insurers was proper, and this Court has personal and subject matter jurisdiction over the Bermuda Insurers in this dispute. Given the unfortunate posture in which this case currently sits, the Court must forge a path forward utilizing the resources available to it. At this juncture, the Court will issue a temporary restraining order enjoining the Bermuda Insurers from taking any action against the Plaintiffs or their counsel to enforce the Injunctive Orders. This Opinion is being issued hurriedly on December 21, 2016, because the next hearing in the Bermuda Court is scheduled for December 22, 2016. The Bermuda Court should have the benefit of this Court's Opinion before it presides at the December 22, 2016 hearing.

### A.  Legal Standard for the Issuance of a Temporary Restraining Order

Pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a).  The traditional standards for issuance of an injunction pursuant to Rule 65 of

the Federal Rules of Civil Procedure are made applicable to adversary proceedings under

Bankruptcy Rule 7065.  *See Eastern Air Lines v. Rolleston*, 111 B.R. 423, 431 (Bankr. S.D.N.Y.

1990).  Moreover, the standards for a temporary restraining order and a preliminary injunction

are not materially different.  *See Adelphia Commc'ns Corp. v. The American Channel, et al. (In

re Adelphia Commc'ns Corp.)*, No. 02-41729 (REG), 2006 WL 1529357, at *4 (Bankr. S.D.N.Y.

June 5, 2006).  "A decision to grant or deny a preliminary injunction is committed to the

discretion of the district court."  *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994).

The Second Circuit has explained that a party seeking a preliminary injunction must

show that either "he is likely to succeed on the merits; that he is likely to suffer irreparable harm

in the absence of preliminary relief; that the balance of equities tips in his favor; and that an

injunction is in the public interest," or alternatively "show irreparable harm and either a

likelihood of success on the merits or sufficiently serious questions going to the merits to make

them a fair ground for litigation and a balance of hardships tipping decidedly toward the party

requesting the preliminary relief."  *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d

Cir. 2015) (internal citations and quotations omitted); *see also Winter v. Nat. Res. Def. Council,

Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is

likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

public interest.") (citations omitted).  These concepts (likelihood of success on the merits,

irreparable harm, balance of equities, and the public interest) will each be discussed below.[14]

A temporary restraining order is very content specific.  Under Rule 65(b)(2), "[e]very

[temporary restraining order] issued without notice must state the date and hour it was issued;

describe the injury and state why it is irreparable; state why the order was issued without notice;

and be promptly filed in the clerk's office and entered in the record."

Rule 65(d) adds further requirements:

> (1) *Contents*.    Every  order  granting  an  injunction  and  every
> restraining order must:
> (A) state the reasons why it issued;
> (B) state its terms specifically; and
> (C) describe in reasonable detail – and not by referring to the
> complaint or other document – the act or acts restrained or
> required.

FED. R. CIV. P. 65(d).

A temporary restraining order is also limited in duration: "The order expires at the time

after entry—not to exceed 14 days—that the court sets, unless before that time the court, for

good cause, extends it for a like period or the adverse party consents to a longer extension."

FED. R. CIV. P. 65(b)(2).

## B.  Reasons for Injunctive Relief

The Court finds that the requirements for ordering injunctive relief are satisfied.  As

noted above, Rule 65 requires the Court to look to "specific facts in an affidavit or a verified

complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to

---

[14]        The Court at this time is not seeking to enjoin the Bermuda Insurers from participating in the Bermuda
Action altogether.  The Court recognizes that the legal analysis courts in the Second Circuit undertake when
determining whether to enjoin foreign litigation is distinct from the analysis relating to preliminary injunctions.  *See
China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987) (setting forth the threshold
requirements and factors that inform whether a foreign litigation should be enjoined).

the movant. . . ." FED. R. CIV. P. 65(b)(1)(a).  The Bennett Affidavit and the Complaint will serve as the basis for this Court's determinations on this issue.[15]

The reasons that this Court is ordering the injunctive relief set forth below are manifold, but in particular, the Court finds that the Plaintiffs continue to suffer ongoing harm on account of the Injunctive Orders, the balance of harms weighs in favor of ordering relief for the Plaintiffs, and the public policies present here all weigh in favor of issuing a temporary restraining order.

