**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | X | **FOR PUBLICATION** |
| | : | |
| MF GLOBAL HOLDINGS LTD., *et al.*, | : | |
| | : | Chapter 11 |
| | : | Case No. 11-15059 (MG) |
| Debtors. | X | (Jointly Administered) |
| MF GLOBAL HOLDINGS LTD., as Plan | : | |
| Administrator, and MF GLOBAL ASSIGNED | : | |
| ASSETS LLC, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Adv. Proc. No. 16-01251 (MG) |
| | : | |
| v. | : | |
| | : | |
| ALLIED WORLD ASSURANCE COMPANY LTD., | : | |
| IRON-STARR EXCESS AGENCY LTD., | : | |
| IRONSHORE INSURANCE LTD., STARR | : | |
| INSURANCE & REINSURANCE LIMITED., and | : | |
| FEDERAL INSURANCE COMPANY, | : | |
| | : | |
| Defendants. | X | |

## MEMORANDUM OPINION AND PRELIMINARY INJUNCTION

*A P P E A R A N C E S:*

WHITE AND WILLIAMS, LLP
*Counsel to Allied World Assurance Company, Ltd*
7 Times Square
New York, New York 10036-6524
By:    Erica Kerstein, Esq.

D'AMATO & LYNCH, LLP
*Counsel to Iron-Starr Excess Agency Ltd., Ironshore*
*Insurance Ltd., and Starr Insurance & Reinsurance*
*Limited*
Two World Financial Center
225 Liberty Street
New York, New York 10281
By:    Mary Jo Barry, Esq.
          Maryann Taylor, Esq.

JONES DAY
*Attorneys for MF Global Holdings Ltd., as Plan*
*Administrator, and MF Global Assigned Assets LLC*
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
By:    Bruce Bennett, Esq.

-and-

JONES DAY
250 Vesey Street
New York, NY 10281
By:    Edward M. Joyce, Esq.
       Jane Rue Wittstein, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

On December 21, 2016, this Court issued a *Memorandum Opinion and Temporary*

*Restraining Order* (the "TRO Opinion" or the "TRO," ECF Doc. # 35),[1] enjoining the Bermuda

Insurers from taking any action to enforce certain provisions of the Injunctive Orders (defined

below) issued by the Supreme Court of Bermuda, Civil Jurisdiction (Commercial Court) (the

"Bermuda Court"). *See MF Global Holdings Lt. v. Allied World Assurance Co. Ltd. (In re MF*

*Global Holdings Ltd.)*, ___ B.R. ___, 2016 WL 7388546 (Bankr. S.D.N.Y. Dec. 21, 2016). The

TRO was issued for 14 days, with the preliminary injunction hearing scheduled for January 4,

2017, before the TRO expired. At the outset of the January 4, 2017 hearing, the Court extended

the TRO for an additional 14 days to permit the Court to decide whether to issue a preliminary

injunction. Now pending before the Court is the determination whether there are grounds to

issue a preliminary injunction enjoining the Bermuda Insurers from taking any action to enforce

these Injunctive Orders.

In connection with the preliminary injunction hearing, Allied World Assurance

Company, Ltd. ("Allied") filed the *Memorandum of Law in Support of Defendant Allied World*

---

[1]        Capitalized terms not defined herein shall have the meaning ascribed to them in the TRO Opinion.

2

*Assurance Company, Ltd.'s Opposition to Memorandum Opinion and Temporary Restraining Order* (the "Allied TRO Response," ECF Doc. # 37).  In support of the Allied TRO Response, Allied filed the *Affirmation of Erica Kerstein in Support of Defendant Allied World Assurance Company, Ltd's Opposition to Memorandum Opinion and Temporary Restraining Order* (the "Kerstein Affirmation," ECF Doc. # 38).  Attached as exhibits to the Kerstein Affirmation are Allied's *Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Service of Process*, Allied's *Motion to Compel Arbitration*, and Allied's *December 7, 2016 Opposition to This Court's Order to Show Cause*, along with the exhibits originally attached to each of these motions.

The Iron-Starr Insurers[2] filed the *Iron-Starr Defendants' Memorandum of Law in Opposition to Court's* Sua Sponte *Preliminary Injunction* (the "Iron-Starr TRO Response," ECF Doc. # 36).  MF Global Holdings, Ltd. ("MFGH"), as Plan Administrator, and MF Global Assigned Assets LLC ("MFGAA" and together with MFGH, the "Plaintiffs"), filed the *Memorandum of Law on the Bermuda Defendants' Continued Violation of This Court's Bar Order* (the "Plaintiffs' TRO Response," ECF Doc. # [--], filed under seal on December 28, 2016).

For the reasons set forth below, the Court finds that there are sufficient grounds to enter a preliminary injunction enjoining the Bermuda Insurers from taking any action to enforce the Injunctive Orders.

---

[2]    Iron-Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr Insurance & Reinsurance Limited are referred to collectively as the "Iron-Starr Insurers."

