**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | X | **FOR PUBLICATION** |
| | : | |
| MF GLOBAL HOLDINGS LTD., *et al.*, | : | |
| | : | Chapter 11 |
| Debtors. | : | Case No. 11-15059 (MG) |
| | X | (Jointly Administered) |
| MF GLOBAL HOLDINGS LTD., as Plan | : | |
| Administrator, and MF GLOBAL ASSIGNED | : | |
| ASSETS LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | Adv. Proc. No. 16-01251 (MG) |
| | : | |
| ALLIED WORLD ASSURANCE COMPANY LTD., | : | |
| IRON-STARR EXCESS AGENCY LTD., | : | |
| IRONSHORE INSURANCE LTD., STARR | : | |
| INSURANCE & REINSURANCE LIMITED., and | : | |
| FEDERAL INSURANCE COMPANY, | : | |
| | : | |
| Defendants. | : | |
| | X | |

**MEMORANDUM OPINION AND ORDER HOLDING THE BERMUDA INSURERS IN CONTEMPT**

*A P P E A R A N C E S :*

WHITE AND WILLIAMS, LLP
*Counsel to Allied World Assurance Company, Ltd*
7 Times Square
New York, New York 10036-6524
By:    Erica Kerstein, Esq.

D'AMATO & LYNCH, LLP
*Counsel to Iron-Starr Excess Agency Ltd., Ironshore*
*Insurance Ltd., and Starr Insurance & Reinsurance*
*Limited*
Two World Financial Center
225 Liberty Street
New York, New York 10281
By:    Mary Jo Barry, Esq.
        Maryann Taylor, Esq.

JONES DAY
*Attorneys for MF Global Holdings Ltd., as Plan*
*Administrator, and MF Global Assigned Assets LLC*
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
By:     Bruce Bennett, Esq.

-and-

JONES DAY
250 Vesey Street
New York, NY 10281
By:     Edward M. Joyce, Esq.
        Jane Rue Wittstein, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Order to Show Cause Why Allied World Assurance*

*Company Ltd., Iron-Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr Insurance &*

*Reinsurance Limited Should Not be Held in Contempt* (the "Second Order to Show Cause," ECF

Doc. # 41) for violating the *Memorandum Opinion and Temporary Restraining Order* (the "TRO

Opinion" or the "TRO," ECF Doc. # 35) (s*ee MF Global Holdings Lt. v. Allied World Assurance*

*Co. Ltd. (In re MF Global Holdings Ltd.)*, ___ B.R. ___, 2016 WL 7388546 (Bankr. S.D.N.Y.

Dec. 21, 2016)) issued by this Court on December 21, 2016.  The TRO enjoined Allied World

Assurance Company Ltd., Iron-Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr

Insurance & Reinsurance Limited (together, the "Bermuda Insurers") from taking any action to

enforce certain injunctive orders issued by a Bermuda court.  Following this Court's issuance of

the TRO Opinion, the Bermuda Insurers submitted pleadings to the Supreme Court of Bermuda,

Civil Jurisdiction (Commercial Court) (the "Bermuda Court"), and appeared before the Bermuda

Court at a hearing on December 22, 2016, seeking relief tantamount to the enforcement of the

injunctive orders.

2

In response to the Second Order to Show Cause, the Bermuda Insurers filed *The Bermuda Insurers' Memorandum of Law in Opposition to Order to Show Cause Dated December 29, 2016* (the "Bermuda Insurers' Brief," ECF Doc. # [--], submitted to the Court under seal on January 3, 2017).  In support of their brief, the Bermuda Insurers also filed a number of exhibits under seal. MF Global Holdings, Ltd. ("MFGH"), as Plan Administrator, and MF Global Assigned Assets LLC ("MFGAA" and together with MFGH, the "Plaintiffs") filed the *Memorandum of Law on the Bermuda Defendants' Continued Violation of this Court's Bar Order* (the "Plaintiffs' Brief," ECF Doc. # [--], submitted to the Court under seal on December 28, 2016).  The Court granted the request to file these briefs and exhibits under seal, *except* to the extent that the Court references or cites to these documents in its Opinions or Orders.

Because the Bermuda Insurers took actions clearly prohibited by the TRO, the Court will hold the Bermuda Insurers in contempt for violating an order of this Court.

## I.    BACKGROUND

### A.  The Bar Order in the Global Settlement

On August 10, 2016, this Court entered an order approving a global settlement in these chapter 11 cases (the "Global Settlement," D.I. 2282).[1]  The Global Settlement included a bar order (the "Bar Order") which provides in relevant part:

> 3. To the extent not previously authorized by this Court, the plan injunction ("Plan Injunction") as to the Debtors and their respective property established pursuant to paragraph 75 in the *Order Confirming Amended and Restated Joint Plan of Liquidation* entered by this Court on April 5, 2013, to the extent applicable, shall be modified solely to the extent necessary, and without further order of the Bankruptcy Court, to authorize any and all actions reasonably necessary to consummate the Global Settlement, including without limitation, any payments under certain insurance policies required under the Settlement . . . .  Furthermore, any person or entity that is not a Party to the Settlement Agreement is permanently barred, enjoined, and

---

[1]    References to the docket in the main chapter 11 case will be denoted as "D.I."

