**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | X : | **FOR PUBLICATION** |
| MF GLOBAL HOLDINGS LTD., *et al.*, | : : | Chapter 11 |
| Debtors. | : : | Case No. 11-15059 (MG) |
| | X | (Jointly Administered) |
| MF GLOBAL HOLDINGS LTD., as Plan Administrator, and MF GLOBAL ASSIGNED ASSETS LLC, | : : : : | |
| Plaintiffs, | : : | |
| | : | Adv. Proc. No. 16-01251 (MG) |
| v. | : : | |
| ALLIED WORLD ASSURANCE COMPANY LTD., IRON-STARR EXCESS AGENCY LTD., IRONSHORE INSURANCE LTD., STARR INSURANCE & REINSURANCE LIMITED., and FEDERAL INSURANCE COMPANY, | : : : : : | |
| Defendants. | : : X | |

### MEMORANDUM OPINION AND ORDER FINDING THAT THE BERMUDA INSURERS VIOLATED THE BARTON DOCTRINE

*A P P E A R A N C E S:*

WHITE AND WILLIAMS, LLP
*Counsel to Allied World Assurance Company, Ltd*
7 Times Square
New York, New York 10036
By: Erica Kerstein, Esq.

D'AMATO & LYNCH, LLP
*Counsel to Iron-Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr Insurance & Reinsurance Limited*
Two World Financial Center
225 Liberty Street
New York, New York 10281
By: Mary Jo Barry, Esq.
    Maryann Taylor, Esq.

JONES DAY
*Attorneys for MF Global Holdings Ltd., as Plan Administrator, and MF Global Assigned Assets LLC*
555 South Flower Street, 50th Floor
Los Angeles, California 90071
By:   Bruce Bennett, Esq.

-and-

JONES DAY
250 Vesey Street
New York, New York 10281
By:   Edward M. Joyce, Esq.
       Jane Rue Wittstein, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

This is the fourth written opinion in this adversary proceeding since it was filed on October 27, 2016, with each of the opinions addressing whether this Court or a court in Bermuda can and will address the claims and defenses arising in this case, including whether the underlying disputes must be arbitrated in Bermuda.[1] The complaint names as defendants five insurers that provided excess errors and omissions ("E&O") insurance coverage to MF Global Holdings Ltd. and its subsidiaries and affiliates, and their officers and directors. The plaintiffs here are MF Global Holdings Ltd. ("MFGH"), as Plan Administrator, and MF Global Assigned Assets LLC ("MFGAA" and together with MFGH, the "Plaintiffs"). The complaint seeks to recover the full policy limits plus additional damages resulting from these insurers refusal to pay policy proceeds in connection with a global settlement of MDL litigation pending in the United States District Court for the Southern District of New York (the "Global Settlement"). The MDL

---

[1] The first three opinions can be found at *In re MF Global Holdings Ltd.*, 561 B.R. 608 (Bankr. S.D.N.Y. 2016) (order issuing temporary restraining order) [hereinafter "*TRO Opinion*"]; *In re MF Global Holdings Ltd.*, __ B.R. __, 2017 WL 119338 (Bankr. S.D.N.Y. Jan. 12, 2017) (order granting preliminary injunction) [hereinafter "*Preliminary Injunction Opinion*"]; *In re MF Global Holdings Ltd.*, __ B.R. __, 2017 WL 113606 (Bankr. S.D.N.Y. Jan. 12, 2017) (order holding Bermuda-based insurers in contempt) [hereinafter "*Contempt Opinion*"] (collectively, the "Prior Opinions"). Familiarity with those opinions is assumed. Those opinions describe the background and circumstances of the issues arising in this adversary proceeding. Capitalized terms not defined herein shall have the definitions ascribed to them in the TRO Opinion.

cases asserted claims against the officers and directors of MFGH and its affiliates (and other defendants) for claims arising from the collapse of MF Global in October 2011. On August 10, 2016, this Court entered an order approving the Global Settlement, which included a bar order ("Bar Order") and an assignment of the settling officers' and directors' rights to coverage under these defendants' E&O policies. (D.I. 2282.)[2]

