**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br>MF GLOBAL HOLDINGS LTD., *et al.*,<br>　　　　　　　Debtors. | **FOR PUBLICATION**<br>Chapter 11<br>Case No. 11-15059 (MG)<br>(Jointly Administered) |
| MF GLOBAL HOLDINGS LTD., as Plan Administrator, and MF GLOBAL ASSIGNED ASSETS LLC,<br>　　　　　　　Plaintiffs,<br>　　　v.<br>ALLIED WORLD ASSURANCE COMPANY LTD., IRON-STARR EXCESS AGENCY LTD., IRONSHORE INSURANCE LTD., STARR INSURANCE & REINSURANCE LIMITED., and FEDERAL INSURANCE COMPANY,<br>　　　　　　　Defendants. | Adv. Proc. No. 16-01251 (MG) |

**MEMORANDUM OPINION AND ORDER FINDING THAT ALLIED WORLD
MUST POST A BOND PURSUANT TO NEW YORK INSURANCE LAW
<u>SECTION 1213</u>**

*A P P E A R A N C E S:*

CRAVATH, SWAINE & MOORE LLP
*Counsel to Allied World Assurance Company, Ltd*
825 Eighth Avenue
New York, NY 10019
　By:　Daniel Slifkin, Esq.
　　　 Omid H. Nasab, Esq.

WHITE AND WILLIAMS, LLP
*Counsel to Allied World Assurance Company, Ltd*
7 Times Square
New York, New York 10036
　By:　Erica Kerstein, Esq.

JONES DAY
*Attorneys for MF Global Holdings Ltd., as Plan*
*Administrator, and MF Global Assigned Assets LLC*
555 South Flower Street, 50th Floor
Los Angeles, California 90071
By:   Bruce Bennett, Esq.

-and-

JONES DAY
250 Vesey Street
New York, New York 10281
By:   Edward M. Joyce, Esq.
       Jane Rue Wittstein, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Before filing "any pleading in any proceeding," New York Insurance Law section 1213 requires unauthorized foreign insurers to either "procure a license to do an insurance business" within the state, or post a bond "sufficient to secure payment of any final judgment which may be rendered in the proceeding . . . ." N.Y. Ins. Law § 1213(c) (McKinney). The Plaintiffs[1] here filed a motion (the "Bond Motion," ECF Doc. # 118) seeking to require the Bermuda Insurers[2] to post a $60 million bond to satisfy a potential judgment in this adversary proceeding.

Iron-Starr and the Plaintiffs have settled the dispute between them,[3] but the Court must still decide whether Allied World is required to post a bond in this case, and if so, in what amount. For the reasons set forth below, the Court concludes that Allied World—a foreign unauthorized insurer that delivered an insurance policy to MF Global in New York and filed a

---

[1]   The plaintiffs here are MF Global Holdings Ltd. ("MFGH"), as Plan Administrator, and MF Global Assigned Assets LLC ("MFGAA" and together with MFGH, the "Plaintiffs").

[2]   The Bermuda Insurers are Allied World Assurance Company Ltd. ("Allied World"), and Iron–Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr Insurance & Reinsurance Limited (together "Iron-Starr").

[3]   In a recently filed brief on a separate issue in this adversary proceeding, the Plaintiffs stated that they "have reached settlements in principle and are finalizing settlement agreements with defendant Federal Insurance Company and with [Iron-Starr]. Thus, Allied World is the only remaining Bermuda Insurer (and defendant) in this case." (ECF Doc. # 153 at 1.) Accordingly, this Opinion deals solely with the remaining dispute between the Plaintiffs and Allied World.

2

pleading in this proceeding—must post a bond in the amount of $15 million before the Court will consider Allied World's pending motion to compel arbitration of this dispute in Bermuda.[4]  If Allied World fails to post a bond, its pleadings will be stricken and a default judgment will be entered.

## I.   BACKGROUND

### A. Procedural Background

This is the fifth written opinion in this adversary proceeding since it was filed on October 27, 2016.[5]  Familiarity with the Prior Opinions is assumed, and the facts relevant to the issue currently before the Court have largely been set forth in the Prior Opinions, but are also recounted below.

