**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— X
In re:                                                          :      **FOR PUBLICATION**
                                                                :
  MF GLOBAL HOLDINGS LTD., *et al.*,       :      Chapter 11
                                                                :      Case No. 11-15059 (MG)
                                      Debtors.             :      (Jointly Administered)
———————————————————————— X
                                                                :
MF GLOBAL HOLDINGS LTD., as Plan       :
Administrator, and MF GLOBAL ASSIGNED  :
ASSETS LLC,                                            :
                                                                :
                                      Plaintiffs,          :      Adv. Proc. No. 16-01251 (MG)
                                                                :
             v.                                               :
                                                                :
ALLIED WORLD ASSURANCE COMPANY LTD., :
IRON-STARR EXCESS AGENCY LTD.,            :
IRONSHORE INSURANCE LTD., STARR          :
INSURANCE & REINSURANCE LTD., and       :
FEDERAL INSURANCE CO.,                      :
                                                                :
                                      Defendants.       :
———————————————————————— X

**MEMORANDUM OPINION AND ORDER GRANTING ALLIED WORLD'S**
**MOTION TO COMPEL ARBITRATION**

*A P P E A R A N C E S :*

CRAVATH, SWAINE & MOORE LLP
*Counsel to Allied World Assurance Company, Ltd.*
825 Eighth Avenue
New York, NY 10019
By:    Daniel Slifkin, Esq.
         Omid H. Nasab, Esq.

WHITE AND WILLIAMS LLP
*Counsel to Allied World Assurance Company, Ltd.*
7 Times Square
New York, New York 10036
By:    Erica Kerstein, Esq.

JONES DAY
*Attorneys for MF Global Holdings Ltd., as Plan*
*Administrator, and MF Global Assigned Assets LLC*
555 South Flower Street, 50th Floor
Los Angeles, California 90071
By:    Bruce Bennett, Esq.

-and-

JONES DAY
250 Vesey Street
New York, New York 10281
By:    Edward M. Joyce, Esq.
        Jane Rue Wittstein, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Shortly after the Plaintiffs[1] filed the Complaint that initiated this adversary proceeding,

the Bermuda Insurers[2] asked this Court to compel arbitration of the insurance coverage dispute

underlying the Complaint.  Iron-Starr and Federal Insurance Company ("Federal") have settled

their disputes with the Plaintiffs,[3] but the Court must still decide whether the Plaintiffs' dispute

with Allied World must be sent to arbitration in Bermuda pursuant to the arbitration clause in the

AWAC E&O Policy (defined below) at issue in this proceeding.

This litigation has a complicated and contentious history, but for the reasons set forth

below, the Court concludes that pursuant to the arbitration clause in the AWAC E&O Policy, and

based on the facts and circumstances of this case, arbitration of this dispute is appropriate in

Bermuda.

---

[1]    The plaintiffs here are MF Global Holdings Ltd. ("MFGH"), as Plan Administrator, and MF Global Assigned Assets LLC ("MFGAA" and together with MFGH, the "Plaintiffs").

[2]    The Bermuda Insurers are Allied World Assurance Company Ltd. ("Allied World"), and Iron-Starr Excess Agency Ltd., Ironshore Insurance Ltd., and Starr Insurance & Reinsurance Limited (together "Iron-Starr").

[3]    Allied World is the only remaining Bermuda Insurer (and defendant) in this case."  (ECF Doc. # 153 at 1.)  On June 28, 2017, and July 5, 2017, notices of voluntary dismissal were filed relating to the Federal and Iron-Starr defendants, respectively.  (*See* ECF Doc. ## 172, 176.)  Accordingly, this Opinion deals solely with the remaining dispute between the Plaintiffs and Allied World.

# I. BACKGROUND

## A.  Procedural Background

This is the sixth written opinion in this adversary proceeding since it was filed on

October 27, 2016.[4]  Familiarity with the Prior Opinions is assumed, and the facts relevant to the

issue currently before the Court have largely been set forth in the Prior Opinions, but are also

recounted below.

The issue currently before the Court arose shortly after the Plaintiffs filed the complaint

against the Bermuda Insurers in this adversary proceeding (the "Complaint," ECF Doc. # 1),

seeking to recover the full policy limits on policies issued by the Bermuda Insurers plus

additional damages resulting from these insurers' refusal to pay policy proceeds in connection

with a global settlement of MDL litigation pending in the United States District Court for the

Southern District of New York.  Following the filing of the Complaint, the Bermuda Insurers

filed cases in the Supreme Court of Bermuda, Civil Jurisdiction (Commercial Court) (the

"Bermuda Court") and obtained *ex parte* anti-suit injunctions (the "Bermuda Anti-Suit

Injunctions") prohibiting the Plaintiffs from prosecuting the adversary proceeding in this Court.

In several earlier opinions in this case, however, the Court first issued a temporary restraining

order ("TRO") barring the Bermuda Insurers from enforcing the Bermuda Anti-Suit Injunctions,

then issued a preliminary injunction extending the relief granted in the TRO, and issued an

---

[4]       The first five opinions can be found at *In re MF Global Holdings Ltd.*, 561 B.R. 608 (Bankr. S.D.N.Y. 2016) (order issuing temporary restraining order) [hereinafter "*TRO Opinion*"]; *In re MF Global Holdings Ltd.*, 562 B.R. 55 (Bankr. S.D.N.Y. 2017) (order granting preliminary injunction) [hereinafter "*Preliminary Injunction Opinion*"]; *In re MF Global Holdings Ltd.*, 562 B.R. 41 (Bankr. S.D.N.Y. 2017) (order holding Bermuda Insurers in contempt) [hereinafter "*Contempt Opinion*"]; *In re MF Global Holdings Ltd.*, 562 B.R. 866 (Bankr. S.D.N.Y. 2017) (order finding that the Bermuda Insurers violated the *Barton* Doctrine) [hereinafter "*Barton Opinion*"]; *In re MF Global Holdings Ltd.*, 569 B.R.544 (Bankr. S.D.N.Y. 2017) (order finding that the Bermuda Insurers must post a bond with the Clerk of the Court) [hereinafter "*Bond Opinion*"]  (collectively, the "Prior Opinions").  Those opinions describe the background and circumstances of the issues arising in this adversary proceeding.  Capitalized terms not defined herein shall have the definitions ascribed to them in the *TRO Opinion*.