*1.  The Plaintiffs Continue to Suffer Harm on Account of the Injunctive Orders*

The Bennett Affidavit demonstrates that Plaintiffs will continue to suffer immediate and irreparable harm in the absence of Court intervention.  The Plaintiffs filed the Complaint in this Court, and the issuance of the Injunctive Orders has obliterated the Plaintiffs' lawful choice of forum in which to determine issues relating to whether the Bar Order or the *Barton* doctrine barred the Bermuda Insurers from filing the Bermuda Action and obtaining the *ex parte* Injunctive Order.  The Bennett Affidavit sets forth in detail the factual background leading up to the issuance of the Injunctive Orders, including the Bar Order in the Global Settlement, the filing of the Complaint, and the motions filed by the Bermuda Insurers in this Court.  (*See* Bennett Affidavit at 3–10.)  Specifically, the Bennett Affidavit notes that because the "Bermuda [Insurers] have voluntarily filed their Motions to Compel Arbitration in the Bankruptcy Court, the [Plaintiffs] are obliged to respond in the Bankruptcy Court."  (Bennett Affidavit at 6.)  The Bennett Affidavit also touches on some of the complex issues relating to the proper forum in which issues relating to the Plaintiffs' insurance coverage action should be decided.  (Bennett

---

[15]    Rule 65 further requires that "the movant's attorney certify[y] in writing any efforts made to give notice and the reasons why it should not be required."  FED. R. CIV. P. 65(b)(1)(b).  Here, given that the Court has undertaken to issue this Order *sua sponte* in the face of extenuating circumstances, the requirements of Rule 65(b)(1)(b) are inapplicable.

Affidavit at 8–9 ("The Complaint also stated that the Bankruptcy Court had core, and in certain cases, exclusive jurisdiction over the disputed issues raised in the [Complaint]. Yet instead of meeting and conferring with the [Plaintiffs] to explore these issues and come to a protocol for briefing and presenting these threshold issues in a timely and efficient basis to the Bankruptcy Court, the Bermuda [Insurers] elected to proceed on an *ex parte* basis."))

The Plaintiffs have suffered and continue to suffer from the inability to meaningfully participate in the adversary proceeding that they commenced in the forum of their choice. The Bermuda Insurers have filed motions to dismiss and motions to compel arbitration. (ECF Doc. ## 13-1, 14, 17, 20.) The Plaintiffs suffer the inequity of being unable to respond to any of these motions, and as objection and response deadlines come and go, the Plaintiffs are forced to sit idly by.

Compounding this harm is the fact that the Court itself is similarly hamstrung from making any rulings on pending motions given that the Court has pleadings only from the Bermuda Insurers. Further, this Court must be able to interpret and enforce the Bar Order included in the Global Settlement, which it currently cannot do. "The mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

### 2. The "Balance of Equities" Weighs in Favor of Ordering Relief for the Plaintiffs

While the Plaintiffs continue to suffer the inequities described above, upon the issuance of this temporary restraining order, the Bermuda Insurers will suffer no apparent harm whatsoever. At this juncture, the Court has not even determined whether this dispute should

properly be heard in this Court or in arbitration in Bermuda.  The Bermuda Insurers, like any

other party (other than the Plaintiffs), are and will continue to be free to file motions, objections,

responses, and other nonfrivolous pleadings with this Court.  After filing motions to compel

arbitration, the Bermuda Insurers are now awaiting a determination on the arbitrability of the

dispute at hand.  No party will suffer in the event that this Court properly analyzes whether to

send this dispute to arbitration pursuant to applicable law.  One party will prevail while the other

will not, but both parties will be able to plead their case.