# I.    **BACKGROUND**

The facts relevant to the issue currently before the Court are set forth in the TRO Opinion and previous opinions and orders issued by this Court.  Additional relevant facts are set forth below.

## A.  The Temporary Restraining Order

As noted above, through the entry of the TRO, this Court restrained and enjoined the Bermuda Insurers from taking any action to enforce the injunctive orders (the "Injunctive Orders," ECF Doc. ## 7-2, 7-3) issued by the Bermuda Court on November 8, 2016. Specifically, the TRO restrained and enjoined the Bermuda Insurers from taking any action to enforce the following provisions of the Injunctive Orders:

> 1.   [MF Global Holdings, Ltd. ("MFGH"), as Plan Administrator, and MF Global Assigned Assets LLC ("MFGAA," together with MFGH, the "Plaintiffs" or the "MFG Parties")] shall not, whether by themselves or through their employees, servants, agents, representatives, attorneys or otherwise, commence, prosecute or otherwise pursue litigation in the United States insofar as that litigation concerns, arises out of and/or relates to the insurance policy issued to the [Plaintiffs] by the [Bermuda Insurers], Policy No. C007357/005 ("the Policy") including, for the avoidance of doubt, litigation containing allegations of breach of "good faith and fair dealing" relating to the Policy) and/or otherwise breaches the terms of the valid and binding Bermuda arbitration agreement between the [Plaintiffs and the Bermuda Insurers].
>
> 2.   The [Plaintiffs] shall not, whether by themselves or through their employees, servants, agents, representatives, attorneys or otherwise, seek and/or obtain an anti-suit injunction and/or an anti-anti-suit injunction and/or a temporary, preliminary or permanent order restraining and/or preventing the [Defendant] from pursuing and/or otherwise enforcing the said valid and binding Bermuda arbitration agreement, until trial or further order.

*TRO Opinion*, 2016 WL 7388546, at *17.

4

## B. The Skeleton Argument and the December 22, 2016 Bermuda Court Orders

On December 22, 2016, the day after this Court entered the TRO, the Bermuda Insurers filed certain pleadings (the "Skeleton Argument") and appeared and were heard before the Bermuda Court. In the Skeleton Argument, the Bermuda Insurers expressly requested certain relief from the Bermuda Court, including:

> 12.1    An Order that the [Bermuda Insurers] be granted leave to amend the Originating Summonses in these proceedings, pursuant to RSC Order 20 rules 5 and 7, to include a further or alternative claim for permanent injunctive relief, in the form of a permanent injunction mandating the [Plaintiffs], acting by themselves and/or acting through their employees, servants, agents, representatives, and attorneys, to terminate, discontinue, withdraw and/or to apply forthwith to dismiss (without prejudice) the Adversary Complaint proceedings commenced by the [Plaintiffs] against the [Bermuda Insurers] in the United States Bankruptcy Court, Southern District of New York, Case No: 11-15059 (MG), Adv. Proc. No: 16-01251 (MG) ("the Adversary Proceedings");

> 12.2    An interim injunction mandating the [Plaintiffs], acting by themselves and/or acting through their employees, servants, agents, representatives, and attorneys, to terminate, discontinue, withdraw and/or to apply forthwith (i.e. within the next 28 days) to dismiss (without prejudice) the Adversary Proceedings (as defined above).

(Skeleton Argument ¶¶ 12.1, 12.2 (emphasis in original).) The Bermuda Court then entered two orders (the "December 22, 2016 Orders") in the Bermuda proceedings initiated by (i) Allied and (ii) the Iron-Starr Insurers.[3] The December 22, 2016 Orders provide in relevant part that:

> 1.    The [Bermuda Insurers] shall be granted leave to amend the Originating Summons in these proceedings, pursuant to RSC Order 20 rules 5 and 7, in the form of the draft Amended Originating Summons included in Exhibit JEH-3, to include a further or alternative claim for permanent injunctive relief, in the form of a permanent injunction mandating the [Plaintiffs], acting by themselves and/or acting through their employees, servants, agents, representatives, and attorneys, to terminate, discontinue, withdraw and/or to apply forthwith to dismiss

---

[3]    The November 8, 2016 and December 22, 2016 Orders were issued by Chief Justice Kawaley of the Supreme Court of Bermuda, Civil Jurisdiction (Commercial Court) in the proceedings denoted as "2016: No. 393" and "2016: No. 394."

(without prejudice) the adversary proceedings commenced by the [Plaintiffs] against the [Bermuda Insurers] in the United States Bankruptcy Court, Southern District of New York, Case No: 11-15059 (MG), Adv. Proc. No: 16-01251 (MG) ("the Adversary Proceedings"), with associated relief.