3

restrained from commencing, prosecuting, or asserting any claims arising out of payments made under certain insurance policies in accordance with the Settlement Agreement or any other agreement referenced therein or associated therewith.
. . . .

7. Upon entry of this Order, any person or entity that is not a Party to the Settlement Agreement, including any Dissenting Insurer, is permanently barred, enjoined, and restrained from contesting or disputing the Reasonableness of Settlement, or commencing, prosecuting, or asserting any claims, including, without limitation, claims for contribution, indemnity, or comparative fault (however denominated an on whatsoever theory), arising out of or related to the MF Global Actions . . . .

8. For the avoidance of doubt, nothing in this Order shall preclude:

. . . (iii) any claims by the Insurance Assignees to enforce the Assigned Rights; (iv) any claim or right asserted by an MFG Plaintiff against any Dissenting Insurer on its own behalf (as distinct from the Assigned Rights) . . . .

(Global Settlement ¶¶ 3, 7, 8.)

As noted in a brief filed earlier in this adversary proceeding (the "Allied Response," ECF Doc. # 28), in connection with the Global Settlement, Allied "tendered the full limit of liability of its separately-issued excess D&O policy, but declined to make the E&O coverage provided under the Allied [policy] available . . . for a settlement" as Allied's adversaries had requested. (Allied Response at 4–5.) Pursuant to the Global Settlement, the individuals ostensibly covered by the Allied E&O policy were to assign "their rights to full payment under the Allied [policy] to the Plaintiffs" and the "assignee would immediately commence action against the [Bermuda Insurers] to obtain proceeds" under the E&O policies. (*Id.* at 5.)

### B.  The Arbitration Clauses

The insurance policies issued by the Bermuda Insurers each contain a mandatory arbitration provision.[2]  These arbitration clauses provide that all disputes arising under or relating to these policies shall be fully and finally resolved by arbitration in Bermuda.  (Complaint, Ex. B at 7.)

Allied maintains that as early as February 11, 2016, many months before the Global Settlement was reached, Allied notified MFGAA and others "of its desire to arbitrate, pursuant to the . . . arbitration clause in the Allied [policy] . . . ."  (Allied Response at 4.)  Allied further maintains that over the next eight months, "(under a reservation of rights), Plaintiffs' counsel . . . worked with [Allied] to empanel the arbitrators for the Bermuda Arbitration, pursuant to the terms of the Allied [policy]."  (*Id.*)  The Plaintiffs dispute Allied's assertions regarding the status of the alleged Bermuda arbitration.

### C.  The Complaint and the Injunctive Orders

On October 27, 2016, the Plaintiffs filed a complaint (the "Complaint," ECF Doc. # 1) initiating this adversary proceeding against the Bermuda Insurers and Federal Insurance Company.[3]  The defendants had issued the top four layers of excess E&O insurance policies to MFGH.  All other insurers in MFGH's D&O and E&O insurance towers paid their policy limits

---

[2]      For example, the Allied Policy's arbitration clause reads in relevant part:

Any and all disputes arising under or relating to this policy, including its formation and validity, and whether between the **Insurer** and the **Named Insured** or any person or entity deriving rights through or asserting rights on behalf of the **Named Insured**, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a board composed of three arbitrators to be selected for each controversy . . . .

(Complaint, Ex. B at p. 7.)

[3]      Federal Insurance Company ("Federal") did not seek to obtain an anti-suit injunction against the Plaintiffs, and is not the subject of this Order.

(to the extent not already exhausted) as part of the Global Settlement.  The Plaintiffs brought this action to recover the $25 million policy proceeds under the defendants' E&O insurance policies.

On October 28, 2016, a summons and notice of a pretrial conference was entered on the docket in this adversary proceeding.  (ECF Doc. # 2.)  On November 1, 2016, the Plaintiffs requested that the Clerk of the Court mail the summons and Complaint to the Bermuda Insurers pursuant to Rule 4(f)(2)(c)(ii).  (ECF Doc. # 3.)  The Clerk's Office entered a Certificate of Mailing showing that the Clerk's Office mailed (by DHL overnight carrier) the summons and Complaint to each of the Bermuda Insurers on November 3, 2016.  (ECF Doc. # 4.)  On November 4, 2016, the Plaintiffs filed an affidavit of service noting that the summons and Complaint were mailed to the Bermuda Insurers.  (ECF Doc. # 5.)

On November 8, 2016, the Bermuda Insurers obtained, *ex parte*, injunctive orders from the Bermuda Court, ordering that:

> [The Plaintiffs] shall not, whether by themselves or through their employees, servants, agents, representatives, attorneys or otherwise, commence, prosecute or otherwise pursue litigation in the United States insofar as that litigation concerns, arises out of and/or relates to the insurance policy issued to the [Plaintiffs] by the [Bermuda Insurers], Policy No. C007357/005 ("the Policy") including, for the avoidance of doubt, litigation containing allegations of breach of "good faith and fair dealing" relating to the Policy) and/or otherwise breaches the terms of the valid and binding Bermuda arbitration agreement between the [Plaintiffs and the Bermuda Insurers] set out in Clause IX of the Policy, until trial or further order.
>
> The [Plaintiffs] shall not, whether by themselves or through their employees, servants, agents, representatives, attorneys or otherwise, seek and/or obtain an anti-suit injunction and/or an anti-anti-suit injunction and/or a temporary, preliminary or permanent order restraining and/or preventing the [Defendant] from pursuing and/or otherwise enforcing the said valid and binding Bermuda arbitration agreement, until trial or further order.