Four of the five insurer defendants in this case are based in Bermuda (the "Bermuda Insurers").[3] The Bermuda Insurers responded to the filing of the adversary proceeding by filing cases in the Supreme Court of Bermuda, Civil Jurisdiction (Commercial Court) (the "Bermuda Court") and obtaining *ex parte* anti-suit injunctions (the "Bermuda anti-suit injunctions") prohibiting the Plaintiffs from prosecuting this adversary proceeding. The Bermuda Insurers contend and sought orders from the Bermuda Court requiring the Plaintiffs to arbitrate their disputes in Bermuda based on arbitration clauses contained in their E&O policies. The Plaintiffs contend that this Court, rather than arbitration in Bermuda, is the proper forum to resolve the coverage disputes. The Bermuda Insurers filed motions in this Court to compel arbitration but the Bermuda anti-suit injunctions prevented the Plaintiffs from opposing the motions in this Court.

In the three earlier opinions in this case, the Court first issued a temporarily restraining order ("TRO") barring the Bermuda Insurers from enforcing the Bermuda anti-suit injunctions, then issued a preliminary injunction extending the relief granted in the TRO, and issued an opinion holding the Bermuda Insurers in contempt for violating the TRO. The Plaintiffs have contended since the Bermuda Insurers filed the Bermuda proceedings that the commencement of

---

[2]    References to the docket in the main chapter 11 case will be denoted as "D.I."

[3]    The Bermuda Insurers are Allied World Assurance Company Ltd., Iron–Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr Insurance & Reinsurance Limited.

those proceedings and the obtaining of the anti-suit injunctions violated the *Barton* Doctrine (explained below) and the Bar Order contained in the August 10, 2016 order approving the Global Settlement. The anti-suit injunctions prevented the Plaintiffs from briefing and arguing the issues under the *Barton* Doctrine and the Bar Order. After the Court issued the TRO and preliminary injunction, the Court set a briefing and argument schedule specifically focused on those two issues. The Court heard argument during the morning of January 23, 2017, and announced a ruling from the bench concluding that the Bermuda Insurers violated the *Barton* Doctrine by filing the Bermuda proceedings.[4] The Court explained the basis for its ruling from the bench, but also indicated that a written opinion would follow. A written order was entered requiring the Bermuda Insurers to dismiss their Bermuda actions (ECF Doc. # 78), followed the next day by another order clarifying that the Court required that the Bermuda actions must be dismissed without prejudice. (ECF Doc. # 82.) This Opinion elaborates on the reasons for the relief ordered by the Court. After the entry of the two orders, the Bermuda Insurers complied with the orders and discontinued the Bermuda actions. The Court has scheduled a case management conference for February 23, 2017, and directed the parties to confer on a schedule for briefing and hearing argument of the Bermuda Insurers' motions to compel arbitration, and other matters.

This Opinion addresses one of the central issues in this adversary proceeding—namely, whether the Bermuda Insurers violated the *Barton* Doctrine by initiating proceedings against the Plaintiffs in Bermuda without leave of this Court. In light of the decision on the *Barton*

---

[4] The Court announced its decision from the bench, and promptly entered a written order granting relief, because a hearing was scheduled for the Bermuda Court that same afternoon in which the Bermuda Insurers were seeking additional relief.

4

Doctrine, the Court concludes that it is unnecessary at this time to decide whether the Bermuda Insurers violated the Bar Order in the Global Settlement by filing the Bermuda proceedings.

After the entry of the TRO Opinion, which enjoined the Bermuda Insurers from taking any action to enforce certain provisions of the injunctive orders issued by the Bermuda court, Allied World Assurance Company Ltd. ("Allied") filed the *Memorandum of Law in Support of Defendant Allied World Assurance Company, Ltd's Opposition to Application of the Bar Order and* Barton *Doctrine* (the "Allied Opposition," ECF Doc. # 62), and Iron-Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr Insurance & Reinsurance Limited ("the Iron-Starr Insurers") filed the *Iron-Starr Defendants' Memorandum of Law in Opposition to the Application of the Bar Order and* Barton *Doctrine* (the "Iron-Starr Opposition," ECF Doc. # 64). Allied also filed the *Affidavit of Erica Kerstein* (the "Kerstein Affidavit," ECF Doc. # 63) and several exhibits; the Iron-Starr Insurers filed the *Declaration of Mary Jo Barry* (ECF Doc. # 65) and several exhibits.[5]

The Plaintiffs filed the *Memorandum of Law on the Bermuda Defendants' Continued Violation of This Court's Bar Order* (the "Plaintiffs' Opening Brief," ECF Doc. # [--], filed under seal on December 28, 2016) along with certain exhibits, and the *Omnibus Response Memorandum of Law on the Bermuda Defendants' Continued Violation of This Court's Bar Order* (the "Plaintiffs' Response," ECF Doc. # 68), along with the affidavit of Edward Joyce (the "Joyce Affidavit," ECF Doc. # 69) and several exhibits.