The issue currently before the Court arose after the Plaintiffs filed a complaint against the Bermuda Insurers in this adversary proceeding (the "Complaint," ECF Doc. # 1), seeking to recover the full policy limits on policies issued by the Bermuda Insurers plus additional damages resulting from these insurers' refusal to pay policy proceeds in connection with a global settlement of MDL litigation pending in the United States District Court for the Southern District of New York (the "Global Settlement").  Following the filing of the Complaint, the Bermuda Insurers filed cases in the Supreme Court of Bermuda, Civil Jurisdiction (Commercial Court) (the "Bermuda Court") and obtained *ex parte* anti-suit injunctions (the "Bermuda Anti-Suit

---

[4]    As detailed below, the Plaintiffs filed a complaint that initiated this adversary proceeding, and in response, Allied World filed, among other things, a motion to compel the arbitration of the dispute underlying the complaint.

[5]    The first four opinions can be found at *In re MF Global Holdings Ltd.*, 561 B.R. 608 (Bankr. S.D.N.Y. 2016) (order issuing temporary restraining order) [hereinafter "*TRO Opinion*"]; *In re MF Global Holdings Ltd.*, 562 B.R. 55 (Bankr. S.D.N.Y. 2017) (order granting preliminary injunction) [hereinafter "*Preliminary Injunction Opinion*"]; *In re MF Global Holdings Ltd.*, 562 B.R. 41 (Bankr. S.D.N.Y. 2017) (order holding Bermuda-based insurers in contempt) [hereinafter "*Contempt Opinion*"]; *In re MF Global Holdings Ltd.*, 562 B.R. 866 (Bankr. S.D.N.Y. 2017) (order finding that the Bermuda Insurers violated the *Barton* Doctrine) [hereinafter "*Barton Opinion*"] (collectively, the "Prior Opinions").  Those opinions describe the background and circumstances of the issues arising in this adversary proceeding.  Capitalized terms not defined herein shall have the definitions ascribed to them in the *TRO Opinion*.

Injunctions") prohibiting the Plaintiffs from prosecuting the adversary proceeding in this Court. In several earlier opinions in this case, however, the Court first issued a temporary restraining order ("TRO") barring the Bermuda Insurers from enforcing the Bermuda Anti-Suit Injunctions, then issued a preliminary injunction extending the relief granted in the TRO, and issued an opinion holding the Bermuda Insurers in contempt for violating the TRO. *See TRO Opinion*, 561 B.R. at 630; *Preliminary Injunction Opinion*, 562 B.R. at 67; *Contempt Opinion*, 562 B.R. at 54. In another opinion, the Court also concluded that the Bermuda Insurers violated the *Barton* Doctrine by filing the Bermuda actions without first seeking authority to do so from this Court. *Barton Opinion*, 562 B.R. at 877. In the *Barton Opinion*, the Court ordered the Bermuda Insurers to dismiss the Bermuda actions without prejudice; the Bermuda Insurers complied and discontinued the Bermuda actions. Issues concerning sanctions against Allied World for contempt and for violation of the *Barton* Doctrine remain to be decided.

Early on in these proceedings, the Bermuda Insurers also filed in this Court motions to dismiss and motions to compel arbitration in Bermuda. (*See* ECF Doc. ## 13, 14, 16, 17, 19, 20.)[6] Once the Bermuda Anti-Suit Injunctions were lifted, the Plaintiffs were able to respond to the Bermuda Insurers' motions; the parties have now fully briefed whether this Court should require the Bermuda Insurers to post a bond under New York Insurance Law § 1213 and whether to compel arbitration of the underlying dispute in Bermuda. The Court heard argument on both issues on April 18, 2017, but has not yet entered a decision on the arbitration issue. Because the Court concludes in this Opinion that Allied World must post a bond as required by New York Insurance Law § 1213 *before* the Court will consider Allied World's motion to compel arbitration, decision on that motion must await Allied World's compliance with this Opinion and

---

[6] Additionally, the Bermuda Insurers filed motions for authorization to file certain documents under seal. (*See* ECF Doc. ## 40, 50).

4

Order. *See Signal Capital Corp. v. Eastern Marine Management, Inc.*, 899 F. Supp. 1167, 1171 (S.D.N.Y. 1995) (Sotomayor, J.) (in connection with a plaintiff's motion to strike an unauthorized foreign insurer defendant's answer, concluding that the defendant must "either post a bond or have its [a]nswer stricken and a default judgment entered").