opinion holding the Bermuda Insurers in contempt for violating the TRO.  *See TRO Opinion*, 561 B.R. at 630; *Preliminary Injunction Opinion*, 562 B.R. at 67; *Contempt Opinion*, 562 B.R. at 54.[5]

Early on in these proceedings, the Bermuda Insurers also filed motions to dismiss and motions to compel arbitration.  (*See* ECF Doc. ## 13, 14, 16, 17, 19, 20.)  Once the Bermuda Anti-Suit Injunctions were lifted, the Plaintiffs were able to respond to the Bermuda Insurers' motions.  The parties have now fully briefed whether this Court should compel arbitration of the underlying dispute in Bermuda.  The Plaintiffs filed a supplemental omnibus opposition to the Bermuda Insurers' motion to compel arbitration (the "Omnibus Opposition," ECF Doc. # 125), and the Bermuda Insurers thereafter filed a joint reply in support of their motions to compel arbitration (the "Joint Reply," ECF Doc. # 133).

The Court heard argument on the arbitration motion on April 18, 2017; but, on June 12, 2017, the Court issued the *Bond Opinion*, requiring the Bermuda Insurers to post a bond in the amount of $15 million, pursuant to New York Insurance Law section 1213, *before the Court would rule on the arbitration motion*.  At the April 18, 2017 hearing, the Court asked the parties to provide the Court with supplemental filings "specifically addressing whether the Bermuda [I]nsurers are asserting any defense regarding the interpretation, applicability or enforcement of the five [bankruptcy court] orders" identified by Plaintiffs at the oral argument on the arbitration motion, which the Bermuda Insurers and the Plaintiffs promptly filed.  (*See* ECF Doc. # 141 (the "Bermuda Insurers Coverage Defenses Letter"); ECF Doc. # 142 (the "Plaintiffs' Applicable Orders Letter").)

---

[5]    In another opinion, the Court also concluded that the Bermuda Insurers violated the *Barton* Doctrine by filing the Bermuda actions without first seeking authority to do so from this Court.  *Barton Opinion*, 562 B.R. at 877.  In the *Barton Opinion*, the Court ordered the Bermuda Insurers to dismiss the Bermuda actions without prejudice; the Bermuda Insurers complied and discontinued the Bermuda actions.

On May 10, 2017, Allied World filed a statement (the "Withdrawal Notice," ECF Doc. # 143) withdrawing its previously-filed motion to dismiss for lack of personal jurisdiction (the "Motion to Dismiss," ECF Doc. # 14) "to the extent such motion is premised upon the contention that personal jurisdiction is lacking over Allied World . . . for any reason other than the insufficient service of process upon Allied World." (Withdrawal Notice at 2.)  Allied World further noted that it "will not take the position that the Court lacks personal jurisdiction over Allied World . . . for any reason other than the insufficient service of process upon Allied World."[6] (*Id.*)

As noted above, the Plaintiffs have resolved their disputes with Iron-Starr and Federal. As such, this Opinion addresses only whether the underlying coverage dispute between Allied World and the Plaintiffs must be sent to arbitration.

---

[6]     In the *TRO Opinion*, the Court concluded that personal jurisdiction exists over Allied World, and that service of process was properly made by overnight mail pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Service Convention").  561 B.R. at 616–624.  After Allied World filed the Withdrawal Notice, withdrawing its motion to dismiss based on lack of personal jurisdiction, but reserving its argument of "insufficient service of process," the Supreme Court handed down its decision in *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017), concluding that the Hague Service Convention permits service of process by mail if two conditions are satisfied: "first, the receiving state has not objected to service by mail; and, second, service by mail is authorized under otherwise-applicable law."  *Id.* at 1513.  The *TRO Opinion* essentially concluded that both conditions were satisfied here.  *TRO Opinion*, 561 B.R. at 618–19.
         While purporting to reserve its arguments regarding insufficient service of process, Allied World expressly declined to press the issue before this Court, although it clearly had an opportunity to do so.  On March 2, 2017, the Court entered a jointly proposed case management and scheduling order (the "CSO," ECF Doc. # 122) that outlined a briefing schedule for issues relating to personal jurisdiction and service of process, calling for the Bermuda Insurers to file opening briefs by June 30, 2017, with the Plaintiffs filing any opposition by July 21, 2017, and the Bermuda Insurers filing any replies by July 31, 2017.  While the Plaintiffs filed a brief addressing the issue (ECF Doc. # 185), Allied World filed a pleading stating:  "*Plaintiffs' brief . . . opposes a motion that is no longer pending.* In November 2016, Allied World moved to dismiss for insufficient service of process.  ([ECF Doc. ## 14, 14-1].)  In December 2016, the Court found in its TRO that service was sufficient ([ECF Doc. # 35 at 12-14]), and it recently reaffirmed that holding ([ECF Doc. # 159 at 5–6 n.8]).  *Allied World reserved the right to pursue a potential appeal on this issue ([ECF Doc. # 174]), but has not moved for reconsideration of this Court's decisions.  Plaintiffs' efforts to further litigate the issue are thus unwarranted.*"  (*Defendant Allied World's Reply Regarding Service of Process*, ECF Doc. # 188, at 2 (July 31, 2017) (emphasis added).)  The CSO gave Allied World the opportunity to fully argue its position with respect to service of process on a complete legal and factual record, but it failed to do so.  The Court concludes that Allied World waived its right to contest the propriety of service of process.