### 3.  *Public Policy Weighs in Favor of Ordering Relief for the Plaintiffs*

There are several important public policies in play weighing in favor of ordering relief for

the Plaintiffs.

First, this Court should be able to interpret and enforce its own orders without

interference from another court.  Second, the determination of whether this dispute should be

arbitrated in Bermuda is complex, involving both bankruptcy and non-bankruptcy law, and local

counsel to the Bermuda Insurers have attempted to circumvent this process altogether.  In doing

so, the Bermuda Insurers have totally undermined the adversarial nature of this proceeding.

In petitioning the Bermuda Court for the Injunctive Orders, the Bermuda Insurers relayed

an overly simplistic summary of the issue to the Bermuda Court.  Allied *Ex Parte* Hr'g Tr. at 24–

25.  Courts in this district have recognized that when a Bankruptcy Court is presented with a

motion to compel arbitration, as this Court currently is, the Court must apply a four-part test:

> [F]irst, it must determine whether the parties agree to arbitrate; second,
> it must determine the scope of that agreement; third, if federal statutory
> claims are asserted, it must consider whether Congress intended those
> claims to be nonarbitrable; and fourth, if the court concludes that some,
> but not all, of the claims in the case are arbitrable, it must then decide
> whether to stay the balance of the proceedings pending arbitration.

*Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*, 390 B.R. 784, 789

(Bankr.S.D.N.Y.2008) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d

Cir.1998)).   Naturally, "[w]hen arbitration law meets bankruptcy law head on, clashes inevitably

develop." *In re Hagerstown Fiber Ltd. P'ship,* 277 B.R. 181, 202 (Bankr. S.D.N.Y. 2002).

Specifically, "[t]he issue of waiver predominates arbitration disputes involving bankruptcy

claims," and the first indication of waiver is whether a claim is "core" or "non-core." *Id.* at 198;

s*ee also In re S.W. Bach & Co*., 425 B.R. 78, 89 (Bankr. S.D.N.Y. 2010) ("If a claim is 'non-

core,' the court generally lacks discretion and must refer the claim to arbitration. . . .  If a claim is

core, 'the bankruptcy court must still carefully determine whether any underlying purpose of the

Bankruptcy Code would be adversely affected by enforcing the arbitration clause,' and the

'arbitration clause should be enforced unless [doing so] would seriously jeopardize the objectives

of the Code.'") (internal citations and quotations omitted).   Despite what the Bermuda Insurers

may have attested to before the Bermuda Court, the determination of whether a claim is core or

non-core can be complex, including in insurance coverage disputes. [16]

By sidestepping this entire analysis, and muting the Plaintiffs before this Court, the

Bermuda Insurers have taken actions that undercut this Court's ability to apprise itself of all

---

[16]        The Second Circuit has explained:

> The Bankruptcy Code divides claims in bankruptcy proceedings into two principal
> categories: "core" and "non-core."   Bankruptcy judges have the authority to hear and
> determine all . . . core proceedings arising under title 11 . . . and may enter appropriate
> orders and judgments, subject to review under section 158 of [title 28.].   With respect
> to non-core claims, unless the parties otherwise agree, the bankruptcy court can only
> recommend findings of fact and conclusions of law to the district court. . . .
>
> [W]hether a contract proceeding is core depends on (1) whether the contract is
> antecedent to the reorganization petition; and (2) the degree to which the proceeding
> is independent of the reorganization. The latter inquiry hinges on "the nature of the
> proceeding."   Proceedings can be core by virtue of their nature if either (1) the type of
> proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the
> proceedings directly affect a core bankruptcy function.

*In re U.S. Lines, Inc.*, 197 F.3d 631, 636–37 (2d Cir. 1999) (internal citations and quotation marks omitted).

relevant facts and arguments, and considerations of fairness and equity weigh in favor of granting relief for the Plaintiffs.