2.    The [Plaintiffs] shall, and are hereby mandated on an interlocutory basis, acting by themselves and/or acting through their employees, servants, agents, representatives, and attorneys, to terminate, discontinue, withdraw and/or to apply forthwith (i.e. within the next 28 days) to dismiss (without prejudice) the adversary proceedings commenced by the [Plaintiffs] against the [Bermuda Insurers] in the United States Bankruptcy Court, Southern District of New York, Case No: 11-15059 (MG), Adv. Proc. No: 16-01251 (MG) ("the Adversary Proceedings"). For the avoidance of doubt, this interlocutory injunction shall remain in force until final determination of the [Bermuda Insurer's] Originating Summons, or until further Order of this Court, save that the [Plaintiffs] shall be at liberty to apply to this Court to set aside or vary the terms of paragraph 2 of this Order on at least 48 hours' written notice to the [Bermuda Insurers].

(December 22, 2016 Orders ¶¶ 1–2.)

In the December 22, 2016 Orders, the Bermuda Court also stated that the Plaintiffs "will not be contravened by the [Bermuda Insurers] and/or their US attorneys addressing the United States Bankruptcy Court Southern District of New York *on the limited issue of whether or not the [Bermuda Insurers have] contravened" the Bar Order.* (December 22, 2016 Orders at 1 (emphasis added).) With respect to whether the Bar Order and the *Barton* doctrine (described below) have been violated, the Court has set a schedule for one last round of briefs on those issues (January 11, 2017 for the Bermuda Insurers; January 18, 2017 for the Plaintiffs), and has scheduled argument for 10:15 a.m., January 23, 2017. Because of the December 22, 2016 Orders, the Court, however, remains unable to make a determination whether this dispute is arbitrable. Until the Court has full briefing and argument on the issue from the Plaintiffs and the Bermuda Insurers, the Court cannot decide the Bermuda Insurers' motion to compel arbitration.

6

Our adversary system requires that all parties must be able to address the issues, not just the moving parties.

The December 22, 2016 Orders, *which included the above-referenced relief sought by the Bermuda Insurers*, permit the Plaintiffs to address only the limited issues whether the Bar Order and *Barton* doctrine prohibited the Bermuda Insurers from filing the Bermuda action, but those orders still enjoin the Plaintiffs from conducting any other activity in this adversary proceeding—specifically including opposing the motion to compel arbitration that the Bermuda Insurers filed in this Court.  Moreover, the December 22, 2016 Orders *require* that the Plaintiffs dismiss this adversary proceeding within 28 days, without the ability to be heard on any other issues currently pending before this Court.  (December 22, 2016 Orders ¶¶ 1–2.)  The effect of the orders obtained by the Bermuda Insurers is an intolerable interference in this Court's ability to exercise its authority in a case within its jurisdiction.

### C.  The Bermuda Court's December 23, 2016 "Reasons for Decision"

On December 23, 2016, the day after entering the December 22, 2016 Orders, the Bermuda Court issued its "Reasons for Decision," a 10-page decision explaining the basis for its rulings in issuing the *ex parte* anti-suit injunctions.  It is helpful to read Chief Justice Kawaley's explanation of the rationale for entry of the anti-suit injunctions.  To the extent consistent with this Court's responsibility to decide matters properly before this Court, the Court strives through the exercise of international comity to avoid unnecessary conflict with foreign courts.  But this Court cannot shy away from deciding issues properly presented to it.  The *ex parte* anti-suit injunctions, entered after this adversary proceeding was filed, prevent this Court and the U.S.-based Plaintiffs from addressing important issues under U.S. bankruptcy law.

An underlying issue that one of the courts will have to decide is whether the insurance

7

coverage dispute between the Plaintiffs and the Bermuda Insurers must be decided in arbitration in Bermuda or adjudicated by this Court. But the immediate issue pending in this Court is whether the Bermuda Insurers were prohibited by applicable U.S. law and orders previously issued by this Court from commencing the Bermuda Court proceedings. The Plaintiffs identify two separate grounds—either one potentially legally sufficient—to bar the filing of the Bermuda actions—namely, the Bar Order included in a global settlement approved by this Court in August 2016, or the *Barton* doctrine. Assuming that one of those two bases barred the Bermuda Insurers from commencing the Bermuda action, and assuming the Bermuda Insurers made a timely motion in this Court to compel arbitration in Bermuda, this Court would be required to decide the question whether this dispute is arbitrable. If the Bermuda Insurers prevail and this Court compels arbitration, an order compelling arbitration would be entered, and this adversary proceeding would then be dismissed. If the motion to compel arbitration is denied, this adversary proceeding would proceed in the normal manner. Essentially, then, the issue the Court will decide after briefing is complete and argument is heard on January 23, 2017 is whether the Bermuda Insurers were barred by applicable U.S. law from filing the Bermuda Court action.