(ECF Doc. # 7-2 at 2.)  Each of the Bermuda Insurers obtained substantially similar injunctive orders (the "Injunctive Orders").  (*See* ECF Doc. ## 7-2, 7-3.)

On November 22, 2016, the Plaintiffs submitted a letter to this Court informing the Court that the Bermuda Insurers had obtained these Injunctive Orders, and suggesting that the entry of the Injunctive Orders violated (i) the Bar Order in the Global Settlement, and (ii) the *Barton* doctrine.  (ECF Doc. # 7.)  After receiving the Plaintiffs' November 22, 2016 letter, the Court entered an order to show cause (the "First Order to Show Cause," ECF Doc. # 6) raising the issue whether the filing of proceedings in Bermuda (the "Bermuda Action") and the obtaining of the Injunctive Orders violated (i) the Bar Order included in the Global Settlement, or (ii) the *Barton* doctrine.  The Bermuda Insurers submitted briefs and declarations in response, but the Plaintiffs, on account of the Injunctive Orders, were restrained from filing any papers.

The Court conducted a hearing on the First Order to Show Cause on December 14, 2016. At this hearing, counsel to the Bermuda Insurers refused to consent to allow the Plaintiffs' counsel an opportunity to be heard in connection with the First Order to Show Cause, or any other matter.  At the hearing, counsel to the Bermuda Insurers argued that (i) the Bar Order did not prevent the Bermuda Insurers from filing the anti-suit injunction in the Bermuda Court, (ii) this Court does not have jurisdiction over the Bermuda Insurers, and (iii) service on the Bermuda Insurers was improper.  Counsel to the Plaintiffs stated their names to the Court on the record, and remained silent throughout the entire hearing.  Following the hearing, the Court declined to hold the Bermuda Insurers in contempt.

**D.  The Motions to Dismiss and to Compel Arbitration**

On November 28, 2016, both Allied and the Iron-Starr Insurers filed motions to compel arbitration (the "Motions to Compel Arbitration," ECF Doc. ## 13-1, 20).[4] Also on November 28, 2016, Allied and the Iron-Starr Insurers each filed motions to dismiss for lack of personal jurisdiction and improper service of process (the "Motions to Dismiss," ECF Doc. ## 14, 17).[5] On account of the Injunctive Orders, the Plaintiffs have not responded to these motions.

**E.  The Temporary Restraining Order**

On December 21, 2016, this Court issued the TRO, enjoining the Bermuda Insurers from taking any action to enforce certain provisions of the Injunctive Orders issued by the Bermuda Court.  As noted above, through the entry of the TRO, this Court restrained and enjoined the Bermuda Insurers from taking any action to enforce the Injunctive Orders issued by the Bermuda Court on November 8, 2016.  Specifically, the TRO restrained and enjoined the Bermuda Insurers from taking any action to enforce the following provisions of the Injunctive Orders:

> 1.  [MF Global Holdings, Ltd. ("MFGH"), as Plan Administrator, and MF Global Assigned Assets LLC ("MFGAA," together with MFGH, the "Plaintiffs" or the "MFG Parties")] shall not, whether by themselves or through their employees, servants, agents, representatives, attorneys or otherwise, commence, prosecute or otherwise pursue litigation in the United States insofar as that litigation concerns, arises out of and/or relates to the insurance policy issued to the [Plaintiffs] by the [Bermuda Insurers], Policy No. C007357/005 ("the Policy") including, for the avoidance of doubt, litigation containing allegations of breach of "good faith and fair dealing" relating to the Policy) and/or otherwise breaches the terms of the valid and binding Bermuda arbitration agreement between the [Plaintiffs and the Bermuda Insurers].

---

[4]      An affirmation of Jan E. Haylett was filed in connection with Allied's motion to compel arbitration on November 29, 2016.  (ECF Doc. # 23.)

[5]      An affirmation of Jan E. Haylett was also filed in connection with Allied's motion to dismiss on November 28, 2016. (ECF Doc. # 14-2.)

2.  The [Plaintiffs] shall not, whether by themselves or through their employees, servants, agents, representatives, attorneys or otherwise, seek and/or obtain an anti-suit injunction and/or an anti-anti-suit injunction and/or a temporary, preliminary or permanent order restraining and/or preventing the [Defendant] from pursuing and/or otherwise enforcing the said valid and binding Bermuda arbitration agreement, until trial or further order.

The TRO remained in effect for fourteen days (from December 21, 2016 to January 4, 2017), but was extended by this Court for an additional fourteen days and is set to expire at 3:00 p.m. on January 18, 2017.  (*See* ECF Doc. # 51.)