---

[5] Earlier in the case, on December 7, 2016, Allied filed a brief addressing the Bar Order and *Barton* Doctrine issues (the "Allied Response," ECF Doc. # 28), as did the Iron-Starr Insurers (the "Iron-Starr Response," ECF Doc. # 32.)

5

## I. BACKGROUND

The Prior Opinions describe the background of the MF Global Chapter 11 and SIPA cases, the confirmed Chapter 11 Plan, and the Global Settlement. Additional relevant facts are set forth below.

The *Amended and Restated Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") was confirmed on April 5, 2013. (D.I. 1288.) Under the terms of the Plan, MFGH, as Plan Administrator, is responsible for liquidating all property under the Plan and making distributions to creditors.[6] After the Plan was confirmed, a "Sale and Assumption Agreement" (D.I. 2114, Ex. B) was approved on August 19, 2015. (D.I. 2123.) The Sale and Assumption Agreement provides at section 1.1 that MF Global Inc. (or "MFGI") agrees to assign certain rights to MFGH, as Plan Administrator, or MFGH's designee. Specifically, at sections 1.1 (b) and (c), the Sale and Assumption Agreement provides for MFGI to transfer to MFGH its rights, remedies, title, and interests arising out of, or related to any and all existing claims or recoveries arising from certain E&O and D&O policies. (Sale and Assumption Agreement § 1.1.) The order approving the Sale and Assumption Agreement provides that, following certain other distributions, "[a]ll remaining Assigned Rights and their proceeds shall be allocated among the Chapter 11 Debtors by the Plan Administrator . . . ." (D.I. 2123 at 8.)

MFGAA was formed under Delaware law on August 26, 2015 as a limited liability company to retain the assets assigned in satisfaction of the Debtors' claims. MFGH is the managing member of MFGAA. MFGAA was assigned all claims, rights, title, and benefits of MFGI with respect to certain assets, including with respect to certain E&O and D&O policies,

---

[6]    After confirmation of this Plan, several further amendments to the confirmed plan were made and approved by this Court, but those changes did not materially alter the provisions relating to liquidation and distributions of assets.

6

and maintains the right to recover on all claims previously held by MFGI's estates. (*See* Plaintiffs' Response at 10–11.)

The E&O insurance policies issued by the Bermuda Insurers each contain a mandatory arbitration provision. (Allied Response at 3; Iron-Starr Response at 4.) These arbitration clauses[7] provide that all disputes arising under or relating to these policies shall be fully and finally resolved by arbitration in Bermuda. (*Id.*) But where arbitration law and bankruptcy law clash, the analysis whether particular disputes must be arbitrated is more nuanced. As explained in the TRO Opinion and the Preliminary Injunction Opinion,

> *Under U.S. law*, the answer to the question whether particular disputes must be arbitrated depends on the application of both arbitration law *and* U.S. bankruptcy law. It is a nuanced analysis. . . . .
>
> Courts in this district have recognized that when a Bankruptcy Court is presented with a motion to compel arbitration . . . the Court must apply a four-part test:
>
>> [F]irst, it must determine whether the parties agree to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.
>
>> Naturally, [w]hen arbitration law meets bankruptcy law head on, clashes inevitably develop.

---

[7] For example, the Allied Policy's arbitration clause reads in relevant part:

> Any and all disputes arising under or relating to this policy, including its formation and validity, and whether between the Insurer and the Named Insured or any person or entity deriving rights through or asserting rights on behalf of the Named Insured, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a board composed of three arbitrators to be selected for each controversy . . . .

(Complaint, Ex. B at 7.)