Also, in response to the Plaintiffs' assertions that the Bermuda Insurers violated the Bar Order in the Global Settlement and the *Barton* Doctrine by filing suit against them in Bermuda without leave of this Court (*see* ECF Doc. # 68), Allied World and Iron-Starr filed oppositions to the Plaintiffs' application in connection with the Bar Order and *Barton* Doctrine issues (ECF Doc. ## 62, 64).[7]

Additionally, after the Bermuda Anti-Suit Injunctions were lifted, the Plaintiffs filed the Bond Motion. The Bermuda Insurers, in response, filed a joint opposition to Plaintiffs' Bond Motion (the "Joint Opposition," ECF Doc. # 127). The Plaintiffs then filed a reply (the "Reply," ECF Doc. # 130).

On May 10, 2017, Allied World filed a notice (the "Withdrawal Notice," ECF Doc. # 143) withdrawing its previously-filed motion to dismiss for lack of personal jurisdiction (the "Motion to Dismiss," ECF Doc. # 14) "to the extent such motion is premised upon the contention that personal jurisdiction is lacking over Allied World . . . for any reason other than the insufficient service of process upon Allied World." (Withdrawal Notice at 2.) Allied World further noted that it "will not take the position that the Court lacks personal jurisdiction over Allied World . . . for any reason other than the insufficient service of process upon Allied World."[8] (*Id.*)

---

[7]    Earlier in the case, on December 7, 2016, Allied World filed a brief addressing the Bar Order and *Barton* Doctrine issues (ECF Doc. # 28), as did Iron-Starr (ECF Doc. # 32).

[8]    In the *TRO Opinion*, the Court concluded that personal jurisdiction exists over Allied World, and that service of process was properly made by overnight mail pursuant to the Convention on the Service Abroad of

5

As noted above, the Plaintiffs and Iron-Starr have reached a settlement in principle, resolving the dispute between them. As such, this Opinion addresses only the Plaintiffs' demand that Allied World post a bond.

**B. Factual Background**

Allied World, headquartered and incorporated in Bermuda, "is a specialty reinsurance company that underwrites property and casualty insurance and reinsurance." (Complaint ¶ 23.) The Plaintiffs maintain that Allied World markets and sells insurance products and insures risks located throughout the United States and in the State of New York. (*Id.*)

Allied World issued an errors and omissions ("E&O") insurance policy to MF Global for the policy period from May 31, 2011 to May 31, 2012 (the "AWAC E&O Policy," Complaint, Ex. B). The AWAC E&O Policy obligated Allied World to contribute up to the $15 million policy limit in the event of a covered loss. (Bond Motion at 2; AWAC E&O Policy at 1). The policy lists "MF Global Holdings Ltd." as the "Named Corporation" with its principal address at "717 Fifth Avenue, 9th Floor, New York, NY 10022-8101." (AWAC E&O Policy at 1.)

Affidavits submitted to the Court by Allied World earlier in these proceedings, which are unrebutted by the Plaintiffs, state that MF Global's broker, Willis (Bermuda) Ltd. ("Willis"), acting on MF Global's behalf, was responsible for the solicitation, negotiation, issuance, and delivery of the policy, and the payment of premiums on the underlying policy. (4/18/2017 Hearing Tr. at 8–10; ECF Doc. # 13-7 ¶ 12 ("The Allied World Policy was negotiated, underwritten, issued, delivered, and paid for exclusively in Bermuda, through [Willis], a

---

Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Service Convention"). 561 B.R. at 616–624. After Allied World filed the Withdrawal Notice, withdrawing its motion to dismiss based on lack of personal jurisdiction, but reserving its argument of "insufficient service of process," the Supreme Court handed down its decision in *Water Splash, Inc. v. Menon*, __ U.S. __, 2017 WL 2216933 (2017), concluding that the Hague Service Convention permits service of process by mail if two conditions are satisfied: "first, the receiving state has not objected to service by mail; and, second, service by mail is authorized under otherwise-applicable law." *Water Splash*, 2017 WL 2216933, at *8. The *TRO Opinion* essentially concluded that both conditions were satisfied here. *TRO Opinion*, 561 B.R. at 618–619.

Bermuda-based broker that was acting on MFGH's behalf in Bermuda").) It appears that Willis was then responsible for sending or delivering the policy to MF Global in New York. (4/18/2017 Hrg. Tr. 55:8–13.)