### B. Factual Background

Allied World, headquartered and incorporated in Bermuda, "is a specialty reinsurance company that underwrites property and casualty insurance and reinsurance." (Complaint ¶ 23.) The Plaintiffs maintain that Allied World markets and sells insurance products and insures risks located throughout the United States and in the State of New York. (*Id.*)

Allied World issued an errors and omissions ("E&O") insurance policy to MF Global for the policy period from May 31, 2011, to May 31, 2012 (the "AWAC E&O Policy," Complaint, Ex. B). The AWAC E&O Policy obligated Allied World to contribute up to the $15 million policy limit in the event of a covered loss. (AWAC E&O Policy at 1). The policy lists "MF Global Holdings Ltd." as the "Named Corporation" with its principal address at "717 Fifth Avenue, 9th Floor, New York, NY 10022-8101." (*Id.*)

### 1. The Bar Order in the Global Settlement

On August 10, 2016, this Court entered an order approving a global settlement in these chapter 11 cases (the "Global Settlement," D.I. 2282).[7] The Global Settlement included a bar order (the "Bar Order") which provides in relevant part:

> 3. To the extent not previously authorized by this Court, the plan injunction ("Plan Injunction") as to the Debtors and their respective property established pursuant to paragraph 75 in the *Order Confirming Amended and Restated Joint Plan of Liquidation* entered by this Court on April 5, 2013, to the extent applicable, shall be modified solely to the extent necessary, and without further order of the Bankruptcy Court, to authorize any and all actions reasonably necessary to consummate the Global Settlement, including without limitation, any payments under certain insurance policies required under the Settlement . . . . Furthermore, any person or entity that is not a Party to the **Settlement Agreement** is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any claims arising out of payments made under certain insurance policies in accordance with the Settlement Agreement or any other agreement referenced therein or associated therewith.

---

[7]    References to the docket in the main chapter 11 case will be denoted as "D.I."

. . . .

> 7. Upon entry of this Order, any person or entity that is not a Party to the Settlement Agreement, including any Dissenting Insurer, is permanently barred, enjoined, and restrained from <u>contesting or disputing the Reasonableness of Settlement, or commencing, prosecuting, or asserting any claims, including, without limitation, claims for contribution, indemnity, or comparative fault (however denominated an on whatsoever theory), arising out of or related to the MF Global Actions</u> . . . .

> 8. For the avoidance of doubt, <u>nothing in this Order shall preclude</u>:

> . . . (iii) any claims by the Insurance Assignees to enforce the Assigned Rights; (iv) <u>any claim or right asserted by an MFG Plaintiff against any Dissenting Insurer on its own behalf</u> (as distinct from the Assigned Rights) . . . .

(Global Settlement ¶¶ 3, 7, 8) (emphasis added).

In connection with the Global Settlement, Allied World tendered the full limit of liability of its separately-issued excess directors and officers ("D&O") insurance policy, but declined to make the E&O coverage provided under the Allied World policy available for a settlement as Allied World's adversaries had requested. Pursuant to the Global Settlement, those ostensibly covered by the AWAC E&O Policy were to assign their rights to full payment under the Allied World policy to the Plaintiffs and the assignee would commence action against Allied World to obtain proceeds under the E&O policy.

### 2. General Background

On October 27, 2016, the Plaintiffs filed the Complaint in this adversary proceeding against the Bermuda Insurers and Federal.[8] The defendants had issued the top four layers of excess E&O insurance policies to MFGH. All other insurers in MFGH's D&O and E&O insurance towers paid their policy limits as part of the Global Settlement. The Plaintiffs brought

---

[8]     The policy issued by Federal did not contain an arbitration provision. (Complaint, Ex. D.)

this action to recover the $25 million policy proceeds under the defendants' E&O insurance

policies.

On November 8, 2016, the Bermuda Insurers obtained injunctive orders from the

Bermuda Court following an *ex parte* hearing, ordering that:

> [The Plaintiffs] shall not, whether by themselves or through their
> employees, servants, agents, representatives, attorneys or otherwise,
> commence, prosecute or otherwise pursue litigation in the United States
> insofar as that litigation concerns, arises out of and/or relates to the
> insurance policy issued to the [Plaintiffs] by the [Bermuda Insurers],
> Policy No. C007357/005 ("the Policy") including, for the avoidance of
> doubt, litigation containing allegations of breach of "good faith and fair
> dealing" relating to the Policy) and/or otherwise breaches the terms of
> the valid and binding Bermuda arbitration agreement between the
> [Plaintiffs and the Bermuda Insurers] set out in Clause IX of the Policy,
> until trial or further order.
>
> The [Plaintiffs] shall not, whether by themselves or through their
> employees, servants, agents, representatives, attorneys or otherwise,
> seek and/or obtain an anti-suit injunction and/or an anti-anti-suit
> injunction and/or a temporary, preliminary or permanent order
> restraining and/or preventing the [Defendant] from pursuing and/or
> otherwise enforcing the said valid and binding Bermuda arbitration
> agreement, until trial or further order.

(ECF Doc. ## 7-2 at 2, 7-3.)

At the *ex parte* hearing before the Bermuda Court, counsel to the Bermuda Insurers

informed the Bermuda Court that the Complaint filed in this Court revolved around insurance

coverage provided by the Bermuda Insurers, and that there were broad arbitration clauses in the

underlying policies.  (Allied *Ex Parte* Hr'g Tr. at 11.)  Counsel for the Bermuda Insurers

indicated that recent case law in the Southern District of New York Bankruptcy Court would

likely result in the eventual transfer of the proceeding to Bermuda for arbitration as a non-core

issue, and that issues relating to comity were less important than the public policy of enforcing

arbitration provisions.  (*Id.* at 24–25 (discussing *In re Residential Capital*, *LLC*, 563 B.R. 756

(Bankr. S.D.N.Y. 2016) ("But it is quite clear from this reading that the bankruptcy court would not characteri[z]e an insurance coverage action as a core proceeding.  In this case [*Residential Capital*] it was found to be a non-core proceeding, *i.e.* subject to the arbitration provisions.")).)

On November 22, 2016, the Plaintiffs submitted a letter informing the Court that the Bermuda Insurers had obtained these injunctive orders, and suggesting that the entry of these orders violated (i) the Bar Order in the Global Settlement, and (ii) the *Barton* Doctrine.  (ECF Doc. # 7.)