Additionally, this Court is where the first-filed action[17] resides, and the principle of comity suggests that this Court should entertain the dispute between the parties at this stage. "The 'first filed' rule states that where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action, unless there are special circumstances which justify giving priority to the second action." *City of N.Y. v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991) (citations and internal quotation marks omitted).  The first-filed doctrine is considered, perhaps with less force, in the international cross-border context.  *See Taub v. Marchesi Di Barolo S.p.A.*, No. 09-CV-599, 2009 WL 4910590, at *6 (E.D.N.Y. Dec. 10, 2009) (analyzing principles and factors relating to international comity and parallel proceedings, and affording "minimal weight" to the temporal sequence of filings).  The Complaint, filed on October 28, 2016, predates any court-filed action in Bermuda.  Allied submits that arbitration was "filed" prior to the filing of the Complaint, but arbitration proceedings in Bermuda have yet to commence, and the only progress thus far has been the empaneling of the arbitrators.  After receiving an *ex parte* presentation from counsel to the Bermuda Insurers on the likelihood of this proceeding being transferred to Bermuda for arbitration, the Bermuda Court issued the Injunctive Orders despite the fact that the Plaintiffs filed the Complaint before any arbitration had actually commenced.

---

[17]    Courts in this circuit have applied the first-filed rule on a case by case basis, and caution against a mechanical application of the rule.  *See National Patent Development Corp. v. American Hospital Supply Corp.*, 616 F. Supp. 114, 118 (S.D.N.Y. 1984) (mechanical positions relating to the first-filed rule "must yield to the realities of the situation in terms of the interests of the parties and effective and sound judicial administration").

But extension of comity to a foreign judgment is "neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Asvesta v. Petroutsas*, 580 F.3d 1000, 1011 (9th Cir. 2009). Courts will generally recognize judgments of other courts:

> Where there has been opportunity for a full and fair trial before a foreign court of competent jurisdiction . . . after due citation of voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of that country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of the United States should not allow it full effect, the merits of the case should not, in an action brought in this country on the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of a party that the judgment was erroneous in law or in fact.

*Hilton v. Guyot*, 159 U.S. 113, 123 (1895) (Fuller, J., Harlan, J., Brewer, J., and Jackson, J., dissenting). While comity is valued, "comity ceases where a foreign judgment's actual conflict with vital public concerns of the forum state begins to prejudice or undermine domestic interests." *Dow Jones & Co. v. Harrods, Ltd*., 237 F. Supp. 2d 394, 446 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003). This is particularly true where the suit is first instituted in the United States and where the initial opportunity to exercise comity is put before the foreign courts. *Id.*; *See also Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 939 (D.C. Cir. 1984). "Comity ordinarily requires that courts of a separate sovereign not interfere with concurrent proceedings based on the same transitory claim, at least until a judgment is reached in one action, allowing *res judicata* to be pled in defense." *Laker Airways*, 731 F.2d at 939.

Here, the Plaintiffs were not afforded an opportunity to argue their case before the Bermuda Court prior to the entry of the Injunctive Orders. Rather, the Bermuda Insurers presented the Bermuda Court with an incomplete presentation of the facts and applicable law, to

the detriment of the Plaintiffs. Just as this adversary proceeding was beginning, the entry of the

Injunctive Orders interfered with the fair administration of this case, and undermined this Court's

ability to adjudicate the issues presented. These policy concerns weigh in favor of ordering relief

to the Plaintiff.

### 4. The Likelihood of Success on the Merits at This Stage Favors the Plaintiffs

Because the Plaintiffs have been unable to submit briefs in this case following the entry

of the Injunctive Orders, the likelihood of the Plaintiffs' success on the merits is not readily

apparent. Again, however, the Complaint maintains that "this coverage action is a core

proceeding, and this Court's jurisdiction is necessary to preserve the objectives of the

Bankruptcy Code and to avoid the potential of inequitable distributions." (Complaint ¶ 100.)