Once the motion to compel arbitration is fully briefed (something that the Bermuda Court Injunctive Orders currently prevents), this Court can decide whether to compel arbitration. The decision on that question—either in the U.S. or Bermuda courts—if both were able to decide the issue might not be the same. *Under U.S. law*, the answer to the question whether particular disputes must be arbitrated depends on the application of both arbitration law *and* U.S. bankruptcy law. It is a nuanced analysis. As explained in the TRO Opinion,

> Courts in this district have recognized that when a Bankruptcy Court is presented with a motion to compel arbitration, as this Court currently is, the Court must apply a four-part test:

> [F]irst, it must determine whether the parties agree to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.
>
> Naturally, [w]hen arbitration law meets bankruptcy law head on, clashes inevitably develop.  Specifically, [t]he issue of waiver predominates arbitration disputes involving bankruptcy claims, and the first indication of waiver is whether a claim is core or non-core. Despite what the Bermuda Insurers may have attested to before the Bermuda Court, the determination of whether a claim is core or non-core can be complex, including in insurance coverage disputes.

*TRO Opinion*, 2016 WL 7388546, at *14 (internal quotation marks and citations omitted); *see also In re U.S. Lines, Inc.*, 197 F.3d 631, 636–37 (2d Cir. 1999).

Whether a motion to compel arbitration can be denied because arbitration conflicts with policies of the Bankruptcy Code depends on a careful analysis of both U.S. bankruptcy law and arbitration law.  The excess E&O insurance policies issued by the Bermuda Insurers are expressly governed by New York law and the policies were issued to New York-based MF Global Holdings Ltd.  This Court previously determined that all of the D&O and E&O insurance policies (primary and excess) issued to MF Global Holdings Ltd. were property of the Chapter 11 Debtors' estates.  *In re MF Glob. Holdings Ltd.,* 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012), *subsequently dismissed sub nom. Sapere Wealth Mgt. LLC v. MF Glob. Holdings Ltd*., 566 F. App'x 81 (2d Cir. 2014) ("[I]t is well-settled that a debtor's liability insurance is considered property of the estate.").

In explaining his Reasons for Decision, Chief Justice Kawaley relied heavily on his earlier decision in *ACE Bermuda Insurance Ltd. v. Peers Pederson as Plan Trustee for the*

*Estates of Boston Chicken Inc.* [2005] Bda LR 44, a case in which he granted a similar *ex parte* anti-suit injunction "by way of enforcing agreements to arbitrate insurance coverage disputes." (Reasons for Decision ¶ 4.)

Boston Chicken was a debtor in chapter 11 cases pending in the U.S. Bankruptcy Court for the District of Arizona. ACE Bermuda ("ACE") was an upper level excess insurance carrier in Boston Chicken's D&O insurance tower. ACE denied coverage for Boston Chicken's officers and directors who had been sued by Gerald K. Smith ("Smith"), the Plan Trustee under Boston Chicken's confirmed chapter 11 plan. The lawsuit filed by Smith in the federal district court also named as defendants the underwriters of Boston Chicken securities, and the company's accountants and lawyers. With a coverage dispute clearly brewing, ACE preemptively obtained an *ex parte* anti-suit injunction from the Bermuda Court *before* coverage litigation was commenced by Boston Chicken in the bankruptcy court. *See ACE Insurance Co., Ltd. v. Smith (In re BCE West, L.P.)*, 2006 WL 8422206 (D. Ariz. Sept. 20, 2006) [hereinafter *Smith*].

Smith, in his capacity as Plan Trustee, reached a settlement with several of the Boston Chicken officers and directors.[4] The settlement included an assignment to Smith of the officers' claims against the D&O insurers (including ACE) that denied coverage. Some of the non-settling defendants in the district court action objected to approval of the settlement. The district court overruled the objections and approved the settlement, and the Ninth Circuit affirmed. *See Smith v. Arthur Anderson LLP*, 421 F.3d 989 (9th Cir. 2005). Smith then brought an action against ACE in the bankruptcy court to recover on the insurance policy and for additional

---

[4]    As I advised the parties during the preliminary injunction hearing, before I became a judge, I represented one of the Boston Chicken officer defendants in Smith's district court action, and I represented two of the officers in negotiating a settlement with Smith of the district court action.

10

damages.[5]  ACE moved in the bankruptcy court to compel arbitration in Bermuda.  The

bankruptcy court granted in part ACE's motion to compel arbitration, but on different terms than

those included in the insurance contract, and granted Boston Chicken's motion to enjoin the

Bermuda case that ACE had earlier filed.  The bankruptcy court also found that ACE had

violated the *Barton* doctrine and awarded Smith $100,000 in damages.[6]  *See Smith*, 2006 WL

8422206, at *2–3.

 The district court affirmed in part and reversed in part.[7]  *Id.* at *10.

 The district court in *Smith* explained the *Barton* doctrine, named for the decision in

*Barton v. Barbour*, 104 U.S. 126, 136–37 (1881) ("[W]hen the court of one State has . . .

property in its possession for administration as trust assets, and has appointed a receiver to aid in

the performance of its duty by carrying on the business to which the property is adapted . . . a

court of another State has not jurisdiction, without leave of the court by which the receiver was

appointed, to entertain a suit against him . . . .").  *See Smith*, 2006 WL 8422206, at *2 n.4.  The

*Barton* doctrine operates independently of the Bar Order in the *MF Global* case, and may

provide a separate basis for barring the Bermuda Insurers' action.[8]  As the district court

explained in affirming the bankruptcy court's determination that ACE violated the *Barton*

---

[5]     After the Ninth Circuit affirmed the approval of the settlement, I had no further involvement in the matter, including in the insurance coverage case in the bankruptcy court.