### F.  The Skeleton Argument and the December 22, 2016 Bermuda Court Orders

On December 22, 2016, the day after this Court entered the TRO, the Bermuda Insurers filed certain pleadings (the "Skeleton Argument") and appeared and were heard before the Bermuda Court.  In the Skeleton Argument, the Bermuda Insurers expressly requested certain relief from the Bermuda Court, including:

12.1      An Order that the [Bermuda Insurers] be granted leave to amend the Originating Summonses in these proceedings, pursuant to RSC Order 20 rules 5 and 7, to include a further or alternative claim for permanent injunctive relief, in the form of a permanent injunction mandating the [Plaintiffs], acting by themselves and/or acting through their employees, servants, agents, representatives, and attorneys, to terminate, discontinue, withdraw and/or to apply forthwith to dismiss (without prejudice) the Adversary Complaint proceedings commenced by the [Plaintiffs] against the [Bermuda Insurers] in the United States Bankruptcy Court, Southern District of New York, Case No: 11-15059 (MG), Adv. Proc. No: 16-01251 (MG) ("the Adversary Proceedings");

12.2      An interim injunction mandating the [Plaintiffs], acting by themselves and/or acting through their employees, servants, agents, representatives, and attorneys, to terminate, discontinue, withdraw and/or to apply forthwith (i.e. within the next 28 days) to dismiss (without prejudice) the Adversary Proceedings (as defined above).

(Skeleton Argument ¶¶ 12.1, 12.2 (emphasis in original).)  The Skeleton Argument further explains that "the [Plaintiffs'] conduct since 8 November 2016 in pursuit of the Adversary

Proceedings, especially when that conduct is assessed in conjunction with the [Plaintiffs']

actions taken before 8 November 2016, and in light of its consequences, clearly demonstrate[s]

that a mandatory anti-suit injunction is now the *minimum* relief necessary to ensure that the

[Bermuda Insurers'] contractual rights under their arbitration agreements with the [Plaintiffs] are

properly protected and preserved by [the Bermuda Court.]"  (Skeleton Argument ¶ 24.)

    In addition to the Skeleton Argument, both Allied and the Iron-Starr Insurers submitted

certain affidavits in support of their respective positions.  The Iron-Starr Insurers submitted the

Third Affidavit of Lawrence P. Engrissei (the "Third Engrissei Affidavit"), which was signed

and dated on December 20, 2016 (before the entry of the TRO); Allied submitted the Third

Affidavit of Jan Elizabeth Haylett (the "Third Haylett Affidavit," and together with the Third

Engrissei Affidavit, the "Affidavits"), which is not signed or dated.  Paragraphs 33 of the

Affidavits are essentially identical, and set forth a number of the Bermuda Insurers' concerns

that provide the basis for the relief requested from the Bermuda Court on December 22, 2016.

Specifically, the Affidavits state:

> 33. Given the [Plaintiffs'] and the [Plaintiffs'] US attorneys' deliberate
> filings and communications with the United States Bankruptcy Court
> on 22 November 2016, 23 November 2016, 12 December 2016, 14
> December 2016, and 19 December 2016 (as set out above), and the
> approach which they have thus far taken in these Bermuda proceedings
> through their Bermuda attorneys, Harneys (Bermuda) Limited, the
> [Bermuda Insurers] are extremely concerned that:
>
> 33.1 the [Plaintiffs] do not intend to comply with this Court's
> Orders and interlocutory AntiSuit Injunction dated 8 November
> 2016;
>
> 33.2 the [Plaintiffs] do not intend to comply with any permanent
> Anti-Suit Injunction which this Court might grant;
>
> 33.3 the [Plaintiffs] intend to proceed with the Adversary
> Complaint, in breach of and despite the valid and binding
> arbitration agreement between the parties (which is governed by

10

and subject to Bermuda law and a Bermuda seat), and this Court's Orders dated 8 November 2016;

33.4 the [Plaintiffs] intend to try to apply commercial pressure on the [Bermuda Insurers] to abandon their rights under the arbitration agreement and the Orders dated 8 November 2016, by (directly or indirectly) persuading United States Bankruptcy Judge Martin Glenn either to hold the [Bermuda Insurers] in breach, or contempt, of his Order dated 10 August 2016, alternatively to issue a new Order purporting to restrain the [Bermuda Insurers] from continuing, or purporting to mandate the [Bermuda Insurers] to discontinue, these Bermuda proceedings, before the Supreme Court of Bermuda can finally determine, or enforce, the [Bermuda Insurers'] claims in these proceedings against the [Plaintiffs]; and

33.5 the [Plaintiffs] intend to try to apply commercial pressure on the [Bermuda Insurers] to settle the insurance coverage dispute between the parties, not by reference to the substantive merits of the insurance coverage dispute, but by reference to the publicity, costs and risks of litigation in the United States Bankruptcy Court (in breach of the arbitration agreement, and in breach of section 46 of the Bermuda International Conciliation and Arbitration Act 1993).

(Affidavits ¶ 33.) The Affidavits also each include substantially the same requests for relief as the relief sought in the Skeleton Argument at paragraphs 12.1 and 12.2.[6] (Affidavits ¶¶ 34.1, 34.2.)