7

> Specifically, [t]he issue of waiver predominates arbitration disputes involving bankruptcy claims, and the first indication of waiver is whether a claim is core or non-core. Despite what the Bermuda Insurers may have attested to before the Bermuda Court, the determination of whether a claim is core or non-core can be complex, including in insurance coverage disputes.

*TRO Opinion*, 561 B.R. at 627 (internal quotation marks and citations omitted); *Preliminary Injunction Opinion*, 2017 WL 119338, at *4 (internal quotation marks and citations omitted); see also *In re U.S. Lines, Inc.*, 197 F.3d 631, 636–37 (2d Cir. 1999).

## II.    THE PARTIES' ARGUMENTS

### A. The Plaintiffs' Arguments

*1. The Bar Order*

The Plaintiffs argue that by demanding costs and attorneys' fees in connection with the Bermuda proceedings, the Bermuda Insurers have plainly brought a "claim" against the Plaintiffs in clear violation of the Bar Order.[8] (Plaintiffs' Response at 3–4.) Additionally, the Plaintiffs

---

[8] The Bar Order provides in relevant part:

> 3. [T]he plan injunction ("Plan Injunction") as to the Debtors and their respective property established pursuant to paragraph 75 in the *Order Confirming Amended and Restated Joint Plan of Liquidation* . . . shall be modified solely to the extent necessary, and without further order of the Bankruptcy Court, to authorize any and all actions reasonably necessary to consummate the Global Settlement, including without limitation, any payments under certain insurance policies required under the Settlement . . . . Furthermore, any person or entity that is not a Party to the Settlement Agreement is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any claims arising out of payments made under certain insurance policies in accordance with the Settlement Agreement or any other agreement referenced therein or associated therewith.
> . . . .
>
> 7. Upon entry of this Order, any person or entity that is not a Party to the Settlement Agreement, including any Dissenting Insurer, is permanently barred, enjoined, and restrained from contesting or disputing the Reasonableness of Settlement, or commencing, prosecuting, or asserting any claims, including, without limitation, claims for contribution, indemnity, or comparative fault (however denominated an on whatsoever theory), arising out of or related to the MF Global Actions . . . .
>
> 8. For the avoidance of doubt, nothing in this Order shall preclude:

8

argue that the Bermuda Insurers are seeking to "collaterally attack" the reasonableness of the MDL settlement.  (Plaintiffs' Opening Brief at 3–5.)  Specifically, the Plaintiffs note that the Bermuda Insurers have taken the position that the claims under the Global Settlement are uninsurable claims for "disgorgement and/or restitution," and the Bar Order expressly precludes any insurer not a party to the Global Settlement from challenging the insurability of claims covered under the Global Settlement.  (Plaintiffs' Opening Brief at 4.)  Therefore, the Plaintiffs reason, this is a challenge to whether the E&O tower was "properly" and "fairly" exhausted.  (*Id.* at 5; Plaintiffs' Response at 6.)  Relatedly, the Plaintiffs argue that, contrary to Allied's representations, MFGH *does* have rights under the Global Settlement to prosecute the assigned claims under the E&O policies at issue here, and that Allied is incorrect in asserting that MFGAA is the only entity entitled to pursue the disputed policy proceeds.  (Plaintiffs' Response at 6–7.)

### 2. *The* Barton *Doctrine*

The Plaintiffs argue that the Bermuda Insurers have violated the *Barton* Doctrine because MFGH and MFGAA were assigned the rights of the individual insureds against the Bermuda Insurers under the Plan, and the Plaintiffs are entitled to the protections of the *Barton* Doctrine in pursuing those rights in an effort to marshal and liquidate estate assets.  (Plaintiffs' Response at 11–12.)  The Plaintiffs emphasize that MFGAA "is merely the vehicle created by MFGH under the Plan to hold the assets assigned by MFGI," and together with MFGH, is tasked with

---

. . . (iii) any claims by the Insurance Assignees to enforce the Assigned Rights; (iv) any claim or right asserted by an MFG Plaintiff against any Dissenting Insurer on its own behalf (as distinct from the Assigned Rights) . . . .

(Global Settlement ¶¶ 3, 7, 8.)