## II. LEGAL STANDARD

### A. New York Insurance Law Section 1213

#### 1. *The Purpose of Section 1213(c)*

The New York legislature enacted New York Insurance Law section 1213, in part, to address "the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights" in relation to insurance policies issued by unauthorized foreign insurance companies. *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 212 F.3d 138, 140 (2d Cir. 2000) (per curiam) (quoting N.Y. Ins. Law § 1213(a)'s express intended purpose). The statute also "imposes accountability on foreign or alien carriers who, although not authorized to do business in [the state], issue or deliver insurance policies here," and serves to "assure that a foreign carrier's funds will be available in [the state] to satisfy any potential judgment against it from the proceeding." *Levin v. Intercontinental Cas. Ins. Co.*, 95 N.Y.2d 523, 526–27 (2000) (citations omitted); *see also Curiale v. Ardra Ins. Co.*, 88 N.Y.2d 268, 275 (1996) (noting that section 1213 ensures that "[a]lien insurers [will] maintain sufficient funds in the [s]tate to satisfy any potential judgment arising from the policies of insurance (including reinsurance treaties) they issue").

#### 2. *Enumerated Acts in Section 1213(b)*

To remedy the problem of requiring residents to resort to far-away jurisdictions to assert their rights, "the statute provides that certain acts by such foreign or unauthorized insurers will automatically trigger appointment of the New York Superintendent as a proper party for service." *In re Residential Capital, LLC*, 563 B.R. 756, 777 (Bankr. S.D.N.Y. 2016) [hereinafter

7

"*ResCap*"] (citing N.Y. Ins. Law § 1213(b)(1)). Specifically, "[t]he case law recognizes that Section 1213 provides a basis for personal jurisdiction over insurance companies based on certain enumerated insurance-related activities, including 'the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein, . . . the solicitation of applications for such contracts, . . . the collection of premiums, membership fees, assessments or other considerations for such contracts, or . . . any other transaction of business.'" *ResCap,* 563 B.R. at 777–78 (quoting N.Y. Ins. L. § 1213(b)(1)); *see also Blau v. Allianz Life Ins. of N. Am.*, 124 F. Supp. 3d 161, 172, 175–78 (E.D.N.Y. 2015) (analyzing enumerated acts in regards to an analysis of personal jurisdiction).

However, New York courts have clarified that the enumerated acts in section 1213(b) are not prerequisites to the application of the bond requirement set out in section 1213(c). To the contrary, "whether defendants had engaged in any of the activities enumerated in [section] 1213(b)(1) . . . is immaterial since the statute does not make the obligation to post security [under section 1213(c)] contingent upon the manner of service . . . or the type of purposeful activity providing the basis for the exercise of in personam jurisdiction." *Travelers Ins. Co. v. Underwriting Members of Lloyd's of London*, 240 A.D.2d 278, 279 (N.Y. App. Div. 1997).

### 3. The Bond Requirement in Section 1213(c)

New York Insurance Law section 1213(c) provides in relevant part:

> (c)(1) Before any unauthorized foreign or alien insurer files any pleading in any proceeding against it, it shall either:
>
> > (A) deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding . . . , or
> >
> > (B) procure a license to do an insurance business in this state.

8

N.Y. Ins. Law § 1213(c)(1). As noted above, this section requires an unauthorized foreign insurer to either obtain a license to conduct insurance business in New York, or to post a bond with the clerk of the court in which the proceeding is pending, before filing any pleading in a proceeding against it.

Certain limited pleadings are exempted from the bond requirement contained in section 1213(c)(1). Specifically, nothing in section 1213 will "prevent an unauthorized foreign or alien insurer from filing a motion to set aside service made" in the manner provided by the statute. N.Y. Ins. Law § 1213(c)(3); *see also Levin*, 95 N.Y.2d at 527 (explaining that section 1213(c)(3) relieves an unauthorized foreign insurer from the requirement to post a bond "when it files a 'motion' to set aside service on the ground that the carrier, or the person upon whom service is made pursuant to section 1213(b)(3), did not commit the acts in [New York] that form the predicate for the court's jurisdiction" contained in section 1213(b)).