On November 28, 2016, both Allied World and the Iron-Starr Insurers filed motions to compel arbitration (the "Motions to Compel Arbitration," ECF Doc. ## 13, 20).[9]  Also on November 28, 2016, Allied World and the Iron-Starr Insurers each filed motions to dismiss for lack of personal jurisdiction and improper service of process (the "Motions to Dismiss," ECF Doc. ## 14, 17).[10]

### 3. The Arbitration Clauses

The insurance policies issued by the Bermuda Insurers each contain a mandatory arbitration provision.  These arbitration clauses provide that all disputes arising under or relating to these policies shall be fully and finally resolved by arbitration in Bermuda.  (*See* Complaint, Ex. B.)  The AWAC E&O Policy's arbitration clause reads in relevant part:

> Any and all disputes arising under or relating to this policy, including its formation and validity, and whether between the **Insurer** and the **Named Insured** or any person or entity deriving rights through or asserting rights on behalf of the **Named Insured**, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 (exclusive of the Conciliation

---

[9]    An affirmation of Jan E. Haylett was with Allied World's motion to compel arbitration on November 29, 2016.  (ECF Doc. # 23.)

[10]    An affirmation of Jan E. Haylett was also filed with Allied World's motion to dismiss on November 28, 2016. (ECF Doc. # 14-2.)

Part of such Act), as may be amended and supplemented, by a board
composed of three arbitrators to be selected for each controversy . . . .

(Complaint, Ex. B at p. 7.)

4.  *Orders Previously Entered in this Case*

As set forth in the Plaintiffs' Applicable Orders Letter, the Plaintiffs argue that a number

of orders previously entered in this case (collectively, the "Previously Entered Orders") will

impact the ultimate ruling on the coverage dispute at issue here.  The Plaintiffs point to the

following orders as relevant to the resolution of this dispute, arguing that the bankruptcy court,

rather than a Bermuda arbitration tribunal, is the appropriate entity to interpret the prior orders of

this Court:

i.    the *Order Authorizing the Trustee to Enter the Final Consent Order of
      Restitution, Civil Monetary Penalty and Ancillary Relief Against MF Global
      Inc.* (the "CFTC-MFGI Trustee Authorizing Order," ECF Doc. # 126-3),
      which authorized the trustee to execute the "CFTC-MFGI Consent Order"
      entered by the District Court and directing MFGI to "make restitution" to
      satisfy certain customer net equity claims (CFTC-MFGI Consent Order ¶
      III.4);

ii.   the *Order Granting the Trustee's Motion (I) to Approve the Trustee's
      Allocation of Property and (II) to Approve an Advance of General Estate
      Property for the Purpose of Making a Final 100% Distribution to Former
      Commodities Futures Customers of MF Global Inc.* (the "NES Approval
      Order," ECF Doc. # 126-4), which authorized the Trustee to "advance funds
      from the general estate of MFGI . . . to [certain] customer estates in order to
      satisfy all allowed customer net equity claims," among other things (NES
      Approval Order at 3–4);

iii.  the *Order Approving (I) the Sale and Assumption Agreement, (II) the Transfer
      and Abandonment of Specified Systems and Documents and the SIPA
      Trustee's Corresponding Limitation of Discovery and Retention Obligations,
      (III) a Final Distribution on Allowed General Unsecured Claims Not Held by
      the MFGH Entities, and (IV) Related Relief* (the "SAA Approval Order," ECF
      Doc. # 126-6), whereby the Court approved the "Sale and Assumption
      Agreement" that assigned certain claims against the Bermuda Insurers for
      insurance proceeds to the Plan Administrator, on behalf of MFGH or its
      designee, and found such assignment to be "reasonable and appropriate to
      maximize the value of MFGI's and the Chapter 11 Debtors' estates" (SAA
      Approval Order 3, 6);

10

  iv. the *Order Granting Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for Entry of an Order Approving the MDL Settlement Agreement* (the "9019 Order," D.I. # 2282), in which this Court found that the Global Settlement that resolved a large swath of issues in the case and included contributions by E&O insurance policy issuers other than Allied World, was "fair, reasonable, and adequate," that constituted "proper, full, fair and complete exhaustion . . . in accordance with, and pursuant to, the [] terms and conditions" of the underlying insurance policies, and by which the Court prohibited parties from "contesting or disputing the [r]reasonableness of the [s]ettlement " (9019 Order ¶¶ 1, 7; Global Settlement); and

  v. the *Order Confirming the Amended and Restated Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan Confirmation Order," D.I. # 1288), which confirmed the plan of liquidation in this case, and created and empowered the Plan Administrator and related entities.

 *5. Coverage Defenses*

Plaintiffs argue that these Previously Entered Orders may be relevant to this dispute because they are implicated by Allied World's coverage defenses in the underlying coverage dispute. For example, Allied World has stated that it will assert as a defense the "insured vs. insured" policy exclusion.[11] Allied World maintains that the claim here was originally held by MFGI, but assignees of MFGI must step into the shoes of their assignors, taking whatever claims the Plaintiffs may now have subject to any defenses against their predecessors-in-interest, including the defense that the claim held by MFGI against "Individual Insureds" was settled and released. (*See* Apr. 18 Hr'g Tr. 109:15–10:12, 110:25–11:3.)

Additionally, Allied World states that it is not liable here because, under certain policy provisions, there was no loss covered under the policy; it argues that MFGI and Individual Insureds are not permitted to return money from customer accounts to those customers and then obtain reimbursement for the return from Allied World, which they maintain would be

---

[11] Allied World has stated that it has not and "will not challenge the validity of the relevant transfers that have resulted in Plaintiffs holding the asserted claim for insurance." (Bermuda Insurers Coverage Defense Letter at 2.)

tantamount to "deposit insurance" and not professional liability insurance.  (Bermuda Insurers
Coverage Defenses Letter at 2.)