Specifically, the Plaintiffs assert that "resolution of this coverage action requires the Court to

interpret various orders and settlements that it retained jurisdiction over" and that allowing

arbitration to go forward "would circumvent this Court's exclusive, retained jurisdiction to

interpret and enforce these prior settlements and orders, and lead to numerous complications and

inefficiencies, which would impact the administration of the bankruptcy estate." (*Id.*) These

assertions demonstrate that the issue of whether this dispute is arbitrable is not obvious. Taken

at face value, these assertions certainly indicate that the dispute might or might not be artbitrable,

but as noted above, the Court will not rule on this issue at this time.

In any event, the arbitrability of this dispute is certainly "fair ground for litigation" and a

balance of hardships does indeed weigh in favor of Plaintiffs for the reasons already discussed.

*Clapper*, 785 F.3d at 825. Thus, under either test set forth by the Second Circuit, there are

grounds for ordering injunctive relief at this time. The Court is entering this temporary

restraining order *sua sponte* in unusual circumstances, but the analysis set forth above demonstrates that the requirements for ordering injunctive relief are satisfied.

### C.  Conduct Proscribed by this Order

The Court recognizes that "a court of equity having personal jurisdiction over a party has power to enjoin him from committing acts elsewhere" and that "this power should be exercised with great reluctance when it will be difficult to secure compliance with any resulting decree or when the exercise of such power is fraught with possibilities of discord and conflict with the authorities of another country." *Vanity Fair Mills, Inc. v. T. Eaton Co*., 234 F.2d 633, 647 (2d Cir. 1956).  Given the circumstances, however, this Court is left with no other options.  But, to be clear, at this stage of this case, the Court is not enjoining the Bermuda Insurers from prosecuting the case they filed in the Bermuda Court.  If the Bar Order is determined by this Court—after a hearing at which all parties are able to appear and argue—to apply and bar the filing of the Bermuda Action, this Court has clear authority to enforce its prior order.  A foreign court should not be permitted to interfere with that decision.

**By this Order, the Bermuda Insurers are hereby RESTRAINED and ENJOINED from taking any action to enforce the following provisions in the Injunctive Orders:**

1. The [Plaintiffs] shall not, whether by themselves or through their employees, servants, agents, representatives, attorneys or otherwise, commence, prosecute or otherwise pursue litigation in the United States insofar as that litigation concerns, arises out of and/or relates to the insurance policy issued to the [Plaintiffs] by the [Bermuda Insurers], Policy No. C007357/005 ("the Policy") including, for the avoidance of doubt, litigation containing allegations of breach of "good faith and fair dealing" relating to the Policy) and/or otherwise breaches the terms of the valid and binding Bermuda arbitration agreement between the [Plaintiffs and the Bermuda Insurers].

2. The [Plaintiffs] shall not, whether by themselves or through their employees, servants, agents, representatives, attorneys or otherwise, seek and/or obtain an anti-suit injunction and/or an anti-anti-suit

injunction and/or a temporary, preliminary or permanent order restraining and/or preventing the [Defendant] from pursuing and/or otherwise enforcing the said valid and binding Bermuda arbitration agreement, until trial or further order.

**The Bermuda Insurers are so enjoined until after the expiration of this temporary restraining order, or any further order entered by the Court.**

**The Plaintiffs and the Bermuda Insurers are hereby ordered to appear before this Court on January 4, 2017 at 2:00 P.M. for a preliminary injunction hearing.  All parties shall file in writing all evidence and arguments in support of their respective positions on or before 12:00 noon, December 28, 2016.**

**IT IS SO ORDERED.**

Dated:    3:00 p.m., December 21, 2016
          New York, New York

<u>*Martin Glenn*</u>
MARTIN GLENN
United States Bankruptcy Judge