[6]     Unlike the *MF Global* case, there was no Bar Order in *Boston Chicken* that arguably prevented ACE from filing its Bermuda action.

[7]     The district court determined that under applicable Ninth Circuit case law, the insurance coverage dispute in *Boston Chicken* was a non-core proceeding; therefore, the bankruptcy court erred "when it compelled arbitration on terms materially different than the terms contained in the D&O policy's arbitration clause." *Id.* at *7.  The district court also reversed the bankruptcy court's injunction barring ACE from prosecuting the Bermuda action since the decision to compel arbitration also provided that the bankruptcy court adversary proceeding would be dismissed.  The district court, however, expressly noted that with respect to the "core/non-core determination," Second Circuit case law was different, *see In re U.S. Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999) (concluding that the insurance coverage dispute was "core," and the bankruptcy court properly denied the motion to compel arbitration),which may have resulted in a different conclusion.  *Id.* at *5 n.14.

[8]     On January 23, 2017, following the completion of further briefing, the Court will hear argument whether the Bar Order in this case prohibited the Bermuda Insurers from filing the Bermuda Action.

doctrine, the *Barton* doctrine requires that "leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee for the acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *Id.* at *2 (quoting *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)). "There is no indication that the doctrine is limited in scope or that it is otherwise inapplicable to a party who seeks to file suit in an international forum." *Id.* at *8. As such, "regardless of where ACE sought to file suit against the Trustee, the bankruptcy court correctly found that ACE was required under the *Barton* doctrine to seek leave prior to filing suit." *Id.*[9]

Reviewing the portions of his *Boston Chicken* decision that Chief Justice Kawaley quotes in his Reasons for Decision, *but also* reviewing what transpired thereafter in the *Boston Chicken* case in the U.S. Bankruptcy Court for the District of Arizona (where the *Boston Chicken* bankruptcy case was pending), and, on appeal by ACE from the bankruptcy court decision, in the U.S. District Court for the District of Arizona, provides a better understanding of the conflict between the U.S. and Bermuda courts. With due respect to Chief Justice Kawaley, his decisions in *Boston Chicken* and *MF Global* reflect a disregard of the applicable U.S. bankruptcy law principles, specifically with respect to the bankruptcy court's obligation to interpret and enforce its own previously entered orders, and to apply applicable common law such as the *Barton* doctrine. Perhaps this is so because in both *Boston Chicken* and in *MF Global*, Bermuda insurers obtained *ex parte* anti-suit injunctions, without the court having the benefit of full briefing or argument by the debtors, or their successors, on any of these issues.

Here, in part, is what Chief Justice Kawaley explained in *Boston Chicken*:

It is difficult to imagine any jurisdiction in the world which,

---

[9]    The bankruptcy court and district court in *Boston Chicken* applied the *Barton* doctrine in circumstances similar to this case: Smith, the Plan Trustee in *Boston Chicken*, brought suit based on claims against ACE assigned by the officers and directors. The Plaintiffs here have done the same thing.

statutory incorporation apart, would apply a foreign procedural law
instead of its own domestic law to an action properly commenced
under local law within the jurisdiction.  When Bermudian estate
representatives seek the cooperation of the United States
bankruptcy courts, they invariably do so under the umbrella of the
provisions of section 304 of the US Bankruptcy Code [now
replaced by chapter 15], if not chapter 11.  They do not apply to set
aside actions commenced in the US against Bermudian companies
in liquidation on the grounds that leave of the Bermuda court
should have been obtained by virtue of Bermuda domestic law. . . .

But even if this Court had the power to stay proceedings brought in
Bermuda in deference to a foreign bankruptcy proceeding, it seems
improbable that such jurisdiction would enable this Court to grant
the relief the Applicants presently seek.  Because the only
application presently before the Court is based on the premise that
an extra-territorial doctrine of US bankruptcy law arguably
supersedes Bermuda statute law . . . and that US law deprives this
Court of jurisdiction expressly conferred upon it to grant leave to
serve abroad proceedings brought here to enforce a contract
governed by Bermuda law.

It is also settled this court cannot stay proceedings on forum non-
convenience grounds where the parties have agreed to arbitrate
here, which is no doubt why this doctrine (in its traditional sense)
has not, in any coherent way at least, been invoked by the
Applicants.  Yet the doctrine is relied upon in support of the
proposition that the Arizona court is the more appropriate forum
for determining whether or not the arbitration clause should be
respected . . . .