---

[6]       Specifically, the Affidavits request:

34.1      An Order that the Plaintiffs be granted leave to amend the Originating Summons in these proceedings, pursuant to RSC Order 20 rules 5 and 7, to include a further or alternative claim for permanent injunctive relief, in the form of a permanent injunction mandating the Defendants, acting by themselves and/or acting through their employees, servants, agents, representatives, and attorneys, to terminate, discontinue, withdraw and/or to apply forthwith to dismiss (without prejudice) the adversary proceedings commenced by the Defendants against the Plaintiffs in the United States Bankruptcy Court, Southern District of New York, Case No: 11-15059 (MG), Adv. Proc. No: 16-01251 (MG) (the Adversary Proceedings). A copy of the draft Amended Originating Summons, for which leave to amend is sought, is attached at pages 194-197 of Exhibit LPE-3;

34.2      An interim injunction mandating the Defendants, acting by themselves and/or acting through their employees, servants, agents, representatives, and attorneys, to terminate, discontinue, withdraw and/or to apply forthwith (i.e. within the next 28 days) to dismiss (without prejudice) the adversary proceedings commenced by the Defendants against the Plaintiffs in the United States Bankruptcy Court, Southern District of New York, Case No: 11-15059 (MG), Adv. Proc. No: 16-01251 (MG) (the Adversary Proceedings) . . . .

(Affidavits ¶¶ 34.1–2 (compare with Skeleton Argument ¶¶ 12.1–2).)

At the December 22, 2016 hearing, however, the Bermuda Insurers proclaimed a different rationale in support of the relief sought in the Skeleton Argument. Alex Potts ("Potts"), counsel to the Bermuda Insurers, stated that "[t]he interlocutory relief is not designed to enforce the existing interlocutory relief, it's designed to enforce the Arbitration Agreement between the parties." (December 22, 2016 H'rg Tr. 210:19–22.) Potts did note, though, that "it would appear that there is non-compliance with the existing anti-suit injunction, which was designed to preserve the status quo, pending a trial." (December 22, 2016 H'rg Tr. 210:23–211:1.) Apparently recognizing the import of the circumstances following the issuance of the TRO,[7] Potts added that this Court "has restrained [the Bermuda Insurers] temporarily from enforcing the existing anti-suit injunctions and [the Bermuda Insurers] are not enforcing those injunctions at this stage." (December 22, 2016 H'rg Tr. 209:22–24.)

The Bermuda Court subsequently entered two orders (the "December 22, 2016 Orders") in the Bermuda proceedings initiated by (i) Allied and (ii) the Iron-Starr Insurers.[8] The December 22, 2016 Orders provide in relevant part that:

> 1. The [Bermuda Insurers] shall be granted leave to amend the Originating Summons in these proceedings, pursuant to RSC Order 20 rules 5 and 7, in the form of the draft Amended Originating Summons included in Exhibit JEH-3, to include a further or alternative claim for permanent injunctive relief, in the form of a permanent injunction mandating the [Plaintiffs], acting by themselves and/or acting through their employees, servants, agents, representatives, and attorneys, to terminate, discontinue, withdraw and/or to apply forthwith to dismiss (without prejudice) the adversary proceedings commenced by the [Plaintiffs] against the [Bermuda Insurers] in the United States Bankruptcy Court, Southern District of New York, Case No: 11-15059

---

[7]    Chief Justice Kawaley, at the hearing, observed that there was a "question of whether it might not be said that the purpose of the mandatory injunction that [the Bermuda Insurers] are seeking is to enforce the existing Order by getting additional relief." (December 22, 2016 H'rg Tr. 210:3–6.) Potts goes on to "invite [Judge Kawaley] to rule on whether or not the step [the Bermuda Insurers] are taking from the New York perspective is enforcement of an existing injunction or an application for a different injunction." (December 22, 2016 H'rg Tr. 212:10–14.)

[8]    The November 8, 2016 Injunctive Orders and the December 22, 2016 Orders were issued by Chief Justice Kawaley of the Bermuda Court in the proceedings denoted as "2016: No. 393" and "2016: No. 394."

(MG), Adv. Proc. No: 16-01251 (MG) ("the Adversary Proceedings"),
with associated relief.

2. The [Plaintiffs] shall, and are hereby mandated on an interlocutory
basis, acting by themselves and/or acting through their employees,
servants, agents, representatives, and attorneys, to terminate,
discontinue, withdraw and/or to apply forthwith (i.e. within the next 28
days) to dismiss (without prejudice) the adversary proceedings
commenced by the [Plaintiffs] against the [Bermuda Insurers] in the
United States Bankruptcy Court, Southern District of New York, Case
No: 11-15059 (MG), Adv. Proc. No: 16-01251 (MG) ("the Adversary
Proceedings"). For the avoidance of doubt, this interlocutory
injunction shall remain in force until final determination of the
[Bermuda Insurer's] Originating Summons, or until further Order of
this Court, save that the [Plaintiffs] shall be at liberty to apply to this
Court to set aside or vary the terms of paragraph 2 of this Order on at
least 48 hours' written notice to the [Bermuda Insurers].

(December 22, 2016 Orders ¶¶ 1–2.)