9

marshaling and liquidating estate assets. (Plaintiffs' Response at 10–11.)[9] As such, the Plaintiffs maintain that both MFGH, as Plan Administrator, and MFGAA are entitled to protection under the *Barton* Doctrine. Also, the Plaintiffs note that the Bermuda Insurers do not claim to have been unaware of the *Barton* Doctrine, as the Bermuda Insurers cited to case law in their submissions to the Bermuda Court that extensively discusses the Doctrine. (Plaintiffs' Response at 9 n. 16.)

### B. The Bermuda Insurers' Arguments

#### 1. *The Bar Order*

The Bermuda Insurers maintain that the plain text of the Bar Order does not prohibit the Bermuda anti-suit injunctions. (Allied Response at 7–9; Iron-Starr Response at 9–11). The Bermuda Insurers also argue that the intent behind the Bar Order was primarily to prevent collateral attacks against the Global Settlement, and that the filing of proceedings in Bermuda did not violate the spirit of the Bar Order because the Bermuda Insurers do not seek to upend any portion of the Global Settlement. (Allied Response at 10–12; Iron-Starr Response at 11–14.)

#### 2. *The* Barton *Doctrine*

The Bermuda Insurers argue that the Bermuda proceedings are not a suit against a court-appointed officer in his/her official capacity, and thus does not constitute a *Barton* violation because the Bermuda proceedings were only filed to defend a pre-existing arbitration clause. The Bermuda Insurers maintain that MFGH, though a court-appointed officer, does not directly hold the right to pursue any recovery of the underlying insurance policy proceeds, rendering the *Barton* Doctrine inapplicable. (Allied Opposition at 6.)

---

[9] The Plaintiffs also point out that "the three remaining Debtors are the only members of MFGAA, the [Allied and Iron-Starr policy] proceeds will flow to them, and MFGH is responsible, as both the managing member of MFGAA and under the Sale and Assumption Agreement, for prosecuting the claims under [these policies]." (Plaintiffs' Response at 11.)

10

Additionally, the Bermuda Insurers contend that the *Barton* Doctrine is typically applied in suits against court officers in entirely different circumstances, such as where a trustee commits malpractice, breaches a fiduciary duty, or violates an individual's constitutional rights. (Allied Response at 13–19; Iron-Starr Response at 15–20.) The Bermuda Insurers also suggest that the Bermuda proceedings do not "interfere with creditors' claims or the administration of the estate," a scenario the *Barton* Doctrine is designed to prevent, because MFGH is the only relevant "estate," and the MFGH does not hold title to proceeds of the underlying policies. (Allied Opp. at 5.)

### III. LEGAL STANDARD

#### A. The Bar Order

It is well settled that a bankruptcy court retains jurisdiction post-confirmation to interpret and enforce its own orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[A]s the Second Circuit recognized . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *see also In re Lyondell Chem. Co.,* 445 B.R. 277, 287 (Bankr. S.D.N.Y. 2011) ("The Second Circuit and other bankruptcy courts in this district have ruled that a bankruptcy court retains core jurisdiction to interpret and enforce its own prior orders, including and especially confirmation orders."); *In re Charter Communications*, 2010 WL 502764, at *4 (Bankr. S.D.N.Y. 2010) ("All courts retain the jurisdiction to interpret and enforce their own orders."). Judge Peck, in *Charter Communications*, discussed how following plan confirmation, a bankruptcy court's jurisdiction "does begin to diminish in importance," but that when a dispute involving the interpretation of prior orders is "sufficiently close in time to confirmation of the [p]lan and sufficiently critical to the integrity of the [p]lan's structure," it

11

may well be appropriate for a court to "take firm control of and decide" an issue. *Charter Communications*, 2010 WL 502764, at *4.

### B.    The *Barton* Doctrine

"The *Barton* Doctrine, developed from common law by the Supreme Court, provides that a suit may not be brought against a receiver without leave of such receiver's appointing court." *McIntire v. China MediaExpress Holdings, Inc.*, 113 F. Supp. 3d 769, 772 (S.D.N.Y. 2015); *Barton v. Barbour*, 104 U.S. 126, 136–37 (1881) ("[W]hen the court of one State has . . . property in its possession for administration as trust assets, and has appointed a receiver to aid in the performance of its duty by carrying on the business to which the property is adapted . . . a court of another State has not jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him . . . .").