### 4. Courts Have Interpreted the Term "Pleading" Broadly

When applying section 1213(c), courts within this jurisdiction have interpreted the term "pleading" broadly to include motions to compel arbitration. For example, in *ResCap*, Judge Lane discussed section 1213(c)'s bond requirement, and held that motions to compel arbitration and motions to dismiss for lack of subject matter jurisdiction "are pleadings under Section 1213." *ResCap*, 563 B.R. at 778–79. In rejecting the narrow reading of the term "pleading" in section 1213 offered by the insurers in *ResCap* (and the Bermuda Insurers here), and adopting a broad reading of the term, Judge Lane stated that:

> [T]he Court rejects the Bermuda Insurers' narrow reading of the term "pleading" under the statute. Granted, there are some cases that apply a more restrictive definition of pleadings under Section 1213. *See Allstate Ins. Co. v. Administratia Asigurarilor de Stat*, 948 F. Supp. 285, 295 (S.D.N.Y. 1996) (limiting "pleading" in Section 1213 to those identified in Federal Rule of Civil Procedure

9

> 7 and N.Y. C.P.L.R. 3011). But more cases construe Section 1213 to require that foreign insurers post security before filing any pleading. *See, e.g., Signal Mut. Indem. Ass'n v. Rice Mohawk U.S. Constr., Co.*, 1997 WL 148813, at *1 (S.D.N.Y. Mar. 28, 1997); *Marsh & McLennan Cos. v. GIO Ins.*, 2013 WL 4007555, at *5 (S.D.N.Y. Aug. 6, 2013); *John Hancock Prop. & Cas. Ins.* [*v. Universale Reinsurance Co., Ltd.*, 147 F.R.D. 40, 50 (S.D.N.Y. 1992)]; *see also British Int'l Ins. v. Seguros La Republica S.A.*, 212 F.3d 138, 140 (2d Cir. 2000) (stating Section 1213(c)(1) requires "out-of-state insurers post security or obtain a license in order to be allowed to participate in court proceedings in New York").

*ResCap*, 563 B.R. at 778–79.

Though Judge Lane found that the Bermuda-based insurers had filed "pleadings," he ultimately declined to require the posting of a bond under section 1213 in *ResCap*, recognizing that the insured's broker was based in Bermuda and "the address of the insured on each policy lists [the insured's] Detroit, Michigan address." *Id.* at 782 (noting that the insured's broker "act[ed] as an intermediary between the [insured] and the [insurers]," but that "[n]o address in New York [was] listed" for the insured).

### B. The New York Convention

The Bermuda Insurers also argue that the application of section 1213(c) here is preempted by the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or the "Convention"). (Joint Opposition at 23–33.) The Convention is an international treaty mandating that courts in signatory states "shall, at the request of one of the parties [to an arbitration agreement], refer the parties to arbitration . . . ." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 527 (1974) (citing the Convention, Art. II, § 3). The New York Convention reinforces "the emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). But

10

important to the preemption issue here, courts in New York have held that a New York prejudgment attachment provision, like the posting of a bond, is not an impediment to arbitration under the Convention. *See Atlas Chartering Services, Inc. v. World Trade Group, Inc.*, 453 F. Supp. 861, 863 (S.D.N.Y. 1978) ("We perceive no conflict between the provisional remedy of attachment and the dictates of the Convention. . . . On the contrary, . . . attachment, we believe, serves only as a security device in aid of the arbitration.").

Relevant to this legal framework is the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, which "precludes application of a federal statute in face of state law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (citing *Department of Treasury v. Fabe*, 508 U.S. 491, 501 (1993)). Congress passed the McCarran-Ferguson Act, in part, out of a concern that the Supreme Court's commerce jurisprudence "might undermine state efforts to regulate insurance" and therefore provided that "'silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.'" *Humana*, 525 U.S. at 306 (quoting 15 U.S.C. § 1011).

Courts in the Second Circuit have determined that pursuant to the McCarran-Ferguson Act, section 1213(c) is *not* preempted by either the Federal Arbitration Act ("FAA") or the New York Convention. *See Stephens v. Am. Int'l Ins. Co.*, 66 F.3d 41, 45 (2d Cir. 1995) (discussing the New York Convention and the McCarran-Ferguson Act, and emphasizing that "the Convention is not self-executing, and therefore, relies upon an Act of Congress for its implementation"); *see also Skandia Am. Reins. Corp. v. Caja Nacional de Ahorro Y Segoro*, No. 96 CIV. 2301, 1997 WL 278054, at *2–3 (S.D.N.Y. May 23, 1997) (noting that because "under