## II. LEGAL FRAMEWORK

"The Federal Arbitration Act ('FAA'), *see* 9 U.S.C. § 1, *et seq.*, requires a federal court
to enforce arbitration agreements and to stay litigation that contravenes them." *Burns v. New
York Life Ins. Co.*, 202 F.3d 616, 620 (2d Cir. 2000) (citation omitted); *see also* 9 U.S.C. §§ 2 &
3.  The FAA represents a "congressional declaration of a liberal federal policy favoring
arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be
resolved in favor of arbitration." *Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*, 277
B.R. 181, 197 (Bankr. S.D.N.Y. 2002) [hereinafter *Hagerstown*] (citing *Moses H. Cone Mem'l
Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  However, "[l]ike any statutory
directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Id.* at
198 (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).

Accordingly, a bankruptcy court faced with a motion to compel arbitration must apply a
four-part test:

> [F]irst, it must determine whether the parties agree to arbitrate;
> second, it must determine the scope of that agreement; third, if
> federal statutory claims are asserted, it must consider whether
> Congress intended those claims to be nonarbitrable; and fourth, if
> the court concludes that some, but not all, of the claims in the case
> are arbitrable, it must then decide whether to stay the balance of the
> proceedings pending arbitration.

*Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*, 390 B.R. 784, 789
(Bankr. S.D.N.Y. 2008) [hereinafter *Bethlehem Steel*].

Further discussion of each component of the four-part test, and an analysis relating to
each prong, is set forth below.

## III. THE PARTIES' CONTENTIONS

### A.  The Plaintiffs' Contentions

First, the Plaintiffs argue that the confirmed Plan in this case superseded the arbitration

provision in the AWAC E&O Policy, as the Plan retained jurisdiction to adjudicate any

adversary proceedings, and Allied World did not object to this provision of the Plan during the

confirmation process.  The Plaintiffs also argue that the AWAC E&O Policy does not impose a

mandatory arbitration requirement on MFGI, the Individual Insureds, or their assignees because

those parties themselves did not specifically agree to mandatory arbitration in Bermuda.

But the bulk of the Plaintiffs' Omnibus Reply rests on the argument that the resolution of

this dispute will require the adjudicating body to interpret and enforce the Previously Entered

Orders in response to Allied World's potential coverage defenses.  The Plaintiffs therefore

characterize this dispute as a "core" bankruptcy proceeding because they maintain that the

interpretation and enforcement of prior bankruptcy court orders, along with the fact that the

dispute involves the administration of bankruptcy estate assets, renders this a core dispute

inappropriate for resolution by an arbitration panel.

The Plaintiffs also emphasized that because Federal had similar claims pending before

this Court but was not subject to an arbitration provision, the Court should be wary of the

possibility of multiple proceedings occurring simultaneously, with potentially inconsistent

outcomes.  This concern has been allayed since Plaintiffs have now dismissed their claims

against Federal.

### B.  Allied World's Contentions

Allied World maintains that the mandatory arbitration provision in the AWAC E&O

Policy demands that this coverage dispute be sent to arbitration in Bermuda.  Allied World

argues that, despite the various assignments of the claims against it that took place in the

bankruptcy proceedings, the Plaintiffs must stand in the shoes of the original policy holder,

which was bound by the terms of the arbitration provision.  And more generally, Allied World

frames this dispute as a pre-petition state-law contract dispute that is squarely non-core, and that

the Court should therefore send this dispute to arbitration.

Lastly, Allied World suggests that, while they may put forth the "insured vs. insured"

coverage defense, as well as a defense premised on the fact that they are not responsible for

reimbursing the Plaintiffs for payments made to customers, these defenses do not implicate any

of the Previously Entered Orders, and even if they do, an arbitration panel in Bermuda is fully

competent to resolve this dispute.

### IV.**ANALYSIS**

MFGH and Allied World agreed to arbitrate any dispute arising out of the AWAC E&O

Policy, and the arbitration provision of the policy binds any entity asserting rights on behalf of

MFGH.  The arbitration clause is broadly phrased, and based on the facts and circumstances of

this case, there is no indication that Congress intended the claims at issue here to be

nonarbitrable.  Accordingly, the Court concludes that this non-core dispute will be sent to

arbitration in Bermuda pursuant to Section IX of the AWAC E&O Policy.

#### A.  Whether the Parties Agreed to Arbitration

A threshold question is whether there was an agreement to arbitrate the claims asserted

by the Plaintiffs in the Complaint.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,

473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is

to determine whether the parties agreed to arbitrate that dispute.").  While the FAA favors

arbitration, it "does not require the parties to arbitrate when they have not agreed to do so." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989).

Here, the AWAC E&O Policy very clearly states that "MF Global Holdings Ltd." is the "Named Corporation," with Allied World acting as insurer, and that "[a]ny and all disputes arising under or relating to this policy . . . shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 . . . ." (AWAC E&O Policy at 1, 8.)  The Plaintiffs argue, unpersuasively, that this arbitration provision does not mandate arbitration here because, according to the Plaintiffs, the term "Named Insured" as it appears in the first sentence of Section IX of the agreement, entitled "Arbitration," only refers to MFGH, and therefore only MFGH is bound by this "mandatory" arbitration clause.  The Plaintiffs further suggest that the term "Named Insureds" (as opposed to the singular "Named Insured") appears elsewhere in the policy, and while these terms are not defined in the document, read together indicate that the Plaintiffs are only subject to a separate "permissive" arbitration clause.

Specifically, the Plaintiffs suggest that the portion of Section IX of the policy focusing on the rights and obligations of the "Named Insureds" contains a "permissive" arbitration provision applicable to the Plaintiffs and Allied World.  Plaintiffs argue that a clause in the policy stating that the "Named Insureds" (plural) "shall be entitled to assert claims against the Insurer for coverage under this policy . . . in an arbitration" does not require arbitration, but rather, only permits it.  (*See* AWAC E&O Policy at 9.)  But the Plaintiffs selectively quote from the agreement; the portion of the policy on which the Plaintiffs rely reads in full:

> The Named Insureds shall be entitled to assert claims against the Insurer for coverage under this policy including, without limitation, for amounts by which the Named Insured reduced judgment against such other insurers in respect of such claims for indemnity or

15

> contribution, in an arbitration between the insurer and the Named
> Insureds pursuant to this clause; provided, however, that the Insurer
> in such arbitration in respect of such reduction of any judgment shall
> be entitled to raise any defenses under this policy and any other
> defenses (other than jurisdictional defenses) as it would have been
> entitled to raise in the action or proceeding with such insurers.