(Reasons for Decision ¶ 4, citing *Boston Chicken*, [2005] Bda LR 44).  Chief Justice Kawaley's

ruling appears to conclude that a decision from this Court that the Bermuda Insurers filed the

Bermuda action in violation of the *Barton* doctrine will not be recognized and enforced in

Bermuda.  (*Id.* ("But even if this Court had the power to stay proceedings brought in Bermuda in

deference to a foreign bankruptcy proceeding, it seems improbable that such jurisdiction would

enable this Court to grant the relief the Applicants presently seek.  Because the only application

presently before the Court is based on the premise that an extra-territorial doctrine of US

bankruptcy law arguably supersedes Bermuda statute law . . . and that US law deprives this

13

Court of jurisdiction expressly conferred upon it to grant leave to serve abroad proceedings brought here to enforce a contract governed by Bermuda law.").)  But this Court sees the issues differently:  Did the Bar Order or the *Barton* doctrine prohibit the Bermuda Insurers from filing the Bermuda action?  If so, may this Court decline to recognize and enforce the Bermuda Court's orders that prevent this Court from deciding issues in the adversary proceeding in which the Court concluded it has personal and subject matter jurisdiction over the Bermuda Insurers?  And, if so, may this Court order the Bermuda Insurers to dismiss their Bermuda actions?

Obviously, this Court cannot force the Bermuda Court to recognize and enforce a decision of this Court based on a well-recognized doctrine of U.S. law, first set forth in the 1881 Supreme Court decision in *Barton*; but a refusal to recognize and enforce such a decision should it be rendered is not a sufficient reason for this Court to avoid reaching a decision if the facts and law support it (something that is still undetermined and will be heard on January 23, 2017). Even if a decision by a U.S. court is not recognized and enforced in Bermuda, and a judgment is entered against the Bermuda Insurers in New York, the Bermuda Insurers write insurance policies for and collect premiums from companies in the New York and the United States, so the Plaintiffs may well have recourse to recover on any judgment obtained in the United States, if that eventuality comes to pass.[10]  Hopefully, this cross-border dispute will not come to that.

### D.  The Second Order to Show Cause

On December 29, 2016, this Court entered the *Order to Show Cause Why Allied World Assurance Company Ltd., Iron-Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr*

---

[10]    To be clear, if the Court is not prevented from hearing and deciding the motion to compel arbitration based on full briefing by the parties, the Court intends to do so.  The current anti-suit injunction prevents the Plaintiffs from briefing and arguing the motion to compel arbitration.  The Court will issue a separate order determining whether the Bermuda Insurers should be held in contempt for violating the TRO in applying for and obtaining the December 22, 2016 Orders, with possible sanctions including striking their pleadings and entering a default.

*Insurance & Reinsurance Limited Should Not be Held in Contempt* for violating the TRO (the

"Second OSC," ECF Doc. # 41).  The Second OSC referred to the injunctive provisions of the

TRO, the relief sought by the Bermuda Insurers in the Skeleton Argument after the TRO was

issued, and the orders subsequently entered by the Bermuda Court on December 22, 2016.  The

Second OSC ordered the Bermuda Insurers to file a written response addressing why they should

not be held in contempt for violating the TRO by asking the Bermuda Court to order the

Plaintiffs to dismiss the adversary proceeding before this Court.[11]

## II.    THE PRELIMINARY INJUNCTION

### A.  Legal Standard

Pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11

U.S.C. § 105(a).  The traditional standards for issuance of an injunction pursuant to Rule 65 of

the Federal Rules of Civil Procedure are made applicable to adversary proceedings under

Bankruptcy Rule 7065.  *See Eastern Air Lines v. Rolleston (In re Ionosphere Clubs, Inc.)*, 111

B.R. 423, 431 (Bankr. S.D.N.Y. 1990).  Moreover, the standards for a temporary restraining

order and a preliminary injunction are not materially different.  *See Adelphia Commc'ns Corp. v.*

*The American Channel, et al. (In re Adelphia Commc'ns Corp.)*, No. 02-41729 (REG), 2006 WL

1529357, at *4 (Bankr. S.D.N.Y. June 5, 2006).  "A decision to grant or deny a preliminary

injunction is committed to the discretion of the district court."  *Polymer Tech. Corp. v. Mimran*,

37 F.3d 74, 78 (2d Cir. 1994).

The Second Circuit has explained that a party seeking a preliminary injunction must

show that either "he is likely to succeed on the merits; that he is likely to suffer irreparable harm

in the absence of preliminary relief; that the balance of equities tips in his favor; and that an

---

[11]     As noted above, the disposition of the Second OSC will be addressed in a separate order.

injunction is in the public interest," or alternatively "show irreparable harm and either a

likelihood of success on the merits or sufficiently serious questions going to the merits to make

them a fair ground for litigation and a balance of hardships tipping decidedly toward the party

requesting the preliminary relief." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d

Cir. 2015) (internal citations and quotations omitted); *see also Winter v. Nat. Res. Def. Council,

Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is

likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

public interest.") (citations omitted).  Because the Court (rather than the Plaintiffs) initiated the

TRO and preliminary injunction hearing to protect its jurisdiction over this adversary

proceeding, the Plaintiffs are not required to post security for the preliminary injunction as

otherwise required by Rule 65(c).