In the December 22, 2016 Orders, the Bermuda Court also stated that the Plaintiffs "will

not be contravened by the [Bermuda Insurers] and/or their US attorneys addressing the United

States Bankruptcy Court Southern District of New York on the limited issue of whether or not

the [Bermuda Insurers have] contravened" the Bar Order.  (December 22, 2016 Orders at 1.)

With respect to whether the Bar Order and the *Barton* doctrine (described below) have been

violated, the Court has set a schedule for one last round of briefs on those issues (January 11,

2017 for the Bermuda Insurers; January 18, 2017 for the Plaintiffs), and has scheduled argument

for 10:15 a.m., January 23, 2017.  The Court, however, remains unable to make a determination

whether this dispute is arbitrable, and will not do so until the Court has full briefing on the issue.

The December 22, 2016 Orders, which included the above-referenced relief sought by the

Bermuda Insurers in the Affidavits and Skeleton Argument, permit the Plaintiffs to address only

the limited issue whether the Bar Order was breached, but still enjoin the Plaintiffs from

conducting any other activity in this adversary proceeding.  Moreover, the December 22, 2016

Orders *require* that the Plaintiffs dismiss this adversary proceeding within 28 days, without the

13

ability to be heard on any other issues currently pending before this Court.  (December 22, 2016

Orders ¶¶ 1–2.)

On December 23, 2016, the day after entering the December 22, 2016 Orders, the

Bermuda Court issued its "Reasons for Decision," a 10-page decision explaining the basis for its

rulings in issuing the ex parte anti-suit injunctions.

### G.  The Second Order to Show Cause

On December 29, 2016, this Court entered the *Order to Show Cause Why Allied World*

*Assurance Company Ltd., Iron-Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr*

*Insurance & Reinsurance Limited Should Not be Held in Contempt* for violating the TRO.  The

Second Order to Show Cause referred to the injunctive provisions of the TRO, the relief sought

by the Bermuda Insurers in the Skeleton Argument, and the subsequently entered orders, and

ordered the Bermuda Insurers to file a written response addressing why they should not be held

in contempt for violating the TRO by asking the Bermuda Court to order the Plaintiffs to dismiss

the adversary proceeding before this Court and for other relief.

### H.  The January 4, 2017 Hearing

On January 4, 2017, the Court held a hearing to address the Second Order to Show Cause

and whether the temporary restraining order would give rise to a preliminary injunction.  At the

start of the hearing, the Court admitted into evidence the exhibits filed in connection with the

responses to the Second Order to Show Cause and the TRO Opinion, along with the transcript

from the December 22, 2016 hearing in the Bermuda Court.  Neither the Plaintiffs nor the

Bermuda Insurers offered any other evidence at the hearing.  The Court heard argument from

both the Plaintiffs and the Bermuda Insurers on whether the Bermuda Insurers willfully violated

a clear and unambiguous provision in the TRO.  The Court also heard argument on whether there

are grounds to issue a preliminary injunction to further enjoin the Bermuda Insurers from taking

any action to enforce the provisions of the Injunctive Orders.

## II.      THE PARTIES' CONTENTIONS

### A.  The Plaintiffs' Contentions

The Plaintiffs, at the January 4, 2017 hearing, argued that the Skeleton Argument, the

Affidavits, and the transcript of the December 22, 2016 hearing in Bermuda, read together,

demonstrate that the Bermuda Insurers have willfully violated the TRO.  Specifically, the

Plaintiffs argue that the basis for the injunctive relief outlined in the Affidavits, at least one of

which is dated December 20, 2016, is materially different than the rationale set forth in court

before Chief Justice Kawaley on December 22, 2016.  The Plaintiffs point out that in the

Affidavits, the Bermuda Insurers argue that additional relief is required because the Plaintiffs "do

not intend to comply with [the Bermuda Court's] Orders and interlocutory Anti-Suit Injunction

dated 8 November 2016" and "do not intend to comply with any permanent Anti-Suit Injunction

which [the Bermuda Court] might grant . . . ."  (Affidavits ¶¶ 33.1, 33.2.)  At the December 22,

2016 hearing, however, counsel to the Bermuda Insurers states that *the very same relief*

requested in the Affidavits and Skeleton Arguments "is not designed to enforce the existing

interlocutory relief, it's designed to enforce the Arbitration Agreement between the parties."

(December 22, 2016 H'rg Tr. 210:19–22.)

The Plaintiffs argue that this inconsistency stems from the fact that the Affidavits were

prepared before the issuance of the TRO, and the December 22, 2016 hearing occurred after the

entry of the TRO.  The Plaintiffs argue that the Bermuda Insurers were aware that the relief they

were seeking from the Bermuda Court was tantamount to enforcement of the Injunctive Orders

(as explained in the Affidavits) because at the December 22, 2016 hearing, counsel to the

Bermuda Insurers plainly stated that this Court has "restrained [the Bermuda Insurers] temporarily from enforcing the existing anti-suit injunctions" and the Bermuda Insurers only altered the purported rationale for the relief requested in an attempt to avoid a flagrant violation of the TRO.