"The Second Circuit has recognized that the *Barton* Doctrine extends to bankruptcy as well as receivership, and lower courts have applied it to declaratory judgment actions, as well as suits seeking damages." *McIntire*, 113 F. Supp. 3d at 772 (internal citations omitted); *see also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 460 B.R. 106, 116 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) [hereinafter "*Madoff*"] (citing *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir.1996)) (describing the "well-recognized line of cases" extending the *Barton* Doctrine to bankruptcy trustees, and its application in the post-receivership context). The court in *McIntire* noted that "the rationale underlying *Barton* extends to arbitrations" in holding that non-party insurers were required to seek leave from the court to name a receiver as a party to an arbitration proceeding. *McIntire*, 113 F. Supp. 3d at 774.

12

"In addition to protecting a court-appointed receiver from personal liability, the *Barton* Doctrine is intended to protect the receivership court's 'overriding interest in [the] administration of the estate.'" *McIntire*, 113 F. Supp. 3d. at 773 (citation omitted); *see also In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (explaining that the *Barton* Doctrine "enables the Bankruptcy Court to maintain better control over the administration of the estate"). Other courts have noted that the *Barton* Doctrine can also serve to "centralize bankruptcy litigation" and "keep a watchful eye" on court-appointed officers. *In re Yellowstone Mountain Club, LLC*, 841 F.3d 1090, 1094 (9th Cir. 2016) (quoting *In re Yellowstone Mountain Club, LLC*, 2013 WL 1099155, at *3 (Bankr. D. Mont. 2013)).

While there is a limited statutory exception to the Doctrine not applicable here,[10] as this Court recently concluded, the *Barton* Doctrine is not restricted to legal actions brought within the United States, and requires that "a party who seeks to file suit in an international forum" obtain leave of the appointing court. *Preliminary Injunction Opinion*, 2017 WL 119338, at *6 (quoting *ACE Insurance Co., Ltd. v. Smith (In re BCE West, L.P.)*, 2006 WL 8422206, at *8 (D. Ariz. Sept. 20, 2006)).

Recently, the Ninth Circuit applied the *Barton* Doctrine to bar claims brought against a member of a committee of unsecured creditors. *Yellowstone*, 841 F.3d at 1095 ("Because creditors have interests that are closely aligned with those of a bankruptcy trustee, there's good

---

[10] The limited exception to the *Barton* Doctrine set forth in 28 U.S.C. § 959(a) provides in relevant part that "[t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a). Given that there is no current business being carried out in connection with this case, this statutory exception is inapplicable. *See Lehal Realty*, 101 F.3d at 276 (finding that the exception in section 959 was inapplicable where "a trustee acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate") (citations omitted).

13

reason to treat the two the same for purposes of the *Barton* [D]octrine."). The *Yellowstone* court explained that because a creditors' committee is tasked with certain statutory obligations including, among other things, examining the debtor and participating in the formation of a reorganization plan, a lawsuit against the committee or its members would interfere with the bankruptcy proceedings and could cause committee members "to be timid in discharging their duties." *Id*.

Similarly, in applying the *Barton* Doctrine, the Sixth Circuit looks to whether an entity is the "functional equivalent of a trustee." *DeLorean*, 991 F.2d at 1241. In *DeLorean*, the Sixth Circuit held that counsel for a trustee is the "functional equivalent" of the trustee for purposes of estate administration, and is thus protected by the *Barton* Doctrine. *Id.* ("We hold, as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets."). The *DeLorean* court reasoned that "[t]he protection that the leave requirement affords the [t]rustee and the estate would be meaningless if it could be avoided by simply suing the [t]rustee's attorneys." *Id*.

The Eleventh Circuit adopted the "functional equivalent" test articulated by the Sixth Circuit in finding that officers appointed by the trustee and approved by the bankruptcy court to sell estate property warranted the protection of the *Barton* Doctrine. *See Carter v. Rodgers*, 220 F.3d 1249, 1252 n.4 (11th Cir. 2000); *see also Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) (extending the protections of the *Barton* Doctrine to a trustee's hired professionals assisting to "discharge" the trustee's duties, and to creditors who "financed the [t]rustee's efforts," because these entities "functioned as the equivalent of court appointed officers").