11

the McCarran- Ferguson Act of 1946 . . . the power to regulate insurance is specifically granted to the states whose laws are not preempted by any act of Congress unless such act specifically relates to the business of insurance . . . a foreign or alien insurer[] is required to post security sufficient to secure payment of any final judgment" under section 1213(c)). Indeed, the *Skandia* court expressly found that "Article VI of the New York [C]onvention allows [the Court] . . . to order the posting of pre-judgment security pursuant to N.Y. Ins. Law § 1213(c)." *Skandia*, 1997 WL 278054 at *3 (stating that pursuant to section 1213(c) and other applicable law, a foreign unauthorized insurer was "required to post security sufficient to secure payment of any final judgment").

### III.  THE PARTIES' CONTENTIONS

#### A. The Plaintiffs' Contentions

The Plaintiffs argue that the plain language of section 1213, read in conjunction with the legislature's stated purpose in enacting the statute, clearly demands the posting of a bond based on the facts of this case. The Plaintiffs assert that the motion to dismiss and the motion to compel arbitration filed by Allied World constitute "pleadings" in this context, and further, that while MF Global may have utilized a broker to procure their insurance policies, these policies were nonetheless issued and delivered by Allied World to New York.

#### B. Allied World's Contentions

Allied World maintains that, by transacting solely with MF Global's Bermuda-based broker, Willis, it did not "issue or deliver" an insurance policy in New York. Additionally, Allied World maintains that none of the motions or pleadings it has filed in this proceeding constitute "pleadings" under section 1213(c) as it has not formally contested the Complaint on

the merits. Further, Allied World suggests that the bond requirement in section 1213 is preempted by the New York Convention.

## IV. DISCUSSION

Allied World's business model appears to be specifically designed to sell insurance policies to New York insureds but to attempt to avoid *any* regulation in New York. By interacting with clients' brokers, and sending policies to brokers who are technically located outside of New York, Allied World maintains that it falls outside the express terms of section 1213(c)'s bond requirement as it has not "issued or delivered" an insurance policy in New York—the policy was, in its eyes, delivered to a broker in Bermuda. Allied World asks the Court to end the inquiry there rather than follow the policy to its ultimate destination: New York. The Court concludes that Allied World cannot so easily avoid the protection that the New York legislature provides to New York insureds through section 1213.[9] Section 1213 requires unauthorized foreign insurers, like Allied World, that issue and deliver insurance policies to New York insureds, to either obtain the requisite license to conduct business in New York, or to post a bond with the clerk of the court in which the proceeding is pending, before filing a pleading in the proceeding. The Court will therefore require Allied World to post a bond in these proceedings.

### A. A Motion to Compel Arbitration is a "Pleading" Under Section 1213 That Triggers the Requirement to Post a Bond

Allied World's position is that a bond need only be posted when an unauthorized insurer files a pleading that defends against a complaint on the merits, such as an answer to a complaint,

---

[9] Allied World cannot avoid the protection the New York legislature provides to New York insureds by requiring arbitration in Bermuda. Section 1213(c)(1) requires posting a bond with "the clerk of the court in which the proceeding is pending." N.Y. Ins. Law § 1213(c)(1). If the insured files a court proceeding in New York, as the Plaintiffs did here, a bond must be posted even if arbitration is ultimately ordered. The protection the statute provides to New York insureds cannot otherwise be assured.

13

and therefore that the motion to dismiss, the motion to compel arbitration, and all other items that Allied World filed do not trigger section 1213's bond requirement. As did the insurers in *ResCap*, Allied World here relies on a footnote in *Levin* that reads: "Section 1213's legislative history indicates that defending on the merits requires the posting of a bond." *ResCap*, 563 B.R. at 779 (quoting *Levin*, 95 N.Y.2d at 528 n.3). The court in *ResCap*, however, explained that this "statement from *Levin* is dicta" and that "the actual holding of *Levin* reads the bond requirement broadly." *ResCap*, 563 B.R. at 779 (discussing how "[i]n *Levin*, the court examined whether the bond requirement applied to a pre-answer motion to dismiss the complaint" but that the New York Court of Appeals has held that "the term 'pleading' in Section 1213(c) was not limited to the 'kinds of pleadings' identified in N.Y. C.P.L.R. 3011," which include an answer, a counterclaim, and a cross-claim, among others).