(*Id.*)  Read in its entirety, this sentence, by its own terms, is secondary to the mandatory

arbitration clause at the beginning of Section IX.  Contrary to the Plaintiffs' suggestion, this

sentence concerns what happens when an attempt is made to implead Allied World, or another

insurer seeks to sue Allied World for indemnity or contribution.  Read in context, there simply is

no "permissive" arbitration provision in the agreement as it relates to Allied World.

The Plaintiffs' argument fails upon a plain reading of the arbitration provision quoted

above.  Allied World and the predecessor to the Plaintiffs plainly agreed to resolve "any and all

disputes arising under or relating to" the AWAC E&O Policy in arbitration in Bermuda, and

adopting the interpretation put forth by the Plaintiffs would severely undermine the clear text of

the policy.  While the terms "Named Insured" and "Named Insureds" are not defined in the

policy (and both terms may reasonably be read to cover both the singular and the plural),

embracing the Plaintiffs' proposed suggestion to impute different definitions on these terms

would dramatically alter the fabric of the agreement, and impute new terms into the contract.

But even if the Court were to agree with Plaintiffs' theory that "Named Insured" only

encompasses MFGH, Plaintiffs' argument would still fail.  MFGI and the Individual Insureds are

clearly "person[s] or [an] entity deriving rights through or asserting rights on behalf of the

Named Insured."  (AWAC E&O Policy at 8.)  The plain text of the arbitration clause, indeed the

very first sentence in Section IX of the policy, plainly provides that Allied World and MFGH,

"or any person or entity deriving rights through or asserting rights on behalf of" MFGH, agreed

to arbitration.

16

### B. Scope of Arbitration Clause

The second inquiry is whether the arbitration clause is "narrow" or "broad." *Bethlehem Steel*, 390 B.R. at 789–90. The Second Circuit explained the relevance of the distinction between broad and narrow arbitration clauses as follows:

> In construing arbitration clauses, courts have at times distinguished between "broad" clauses that purport to refer all disputes arising out of a contract to arbitration and "narrow" clauses that limit arbitration to specific types of disputes. If a court concludes that a clause is a broad one, then it will order arbitration and any subsequent construction of the contract and of the parties' rights and obligations under it are within the jurisdiction of the arbitrator.

*Id.* at 790 (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)). In other words, if the clause is broad, arbitrability will be presumed. *Hagerstown*, 277 B.R. at 198 (citations omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 425 B.R. 78, 86–87 (Bankr. S.D.N.Y. 2010) (citations omitted).

In *JLM Industries, Inc. v. Stolt-Nielse SA*, 387 F.3d 163, 167 (2d Cir. 2004), the Second Circuit held that a clause submitting for arbitration "[a]ny and all differences and disputes of whatsoever nature arising out of this [c]harter" was a broad form clause. Also in *Bethlehem Steel*, the Court found the same language to be broad. 390 B.R. at 790; *see also S.W. Bach*, 425 B.R. at 88 (finding a clause referring to arbitration "any controversy or claim between [the parties] arising out of or relating to" an agreement to be broad, justifying a presumption of arbitrability).

The arbitration provision at issue here is plainly broad. The AWAC E&O Policy very clearly states that "[a]ny and all disputes arising under or relating to this policy, including [certain named examples of disputes], shall be finally and fully determined in Hamilton,

Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act of 1993 . . . ." (AWAC E&O Policy at 8.) The fact that the arbitration clause contains the phrase "including" and lists several examples of disputes, does not alter this conclusion.

Just as the courts in *JLM Industries*, *Bethlehem Steel*, and *S.W. Bach* found similarly worded arbitration provisions to be broad, so too does this Court find that the clause at issue here is broad, and therefore arbitrability will be presumed. *Hagerstown*, 277 B.R. at 198.

### C. Whether Congress Intended to Exclude this Dispute From Arbitration

The third question requires consideration of "Congress's policy in favor of arbitration as weighed against the important federal interests embodied in the Bankruptcy Code." *Cardali v. Gentile (In re Cardali)*, Case No. 10-11185 (SHL), Adv. Pro. No. 10-3531 (SHL), 2010 WL 4791801, *12 (Bankr. S.D.N.Y. Nov. 18, 2010). Under this prong, courts have focused first on whether the matter is a core or non-core bankruptcy proceeding. *See Hagerstown*, 277 B.R. at 198.

"Core" proceedings are matters "arising under" the Bankruptcy Code or "arising in" bankruptcy cases. *Cardali*, 2010 WL 4791801, at *12 (citation omitted). "Non-core" proceedings are merely "related to" bankruptcy cases. *Id.* According to the Second Circuit, a non-core matter "is unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration." *Hagerstown*, 277 B.R. at 201 (citing *U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. and Indem. Assoc.*, 197 F.3d 631, 639 (2d Cir. 1999)).

Section 157 of 28 U.S.C. sets out a non-exhaustive list of core bankruptcy proceedings, subject to the constitutional limits established by *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), and its progeny. "The principal holding of *Marathon* is that Congress has minimal authority to control the manner in which a right created

18

by state law may be adjudicated as that right is independent of and antecedent to the reorganization petition that conferred jurisdiction upon the bankruptcy court." *Cardali*, 2010 WL 4791801, at *13 (internal citations omitted). "Therefore, under *Marathon*, whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *Id.* (citing *U.S. Lines*, 197 F.3d at 637).