### B.  The Parties' Contentions

#### 1.  The Plaintiffs' Contentions

The Plaintiffs, in the Plaintiffs' TRO Response, argue that a preliminary injunction is

necessary to address the Bermuda Insurers' continued violations of the Bar Order, the *Barton*

doctrine, and the TRO.[12]  As noted above, in the Second Circuit there are two formulations of the

test for a preliminary injunction, and the Plaintiffs argue that a preliminary injunction is

warranted because they have demonstrated "(a) irreparable harm and (b) . . . [that there are]

sufficiently serious questions going to the merits to make them a fair ground for litigation and a

balance of hardships tip[s] decidedly toward the party requesting the preliminary relief."

---

[12]     A sizable portion of the Plaintiffs' TRO Response is dedicated to arguing that the Bermuda action
continues to violate the Bar Order and the *Barton* doctrine.

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir.

2012).

In particular, the Plaintiffs argue that there are serious questions as to the merits of both

the Bermuda Insurers' violation of the Bar Order and the *Barton* doctrine, as well as questions

regarding whether this dispute is arbitrable under applicable bankruptcy law, and an injunction is

necessary to permit the Court to address these issues.  (Plaintiffs' TRO Response at 16.)  The

Plaintiffs also argue that they continue to suffer irreparable harm by being forced to incur

additional expense and effort in the Bermuda Court, by being unable to avail themselves of their

chosen forum, and by being restrained from filing pleadings before this Court.  (*Id.* at 17.)  The

Plaintiffs maintain that the balance of equities and public policy weigh in their favor because the

Bermuda Insurers' actions in the Bermuda Court undermine the efficient administration of the

adversarial system in the United States, and because the Plaintiffs should not be forced to resort

to a distant forum to adjudicate their rights when they have already chosen a legitimate forum.

(*Id.* at 18–19.)

### 2.  The Bermuda Insurers' Contentions

Both Allied and the Iron-Starr Insurers, in their responses to the TRO, restate that this

Court lacks specific personal jurisdiction and subject matter jurisdiction over the Bermuda

Insurers and, in particular, over this dispute.  (Allied TRO Response at 5–18; Iron-Starr TRO

Response at 7–22.)  Likewise, the Bermuda Insurers reiterate their belief that service of process

on them was improper.  (Allied TRO Response at 25; Iron-Starr TRO Response at 22–24.)

Additionally, the Iron-Starr Insurers argue that the Plaintiffs cannot establish a likelihood

of success on the merits as the coverage claims dispute here is "squarely a 'non-core' claim."

(Iron-Starr TRO Response at 24.)  The Iron-Starr Insurers also argue that the balance of

17

hardships weighs in favor of the Bermuda Insurers, as a determination of the underlying

coverage issues in this Court would strip the Bermuda Insurers of their bargained-for contractual

rights.  (*Id.* at 25.)

Similarly, Allied argues that the Plaintiffs cannot demonstrate imminent or irreparable

harm because the Plaintiffs have known about the invocation of the arbitration provision for ten

months.  (Allied TRO Response at 19.)  Allied also argues that requiring the Plaintiffs to

arbitrate does not constitute "irreparable harm" when the Plaintiffs can still argue before the

arbitration tribunal and the Bermuda Court that arbitration is improper.  (*Id.* at 20–21.)  Allied

argues that the balance of equities tips in its favor because *it* will be irreparably harmed if forced

to litigate in this Court as it would be stripped of its arbitration clause and forced to submit to

jurisdiction in the United States.  (*Id.*)  Additionally, Allied argues that public policy weighs in

favor of arbitration given the strong federal policy in favor of arbitration where parties have

voluntarily agreed to arbitrate.  (*Id.* at 22.)  Relatedly, Allied argues that under the first-filed rule,

if applicable, the arbitration in Bermuda constitutes the first-filed action, and that as a matter of

comity, anti-suit injunctions should be used sparingly, particularly where no bankruptcy policy

would be frustrated if this dispute were arbitrated.  (*Id.* at 22–24.)

## C.  Discussion

In the TRO Opinion, the Court already determined that the Court has personal and

subject matter jurisdiction over the Bermuda Insurers and this dispute.  The Court will not revisit

those rulings in this Opinion.

"[T]he standards for a temporary restraining order and a preliminary injunction are not

materially different," *Adelphia,* 2006 WL 1529357 at *4, and though the Court set forth an

analysis of the preliminary injunction factors in the TRO Opinion, the Court now has the benefit of briefing from both the Plaintiffs and the Bermuda Insurers.

For the reasons set forth below, the Plaintiffs have demonstrated that a preliminary injunction is warranted because they continue to suffer "irreparable harm and . . . [there are] sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tip[s] decidedly" in their favor. *Christian Louboutin*, 696 F.3d at 215.

Each of these elements is discussed in turn below.