### B.  The Bermuda Insurers' Contentions

The Bermuda Insurers argue that they have not violated the TRO, and by seeking the relief they requested in the Bermuda Court on December 22, 2016, they were merely "prosecuting the case" they brought in Bermuda in compliance with the language of the TRO. *See TRO Opinion*, 2016 WL 7388546, at *16 ("But, to be clear, at this stage of this case, the Court is not enjoining the Bermuda Insurers from prosecuting the case they filed in the Bermuda Court.").  Specifically, the Bermuda Insurers argue that they did not take "any action to enforce" the Injunctive Orders, though in their brief, the Bermuda Insurers acknowledge that they sought an injunction ordering the Plaintiffs to move to dismiss this adversary proceeding within 28 days. (Bermuda Insurers' Brief at 4.)  The Bermuda Insurers also note in their brief that in their Skeleton Argument, they state that "*nothing* in the [Bermuda Insurers'] . . . Skeleton Argument, nor in the hearing that is scheduled to take place on 22 December 2016 either is, or is intended to be, '*an action to enforce*' the '*Injunctive Orders*' dated 8 November 2016, or any of the provisions thereof, whether directly or indirectly."  (Bermuda Insurers' Brief at 4–5 (citing the Skeleton Argument ¶13).)

Additionally, the Bermuda Insurers argue that sanctions for contempt are not warranted because the Bermuda Insurers did not willfully violate the TRO, the Plaintiffs have not suffered any specific damages as a result of the alleged violation of the TRO, and the Plaintiffs declined

to put forth any evidence or argument before the Bermuda Court in connection with the hearing

on December 22, 2016 in Bermuda.  (Bermuda Insurers' Brief at 13–14.)

### III.        <u>LEGAL STANDARD</u>

#### A.  Court's Authority to Punish for Contempt

Courts have inherent power to enforce compliance with their lawful orders through civil

contempt.  *See Spallone v. United States*, 493 U.S. 265 (1990); *Shillitani v. United States*, 384

U.S. 364, 369 (1966).  As the Supreme Court stated in *Ex parte Robinson*, 86 U.S. 505, 510

(1874), "the power to punish for contempt is inherent in all courts; its existence is essential to the

preservation of order in judicial proceedings, and to the enforcement of the judgments, orders

and writs of the courts and, consequently, to the due administration of justice."

Courts have embraced the inherent contempt authority as a power "necessary to the

exercise of all others."  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831

(1994) ("Courts independently must be vested with power to impose silence, respect, and

decorum, in their presence, and submission to their lawful mandates, and to preserve themselves

and their officers from the approach and insults of pollution."); *see also Roadway Express, Inc.

v. Piper*, 447 U.S. 752, 764 (1980) (stating that contempt powers are "the most prominent" of

court's inherent powers "which a judge must have and exercise in protecting the due and orderly

administration of justice and in maintaining the authority and dignity of the court").

The power to impose civil contempt sanctions applies in Bankruptcy Court as well.

Indeed, it is well established that bankruptcy courts have power to enter civil contempt orders.

*In re MarketXT Holdings Corp.*, Case No. 04-12078, 2006 WL 408317, at *1 (Bankr. S.D.N.Y.

Jan. 27, 2006) ("It is well accepted, in light of the 2001 amendments to Rule 9020, that

bankruptcy courts have power to enter civil contempt orders."); *see also In re World Parts, LLC*,

291 B.R. 248, 253 (Bankr. W.D.N.Y.2003) ("Bankruptcy courts possess the power to impose

sanctions for acts of civil contempt.") (citing *In re Chateaugay Corp.*, 920 F.2d 183, 187 (2d Cir.

1990)).

### B.  The Objectives of Civil Contempt

The purpose of civil contempt is to compel a reluctant party to do what a court requires of

him.  *See Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986); *see also Shillitani*, 384 U.S. at

368 (stating that the act of disobedience consisted solely "in refusing to do what had been

ordered" and the judgments imposed conditional imprisonment for the purpose of compelling the

witnesses to obey the orders to testify).  Civil contempt sanctions may also compensate for any

harm that previously resulted.  *See Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir.

1998); *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (stating that sanctions for civil

contempt serve two purposes: to coerce future compliance and to remedy any harm past

noncompliance caused the other party).

### C.  Standards for Imposing Civil Contempt

A court's inherent power to hold a party in civil contempt may be exercised only when

(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of

noncompliance is clear and convincing, and (3) the party has not diligently attempted in a

reasonable manner to comply.  *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.

1995); *Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp. 2d 349, 363 (E.D.N.Y. 1998).  "Clear

and unambiguous" means that the clarity of the order must be such that it enables the enjoined

party "to ascertain from the four corners of the order precisely what acts are forbidden."

*Monsanto Co.*, 13 F. Supp. 2d at 363; *see also Terry*, 886 F.2d at 1351–52 (finding that the order

could serve as the foundation for a contempt citation because it was sufficiently specific and

clear as to what acts were proscribed to enable defendants to ascertain precisely what they could and could not do).