14

Additionally, as this Court discussed in detail in the Preliminary Injunction Opinion, the District Court of Arizona upheld a bankruptcy court's finding that a Bermuda-based insurer violated the *Barton* Doctrine by filing an action in Bermuda against the plan trustee of the confirmed Boston Chicken chapter 11 plan. *BCE West*, 2006 WL 8422206, at *1. While many courts have applied the *Barton* Doctrine broadly, the Second Circuit has not articulated a test for determining the application of the *Barton* Doctrine to parties other than a receiver or trustee. But at least one district court within this Circuit has affirmed a bankruptcy court's determination that the Doctrine's protection extended to both the trustee and counsel for the trustee. *See Peia v. Coan*, 2006 WL 798873, at *2 (D. Conn. Mar. 23, 2006).

When a court determines that the *Barton* Doctrine has been violated, "[t]he only appropriate remedy . . . is to order cessation of the improper action." *Madoff*, 460 B.R. at 116 (quoting *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970 (9th Cir. 2005)); *see also In re Baptist Medical Center of New York*, 80 B.R. 637, 643 (Bankr. E.D.N.Y. 1987) (discussing the *Barton* Doctrine, and noting that "'[c]ontempt' is the relief that may properly be granted upon a showing that [a] suitor impermissibly commenced the action against the trustee")

## IV.    DISCUSSION

### A. The Bar Order

As set forth above, any "entity that is not a [p]arty to the Settlement Agreement is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any claims arising out of payments made under certain insurance policies in accordance with the [Global Settlement] . . . ." (Bar Order ¶ 3.) Whether or not the Bermuda Insurers violated the Bar Order, then, may hinge on whether by filing proceedings in Bermuda, the Bermuda Insurers

15

asserted a "claim" against the Plaintiffs. Similarly, if the Court were to conclude that the Bermuda Insurers are attacking the reasonableness of the Global Settlement, the Bermuda Insurers would be in violation of the Bar Order. (*See* Bar Order ¶ 7.)

The Bermuda Insurers maintain that because the Bermuda proceedings were filed as a "defensive action," and because they do not seek to directly upend the Global Settlement, they have not violated the Bar Order. Though the Bermuda Insurers originally requested indemnity costs and fees in connection with the Bermuda proceedings, at this stage in the case, the Bermuda anti-suit injunctions have all been vacated. In any event, the Court may resolve the pending issues by first addressing whether the Bermuda Insurers violated the *Barton* Doctrine.

Because the Court concludes that the Bermuda Insurers violated the *Barton* Doctrine by filing the Bermuda actions without first obtaining leave of this Court, it is unnecessary to resolve whether the Bermuda filings also violated the Bar Order.

### B. The *Barton* Doctrine

MFGH, as Plan Administrator, is a court-appointed entity tasked with marshaling and liquidating assets, and by initiating this adversary proceeding against the Bermuda Insurers to pursue funds for the benefit of creditors, MFGH was acting in its official capacity.[11] Likewise, MFGAA was created pursuant to the terms and mechanisms of the Plan and the Sale and Assumption Agreement, both of which were approved by this Court. MFGAA, as holder of the rights to the underlying policies issued by the Bermuda Insurers, together with MFGH, initiated this adversary proceeding in furtherance of the goals laid out in the Plan and Sale and Assumption Agreement with the express authorization of this Court. The proceedings brought by the Bermuda Insurers against the Plaintiffs in Bermuda were initiated following the filing of

---

[11]    The Bermuda Insurers concede that MFGH is a court-appointed officer. (Allied Response at 14; Iron-Starr Opposition at 11.)

16

the Complaint in an attempt to circumvent the adjudication of issues properly before this Court, and abruptly halted the Plaintiffs' efforts to carry out their official responsibilities.

The Bermuda Insurers have undermined this Court's and the Plaintiffs' "overriding interest in [the] administration of the estate" by filing suit against MFGH and MFGAA without leave of this Court. *McIntire*, 113 F. Supp. 3d. at 773. The Bermuda proceedings have resulted in disjointed and decentralized actions in multiple jurisdictions, and have delayed the administration of this case, and ultimately, distributions to creditors. The *Barton* Doctrine seeks to prevent this very type of interference. The injunctive relief originally sought by the Bermuda Insurers in the Bermuda Court (which has now been vacated) underscores the impermissible intrusion that the Bermuda proceedings had on the Plaintiffs' ability to carry out its obligations, and this Court's ability to adjudicate the issues properly before it.