The Court rejects the narrow reading of the term "pleading" offered by the Bermuda Insurers, and adopts the broader approach employed by the *ResCap* court and others. *See Levin*, 95 N.Y.2d at 527–28; *Marsh & McLennan Companies, Inc. v. GIO Ins. Ltd.*, 2013 WL 4007555, at *5 (S.D.N.Y. 2013) (enforcing section 1213's bond requirement on a foreign insurer who filed a motion to dismiss based on arbitration provisions); *Kansa Gen. Ins. v. Kansa Gen. Ins. Co. Ltd.*, 1992 WL 367085, at *3 (S.D.N.Y. 1992) (requiring a foreign insurance company to post a bond pursuant to section 1213(c) in a case involving a motion to compel arbitration).

### B. Allied World "Issued and Delivered" a Policy to New York

Allied World also argues that it did not "deliver" a policy to New York, and therefore is not required to post a bond under section 1213(c). It maintains that it only delivered a policy to MF Global's broker, Willis, which resides in Bermuda. Allied World's argument is unpersuasive for several reasons, and flies in the face of the intended purpose of the statute.

The New York legislature plainly declared "that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights" in connection with insurance policies issued by unauthorized foreign insurance companies. N.Y. Ins. Law § 1213(a) (broadcasting the express "purpose of this section"). To be sure, just as the statute is intended to regulate, Allied World is an unauthorized foreign insurer, providing insurance to a New York-based company, insuring risks in New York and elsewhere. In *ResCap*, where the court found that an insurance policy was not delivered in New York, Judge Lane expressly stated that the insurance policy was addressed to the insured in Michigan; here, by contrast, the insurance policy is addressed to MF Global's New York address, and the policy insured risks in New York, among other places. (*See* AWAC E&O Policy at 1.)

Allied World also relies on the Appellate Division's decision in *Ghose v. CNA Reinsurance Co.*, 43 A.D.3d 656 (2007). Allied World argues that *Ghose* supports the proposition that an insurance policy must be expressly delivered by the insurer into New York. (Joint Opposition at 16.) Allied World's reliance on *Ghose* is misplaced. The First Department in *Ghose* dismissed the plaintiff's complaint against certain insurers on *forum non conveniens* grounds. *Ghose*, 43 A.D.3d at 661. The plaintiff in *Ghose*, although purportedly a resident of New York when the underlying policy was issued, was suing insurers on behalf of policies issued to a Bermuda-based company that had subsidiaries incorporated in Australia and Bermuda that "conduct[ed] little business in New York." *Id.* at 660. Unlike MF Global's insurance policy, which was expressly governed by New York law, the insurance policy in *Ghose* was governed by Bermuda law. *Id.* at 657–60. After finding that Australia was the appropriate

15

forum for the dispute, the court in *Ghose* expressly noted that the issue whether the insurance companies were required to post a bond under section 1213 was "rendered academic." *Id.* at 661.

The Court is unpersuaded that the New York legislature, in drafting section 1213(c), contemplated that foreign unlicensed insurance companies, such as Allied World, that are subject to personal jurisdiction in New York courts could so easily work around the bond requirement if they are parties to litigation in New York. The use of a broker or some other intermediary for the delivery of a policy, rather than delivering a policy directly to an insured, is not enough to skirt the bond requirement. Indeed, the statute itself does not say "delivered directly" or "delivered without the use of intermediaries" – it simply says "delivered." Allied World's position is unfounded given that such a narrow reading of the term "delivered" would dictate that no policies were ever actually delivered by insurers, as the technical delivery would take place by a mail carrier or some other delivery service, acting as a necessary intermediary. And though it was interacting with MF Global's broker, presumably Allied World fully expected that the policies would ultimately be delivered to New York—a natural destination given MF Global's New York address on the policy.