If a claim is "non-core," the court generally lacks discretion and must refer the claim to arbitration. *See U.S Lines*, 197 F.3d at 640; *Hagerstown*, 277 B.R. at 200 ("[N]otwithstanding the possibility of bifurcated or even trifurcated proceedings, or duplicative proceedings involving multiple parties, a court generally lacks the discretion to refuse to compel the arbitration of non-core claims") (citation omitted). If a claim is "core," "the bankruptcy court must still carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing the arbitration clause," and the "arbitration clause should be enforced unless doing so would seriously jeopardize the objectives of the Code." *Hagerstown*, 277 B.R. at 200–01 (internal quotation marks and citations omitted). "The second step asks whether the underlying dispute concerns rights created under the Bankruptcy Code or non-Bankruptcy Code issues derivative of the debtor's pre-petition business activities. In the former situation, the bankruptcy court has discretion to refuse arbitration, but in the latter it does not." *Id*. at 202 (internal citation omitted). In order to determine whether a claim is core or noncore, the court considers that:

> [a] trustee in bankruptcy wears two hats. First, he stands in the shoes of the debtor, and may bring any suit that the debtor could have brought before bankruptcy. When the trustee sues as statutory successor to the debtor, his rights are limited to the same extent as the debtor's under applicable nonbankruptcy law. If the debtor agreed in a pre-petition contract to arbitrate a dispute, the trustee, suing as successor to the debtor, is likewise bound by the arbitration clause. Second, under 11 U.S.C. § 544, the trustee also stands in the

> "overshoes" of the creditors. . . .  Section 544(b) . . . puts the trustee
> in the creditors' shoes, and allows him to assert claims that only they
> could assert outside of bankruptcy.

*Id*. at 206–07 (internal citations omitted).

Other courts distinguish between two types of "core" claims: substantively core claims, and procedurally core claims.  Procedurally core claims are "garden variety pre-petition contract disputes dubbed core because of how the dispute arises or gets resolved."  *Hagerstown*, 277 B.R. at 203 (finding a breach of contract claim to be procedurally core).  "The arbitration of a procedurally core dispute rarely conflicts with any policy of the Bankruptcy Code unless the resolution of the dispute fundamentally and directly affects a core bankruptcy function."  *Id*. (internal citation omitted).

Conversely, claims that are "not based on the parties' pre-petition relationship, and involve rights created under the Bankruptcy Code" are core for substantive reasons and are usually not arbitrable.  *Hagerstown*, 277 B.R. at 203.  As Judge Bernstein noted in *Hagerstown*, "such disputes will often fail the preliminary question of arbitability because the parties did not agree to arbitrate them.  Nevertheless, even if they are covered by the arbitration clause, it is more likely that arbitration will conflict with the policy of the Bankruptcy Code that created the right in dispute.  The bankruptcy court enjoys much greater discretion to refuse to compel the arbitration of this type of dispute."  *Id*.

At the same time, other courts have found that where the action has a significant impact on the administration of the estate, though again, not explicitly distinguishing between a procedurally and substantively core claim, a claim can be "core."  *See U.S. Lines, Inc.*, 197 F.3d at 638.  In *U.S. Lines, Inc.*, the court noted that "contract claims are not rendered core simply because they involve property of the estate," but found that certain underlying insurance contract claims were "core," as "[i]ndemnity insurance contracts, particularly where the debtor is faced

20

with substantial liability claims within the coverage of the policy," very well may be "the most important asset of the [debtor's] estate." *Id.* The court also noted that resolving the coverage disputes would have a "significant impact on the administration of the estate," and not just "augment the assets of the estate for general distribution," as the proceeds "represent[ed] the only potential source of cash available to [a particular] group of creditors," and would "not be made available until the Trust ha[d] paid the claims." *Id.* at 637–38 (internal citations and quotation marks omitted).

The Plaintiffs suggest that this is a "core" proceeding because the adjudication of this coverage dispute will have a significant bearing on the availability of estate assets, and because Allied World may assert coverage defenses that could be foreclosed by or relate to the Previously Entered Orders. The Court rejects the Plaintffs' arguments for the following reasons.

> 1. *That This Dispute Involves Estate Assets Does Not Render it "Core"*

Section 157(b)(2)(A) and (O) provide that "[c]ore proceedings include" the "allowance or disallowance of claims against the estate," and "other proceedings affecting the liquidation of the assets of the estate," among other things. 28 U.S.C. § 157(b)(2)(A) & (O). But courts in this Circuit routinely recognize that bankruptcy disputes solely invoking the "catch-all" subparts (A) and (O) of section 157(b)(2) are typically non-core. *See, e.g., Rescap Liquidating Trust v. CMG Mortg., Inc.* (*In re Residential Capital*), Case No. 14-4950, 2014 WL 4652664, at *2–3 (S.D.N.Y. Sept. 10, 2014) (rejecting plaintiffs' argument that an "action is core because it concerns the administration of its estate and affects the liquidation of the estate's assets" and explaining that the "Second Circuit [has also] rejected exactly this argument"); *In re EMS Fin. Servs. LLC*, 491 B.R. 196, 203 (E.D.N.Y. 2013) ("[W]hile the debtor's rights under its insurance policies are property of a debtor's estate, the contract claims are not rendered core simply

because they involve property of the estate."); *Blanco v. Hoehn (In re Gaston & Snow)*, 173 B.R.

302, 305 (S.D.N.Y. 1994) (explaining that "the two 'catchall' provisions, § 157(b)(2)(A) and

(O)" "must not be read too broadly," lest they "obliterate the core/non-core distinction itself")

(citations omitted).

In *U.S. Lines*, the Second Circuit found that a dispute relating to a pre-petition insurance

contract was core. *U.S. Lines*, 197 F.3d at 639.  But in *U.S. Lines*, the "insurance proceeds

[were] almost entirely earmarked for paying the personal injury claimants and represent[ed] the

only potential source of cash available to that group of creditors." *Id.* at 638.  Moreover, the

insurance dispute at issue there affected the equitable distribution to creditors because the

policies at issue there were "pay-first" policies that included a provision "by which the insurers'

liability is not triggered until the insured pays the claim of the personal injury victim," and the

insolvent debtor in that case was otherwise unable to satisfy this requirement. *Id.* at 635, 638.

Here, a recovery on the AWAC E&O Policy does not constitute the most important asset

of the estate, is not the sole source of recovery for any creditor group, and there is no "pay-first"

provision.  The $15 million policy would surely augment the estate, but in the scheme of this

large chapter 11 case, the collection and administration of this amount does not by itself render

this dispute core.