### 1. *Irreparable Harm*

The Plaintiffs have suffered and continue to suffer from the inability to meaningfully participate in the adversary proceeding that they commenced in the forum of their choice. The Bermuda Insurers have filed motions to dismiss and motions to compel arbitration. (ECF Doc. ## 13-1, 14, 17, 20.) The Plaintiffs suffer the inequity of being unable to respond to any of these motions. As such, the Plaintiffs have demonstrated that they continue to suffer irreparable harm.

### 2. *Sufficiently Serious Questions Going to the Merits*

Here, there are sufficiently serious questions going to the merits of both the purported violation of the Bar Order and the *Barton* doctrine such that these disputes are fair grounds for litigation. As noted in the TRO, the issue whether the Bar Order has been violated is nuanced, and each party has non-frivolous arguments that this Court should entertain. For example, the Plaintiffs argue that the Bermuda Insurers impermissibly seek to collaterally attack the reasonableness of the Settlement Agreement, and that the Bermuda Insurers have asserted claims against the Plaintiffs in violation of the Bar Order. (Plaintiffs' TRO Response at 3–5.) The Bermuda Insurers maintain that the plain language of the Bar Order does not prohibit the filing of the Bermuda action. (*See* Allied TRO Response at 11 n. 4, Ex. C.)

The Court now has briefing on this issue, and will hold a hearing on the issue on January 23, 2017.  Nevertheless, this factor is satisfied as the Plaintiffs have demonstrated that there are sufficiently serious questions going to the merits of this dispute.

### 3.  The Balance of Equities

While the Plaintiffs continue to suffer the inequities described above, upon the issuance of this preliminary injunction, the Bermuda Insurers will suffer no apparent harm.  The Bermuda Insurers complain that they are being stripped of their bargained-for arbitration provision, but the Bermuda Insurers ignore the procedural framework in which this dispute currently resides.  At this juncture, the Court has not determined whether the coverage dispute should properly be heard in this Court or in arbitration in Bermuda.  The Bermuda Insurers filed motions in this Court to compel arbitration, but they filed the motions only after they obtained anti-suit injunctions from the Bermuda Court, which prevented the Plaintiffs from responding to the motions.  After the TRO Opinion was entered, the Bermuda Insurers again obtained injunction orders from the Bermuda Court handcuffing the Plaintiffs.  The Bermuda Insurers will not suffer any harm by having this Court decide the issues presented by the motions the Bermuda Insurers themselves filed in this Court.

The Bermuda Insurers have intolerably interfered in the Court's exercise of its authority and undermined the Plaintiffs' ability to participate in the proceedings properly before this Court, and in doing so, have undercut the adversarial nature of this adversary proceeding.  The balance of equities weighs in favor of granting relief for the Plaintiffs.

### 4.  The Public Interest

Additionally, public policy weighs in favor of granting injunctive relief to the Plaintiffs. As explained in the TRO, the determination whether a claim is arbitrable is complex, as is the

determination whether a claim is core or non-core, including in insurance coverage disputes.   By seeking to sidestep this entire analysis, and by taking actions that undercut this Court's ability to apprise itself of all relevant facts and arguments, the Bermuda Insurers have upset the adversarial nature of the judicial system.   Considerations of fairness and equity weigh in favor of granting relief for the Plaintiffs.

### III.    CONCLUSION

For the reasons set forth above, the Plaintiffs have demonstrated that there are sufficient grounds to issue a preliminary injunction.

**By this Order, the Bermuda Insurers are hereby RESTRAINED and ENJOINED from taking any action to enforce the following provisions in the Injunctive Orders:**

1. The [Plaintiffs] shall not, whether by themselves or through their employees, servants, agents, representatives, attorneys or otherwise, commence, prosecute or otherwise pursue litigation in the United States insofar as that litigation concerns, arises out of and/or relates to the insurance policy issued to the [Plaintiffs] by the [Bermuda Insurers], Policy No. C007357/005 ("the Policy") including, for the avoidance of doubt, litigation containing allegations of breach of "good faith and fair dealing" relating to the Policy) and/or otherwise breaches the terms of the valid and binding Bermuda arbitration agreement between the [Plaintiffs and the Bermuda Insurers].

2. The [Plaintiffs] shall not, whether by themselves or through their employees, servants, agents, representatives, attorneys or otherwise, seek and/or obtain an anti-suit injunction and/or an anti-anti-suit injunction and/or a temporary, preliminary or permanent order restraining and/or preventing the [Defendant] from pursuing and/or otherwise enforcing the said valid and binding Bermuda arbitration agreement, until trial or further order.

**For the avoidance of doubt, the Bermuda Insurers are also RESTRAINED and ENJOINED from taking any action to impede or obstruct the administration of this**

adversary proceeding.  **The Bermuda Insurers are so enjoined until further order entered**
**by the Court.**

      **IT IS SO ORDERED.**

Dated:    January 12, 2017
        New York, New York

                                       *Martin Glenn*
                                       MARTIN GLENN
                         United States Bankruptcy Judge