## IV.    DISCUSSION

The Bermuda Insurers argue that by asking the Bermuda Court to order the Plaintiffs to dismiss the adversary proceeding, they were simply following "the normal course of the already-pending Bermuda proceedings." (Bermuda Insurers' Brief at 11.) But this simplistic characterization conveniently ignores the fact that the Injunctive Orders restrained the Plaintiffs from prosecuting or otherwise pursuing litigation in the U.S. relating to the underlying insurance policy, and the Bermuda Insurers, through the Skeleton Argument, the Affidavits, and argument made at the December 22, 2016 hearing, asked the Bermuda Court to order the Plaintiffs to dismiss the adversary proceeding altogether. This is substantively indistinguishable from enforcement of the Injunctive Orders. The Bermuda Insurers have consistently undermined this Court's ability to adjudicate the issues properly before it, and in order to protect "the due and orderly administration of justice," the Court will hold the Bermuda Insurers in contempt. *Roadway Express*, 447 U.S. at 764.

### A.  The TRO Opinion was Clear and Unambiguous

The TRO Opinion clearly stated that the Bermuda Insurers were restrained and enjoined from taking any action to enforce the Injunctive Orders issued by the Bermuda Court. *TRO Opinion*, 2016 WL 7388546, at \*17. The TRO Opinion did not enjoin the Bermuda Insurers from proceeding in the Bermuda Court altogether, and permitted the parties to appear and argue their respective positions before the Bermuda Court. For example, the parties were not prohibited from arguing in the Bermuda Court that the dispute is arbitrable. Put another way, the Bermuda Insurers were not completely enjoined "from prosecuting the case they filed in the Bermuda Court," but were enjoined from seeking to enforce the Injunctive Orders, which have

prevented this Court and the Plaintiffs from addressing the issues raised in this adversary

proceeding. *Id.*

### B. Proof of the Bermuda Insurers' Noncompliance is Clear and Convincing

The evidentiary record in this case is substantial; the affidavits, pleadings, and hearing

transcripts demonstrate that the Bermuda Insurers' noncompliance with the TRO is clear and

convincing.

First, the Affidavits, prepared before the issuance of the TRO Opinion, set forth the relief

the Bermuda Insurers were seeking, and the reasons why they were seeking this relief. As noted

above, the Affidavits explain the Bermuda Insurers' position that the Plaintiffs intend to proceed

with the adversary proceeding in this Court, and do not intend to comply with the Injunctive

Orders, and as such, the Bermuda Insurers seek an injunction ordering the Plaintiffs to dismiss

the adversary proceeding in this Court. (Affidavits ¶ 33.)

After the issuance of the TRO Opinion, however, the Bermuda Insurers, though still

seeking the same relief in the Skeleton Argument at paragraph 12 as the relief laid out in the

Affidavits at paragraph 34 (an order requiring the Plaintiffs to dismiss this adversary

proceeding), changed the purported rationale for the relief to a supposed desire to "preserve the

status quo" and "enforce the Arbitration Agreement." (December 22, 2016 H'rg Tr. 210:21–22,

25.) The fact that the Bermuda Insurers changed their tune in this way points strongly to the fact

that the Bermuda Insurers knew that the relief they were seeking was noncompliant with the

TRO.

Ultimately, though, the simple fact that the Bermuda Insurers petitioned the Bermuda

Court to order the Plaintiffs to dismiss this adversary proceeding *after* the issuance of the TRO

provides sufficient grounds for this Court to find that the Bermuda Insurers violated the TRO.

Through the TRO Opinion, this Court restrained and enjoined the Bermuda Insurers from taking any action to enforce the provision of the Injunctive Order that provides, in part, that the Plaintiffs shall not prosecute litigation in the United States relating to the underlying insurance policies.  On December 22, 2016, the day after the TRO Opinion was issued, the Bermuda Insurers argued before Chief Justice Kawaley that the Bermuda Court should order the Plaintiffs to dismiss this adversary proceeding altogether.

### C.   The Bermuda Insurers Have Not Attempted to Comply with the TRO

Despite the Bermuda Insurers' numerous proclamations to the contrary, the evidentiary record is clear that the Bermuda Insurers have flouted the proscriptions of the TRO.  If the Bermuda Insurers actually intended to comply with the TRO, they would not have asked the Bermuda Court to order the Plaintiffs to dismiss this adversary proceeding.

### IV.        CONCLUSION

For the reasons set forth above, the Court holds the Bermuda Insurers in contempt and orders the following relief.

**The Bermuda Insurers shall have seven (7) days from the date of this Order to have the Bermuda Court vacate the Injunctive Orders and the December 22, 2016 Orders issued by the Bermuda Court at the request of the Bermuda Insurers.  If the Bermuda Insurers fail to have those orders vacated within that time, the Court will strike all of the Bermuda Insurers' pleadings filed in this adversary proceeding and enter a default in favor of the Plaintiffs.**

If the pleadings are stricken and a default is entered, the case will then proceed in this Court with an inquest to determine and impose damages.  In addition, on a proper showing, the

Court will impose monetary sanctions to compensate the Plaintiffs for any harm that resulted

from the contempt.

**IT IS SO ORDERED.**

Dated:     January 12, 2017
           New York, New York

*Martin Glenn*
_____
MARTIN GLENN
United States Bankruptcy Judge