Courts have consistently applied the *Barton* Doctrine broadly to prevent suits against court-appointed officers in a wide variety of circumstances, and the *Barton* Doctrine is directly applicable to the facts and circumstances of this case.

For example, as noted above, the Eleventh Circuit has held that court-appointed officers assisting a trustee in carrying out official duties are protected by the *Barton* Doctrine. *See Lawrence*, 573 F.3d at 1270 (broadly applying the *Barton* Doctrine in determining that the trustee, counsel to the trustee, and certain others who assisted the trustee to recover property of the estate were protected under the *Barton* Doctrine). Here, MFGAA, as the holder of the rights to collect on the policies issued by the Bermuda Insurers, is functionally advancing the efforts of MFGH, as Plan Administrator, in carrying out its official duties. Just as the court in *Lawrence* found that the *Barton* Doctrine protects parties assisting a trustee in pursuing its objectives, so

17

too does this Court find that the *Barton* Doctrine protects both MFGH and MFGAA in undertaking their official obligations, including the filing of the Complaint.

The facts and circumstances of this case are similar in many ways to those in the *Boston Chicken* case. In *Boston Chicken*, as is the case here, a Bermuda-based insurance company obtained *ex parte* injunction orders prohibiting a plan administrator, charged with the collection of certain retained assets (including causes of action relating to insurance policies), from pursuing litigation to collect on the insurance policies issued by the Bermuda insurance company. *See BCE* West, 2006 WL 8422206, at *2. There, the bankruptcy court found that the Bermuda-based insurance company, by filing suit against the Boston Chicken plan trustee without first seeking leave of the bankruptcy court, violated the *Barton* Doctrine, and the district court affirmed the bankruptcy court's decision. *Id.* at *8. Similarly, MFGH, together with MFGAA, is charged with administering certain assets, including the rights to collect on the policies issued by the Bermuda Insurers. The Complaint reflects an effort to collect on these policies, as was the case in *Boston Chicken*.

By marshaling and liquidating assets for the benefit of creditors, MFGH, together with MFGAA, were pursuing goals substantially similar to those of a bankruptcy trustee. The Bermuda proceedings were initiated to handcuff the Plaintiffs following the filing of the Complaint, which the Plaintiffs filed in accordance with their mandate. But the *Barton* Doctrine protects the Plaintiffs in their pursuit of court-sanctioned actions. Parties like the Plaintiffs should not be impeded from carrying out their duties or sidetracked with vexing litigation by frustrated litigants. *Carter*, 220 F.3d at 1252–53 ("If [the trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded. . . . Without the requirement [of leave], trusteeship will become a

more irksome duty . . . .") (quoting *Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998)). In order to bring arbitration proceedings against MFGH and MFGAA, the Bermuda Insurers were required, under the *Barton* Doctrine, to obtain leave of this Court.

The proceedings initiated by the Bermuda Insurers were brought outside the United States, but the *Barton* Doctrine requires "a party who seeks to file suit in an international forum" to obtain leave of the appointing court. *See Preliminary Injunction Opinion*, 2017 WL 119338, at *6.

## V. CONCLUSION

The Court finds and concludes that by filing proceedings against MFGH and MFGAA in Bermuda, the Bermuda Insurers violated the *Barton* Doctrine. Therefore, the appropriate remedy was for this Court to order the Bermuda Insurers to terminate proceedings in Bermuda against MFGH and MFGAA without prejudice, as they have already done. Accordingly, the Court need not address whether the filing of proceedings in Bermuda violated the Bar Order in the Global Settlement.

The conclusion that the Bermuda Insurers violated the *Barton* Doctrine does not mean that arbitration in Bermuda may not be required. But this Court, rather than the Bermuda Court, must resolve the arbitration issue. Once briefing is complete, the Court will hear and decide whether the Bermuda Insurers' motions to compel arbitration must be granted.

**IT IS SO ORDERED.**

Dated:   January 31, 2017
         New York, New York

                                             ___*Martin Glenn*_____
                                               MARTIN GLENN
                                    United States Bankruptcy Judge