### C. The New York Convention Does Not Preempt Section 1213's Bond Requirement

Allied World also argues that the New York Convention preempts the requirement for posting a bond because posting a bond here would act as an "impediment" to arbitration. Because the bond requirement is intended to ensure that "funds will be available in this State to satisfy any potential judgment," *Levin*, 95 N.Y.2d at 527, and because such a bond "serves only as a security device in aid of the arbitration," *Atlas Chartering*, 453 F. Supp. at 863, there is no apparent conflict between section 1213(c) and the New York Convention. To the contrary, the bond helps to effectuate the New York Convention's goals by ensuring that should a matter be

16

sent to arbitration, particularly in a foreign country as Allied World seeks here, sufficient funds to satisfy a judgment will be available to a plaintiff in New York. The court in *Atlas Chartering* specifically recognized this important principle:

> Certainly, a London arbitration can proceed in an orderly fashion even though the defendant's assets have been attached in New York as security for any award rendered by the London panel. There is no merit to the argument that plaintiff, in seeking an attachment, is attempting to "bypass" the arbitration procedure. *See McCreary Tire & Rubber Co. v. CEAT, S.p.A.*, 501 F.2d 1032, 1038 (3d Cir. 1974). . . . The attachment, we believe, serves only as a security device in aid of the arbitration. . . . Thus, we doubt that a decision permitting attachment would discourage or hamper arbitration under the [New York] Convention.

*Atlas Chartering*, 453 F. Supp. at 863.

The decision whether the Plaintiffs will be compelled to arbitrate in Bermuda, or whether Allied World will have to defend this action in a U.S. court, must await Allied World's compliance with the requirement that it post a bond. Allied World previously indicated in these proceedings that a court in Bermuda may well decline to enforce a judgment issued by a court in the United States. (*See* Bond Motion at 3–4 ("In their first communication notifying the MFG Parties of these anti-suit injunctions (which have since been vacated pursuant to this Court's Order), [Allied World] warned the MFG Parties that 'the Supreme Court of Bermuda would not enforce any U.S. judgment against a Bermuda entity.'") (citing Nov. 8, 2016, Letters from Sedgwick Chudley on behalf of the Bermuda Insurers to the MFG Parties).) An arbitration award issued by a panel of arbitrators is not a judgment. With a bond posted in the United States, the Plaintiffs can assure that funds will be available to recover on any judgment issued by a U.S. court, either in an action that proceeds to judgment in a U.S. court or after confirming an arbitration award.

### D. Allied World Shall Post a $15 Million Bond

The Plaintiffs requested that the Bermuda Insurers post a bond in the amount of $60 million, an amount that they were "careful" in calculating to "come up with a reasonable estimate." (4/18/2017 Hrg. Tr. 17:23–24.) The statute provides that the amount of the bond in this type of proceeding is "to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding . . . ." NY Ins. Law § 1213(c). Here, the policy limit of Allied World's policy is $15 million, but the Plaintiffs request an additional $40 million to cover other forms of damages, including damages based on the "bad faith refusal to provide coverage in response to the MFG Parties' reasonable insurance demands . . . ." (Bond Motion at 3.)

The New York Court of Appeals has stated that "calculating the amount of the bond that Insurance Law § 1213(c) requires" involves "[t]he task of fixing the amount [and] necessarily falls within the trial court's discretion." *Levin*, 95 N.Y.2d at 529 (citing *Curiale* 189 A.D.2d at 221). When pressed, the Plaintiffs could not provide the Court with any rational limiting principle that would prevent a plaintiff from requesting a gargantuan bond based on a hypothetical payday, which may nevertheless have no basis in reality. Here, the AWAC E&O Policy provides up to $15 million. The Court finds that the Plaintiffs' proposed bond is not warranted based on the facts and circumstances of the case at this time, and instead requires the posting of a $15 million bond, the amount of the Allied World policy limit. As Judge Sotomayor (as she then was) concluded in *Signal Capital Corp.*, 899 F. Supp. at 1171, if the foreign insurer fails to post a bond, as required, its pleadings will be stricken and a default judgment will be entered.

## V.    CONCLUSION

Allied World may not skirt the bond requirement in section 1213(c) while continuing to wage a costly battle over an insurance policy it issued that is expressly governed by New York law, addressed to a New York insured, and was ultimately delivered to a New York address. For the reasons stated above, the Bond Motion, as it relates to Allied World, is **GRANTED**. Allied World is hereby ordered to post a $15 million bond with the Clerk of the Court[10] within 14 days of the issuance of this Opinion.

**IT IS SO ORDERED.**

Dated: New York, New York
       June 12, 2017

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge

---

[10]    Section 1213(c)(1)(A) provides in relevant part that an unauthorized foreign insurer shall "deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties . . . ." NY Ins. Law § 1213(c)(1)(A).