### 2.  *The Previously Entered Orders do not Require this Dispute to be Arbitrated*

As a preliminary matter, the coverage defenses that Allied World may put forth have not

been actually litigated or ruled on in any of the Previously Entered Orders; nor has the Court

addressed the merits of the underlying claim at issue.  The coverage defenses that Allied World

has identified—which may or may not have any merit—are the usual grist for coverage disputes

that arise under nonbankruptcy law and are not affected by bankruptcy law.  Only a few of

22

Plaintiffs' arguments concerning the effect of the Previously Entered Orders merit brief discussion here.

### a. The SAA Approval Order

The SAA Approval Order provides that the sale and assumption of certain claims against Allied World was reasonable and appropriate. Allied World does not challenge the reasonableness or validity of the assignments made under this sale and assumption. (Bermuda Insurers Applicable Defenses Letter at 4.) The SAA Approval Order did not rule on the merits of any coverage defenses. Rather, Allied World argues that as assignees, the Plaintiffs step into the shoes of their assignors, and take the claims at issue subject to any defenses that existed prior to the assignment. The fact that the Court found the transfer of the claims at issue to be reasonable does not constitute a finding that the claim itself has merit.

### b. The 9019 Order

Similar to the SAA Approval Order, the 9019 Order provided that the Global Settlement was fair and reasonable, precluded parties from attacking the reasonableness of the settlement, and that the "amounts previously paid . . . constitute proper, full, fair and complete exhaustion . . . in accordance with" the underlying policies involved in the settlement. (Bermuda Insurers Applicable Defenses Letter at 3 (quoting MDL Settlement Agreement).) The 9019 Order did not adjudicate any coverage defenses, and Allied World has stated that it "will not dispute that the MDL Settlement Agreement was 'fair, reasonable and adequate,' nor will [Allied World] dispute that the referenced payments have exhausted the underlying policies." (Bermuda Insurers Applicable Defenses Letter at 3 n.2.) That other policies in the E&O tower paid policy proceeds in a settlement that was approved by the Court does not constitute a finding with respect to any potentially applicable coverage defenses that Allied World might put forth.

c.  The Plan Confirmation Order

Allied World states that "[n]o interpretation of the Plan's provisions are required or

implicated because the assigned rights remain unchanged." (Bermuda Insurers Coverage

Defenses Letter at 5.)  The Court agrees.  Because Allied World does not challenge the validity

of the assignments in the Plan, the Plaintiffs concede that, "subject to receipt of a full and

complete articulation of the coverage defenses [Allied World] intend[s] to assert in this

proceeding," the Plan Confirmation Order will not be implicated.  (Plaintiffs' Applicable Orders

Letter at 4.)

### 3.  *Sending this Dispute to Arbitration Does Not Conflict with Bankruptcy Policy*

Even if this Court were to find the dispute at issue here to be substantively core because

of the Previously Entered Orders (which the Court does not), this dispute has almost none of the

hallmarks of a typical substantively core claim.  The claim was entirely "based on the parties'

pre-petition relationship" and the Plaintiffs are not asserting the claim based on any "rights

created under the Bankruptcy Code" (*Hagerstown*, 277 B.R. at 203), such as the right to bring an

avoidance action or a preference claim.  And the Previously Entered Orders themselves do not

constitute a central component of the Plaintiffs' claims, but rather only tangentially impact two

types of defenses that Allied World may put forth.

On the contrary, the claim at issue here resembles a procedurally core claim in the sense

that the Plaintiffs argue that this pre-petition contract dispute is rendered core, in part, by way of

the posture in which the dispute arises—namely, following the entry of several orders that could

influence the discussion surrounding Allied World's arguments.  Certainly, bankruptcy policy

includes the concept that bankruptcy courts should be able to interpret and enforce previously

entered orders. *See Barton Opinion*, 562 B.R. at 872–73.  Aside from the possibility that this

24

dispute may tangentially involve some of the Previously Entered Orders, sending the claim at issue here to arbitration presents no conflict with bankruptcy policy. Here, the strong "policy favoring arbitration agreements" outweighs whatever "federal interests embodied in the Bankruptcy Code" might feasibly arise as this coverage dispute progresses. *Burns*, 202 F.3d at 620; *Cardali*, 2010 WL 4791801 at *12.

### D. A Stay of the Adversary Proceeding Pending the Outcome of Arbitration Is Appropriate

The Court's determination in this Opinion that the underlying insurance contract dispute must be arbitrated in Bermuda leaves the question about the appropriate disposition of this adversary proceeding. Now that the Plaintiffs have settled with Federal and dismissed Federal as a defendant in this adversary proceeding, there is no risk of inconsistent judgments in the Federal and Allied World proceedings. But the Court has previously determined that applicable New York law required Allied World to post a $15 million bond with the Clerk of this Court before it could press its motion to compel arbitration. The bond provides the protection that New York law provides New York insureds that obtain insurance policies from unauthorized foreign insurers. After some fits and starts, Allied World has now posted the required bond. Protecting the Plaintiffs' ability to recover against the bond requires that this case be stayed rather than dismissed pending the outcome of the arbitration. Additionally, the Court has imposed sanctions against Allied World for contempt and for violation of the *Barton* Doctrine. Plaintiffs have contended that they are entitled to recover additional attorneys' fees as sanctions. An actual controversy remains between the parties so this Court clearly retains subject matter jurisdiction over this adversary proceeding.

## V.<u>CONCLUSION</u>

For the reasons stated above, the motion to compel arbitration, as it relates to Allied

World, is **GRANTED**.  The Court hereby stays this adversary proceeding pending the outcome

of the Bermuda arbitration, or further order of this Court.  The parties are directed to file joint

status reports with this Court every 60 days regarding the status of arbitration or disposition of

the disputes between the parties.

**IT IS SO ORDERED.**

Dated: New York, New York
        August 24, 2017

*Martin Glenn*
_____
MARTIN GLENN
United States Bankruptcy Judge
